JULIE VILLA
Pro Se
3778 West Solana Court, A-306
Herriman, UT 84096
Phone 808-357-6764
Email: julievilla2002@gmail.com

## IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAMANTHA SIVA KUMARAN,<br><br>Plaintiff,<br>vs.<br><br>Vision Financial Markets, LLC<br>Vision Investment Advisors, LLC<br>Vision Brokerage Services, LLC<br>H Rothman Family, LLC<br>Boshnack Family, LLC<br>High Ridge Holding Corporation, LLC<br>High Ridge Futures, LLC<br>Howard Rothman, Robert Boshnack,<br>John Felag, Julie Villa<br>Gerard Stephen Lazzara,<br>Lazzara Consulting, Inc,<br>Defendants | 1:20:CV:03871 (GHW) (SDA)<br><br>Related Case: 1:20:CV 03668<br>Related Case: 1:20:CV 03873<br><br>**MEMORANDUM OF LAW** |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S  MOTION TO DISMISS
## <u>PLAINTIFF'S FIRST AMENDED COMPLAINT</u>

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................  2

PRELIMINARY STATEMENT ...........................................................................................  5

PROCEDURAL BACKGROUND .......................................................................................  7

STATEMENT OF FACTS ...................................................................................................  8

ARGUMENTS ...................................................................................................................  22

CONCLUSION .................................................................................................................  26

# TABLE OF AUTHORITIES

**CASES**

Arthur Andersen
    924 F. Supp. at 466

*Ashcroft v. Iqbal,*
    *556 U.S. 662 (2009)*

*A Star Grp., Inc. v Manitoba Hydro, KPMG LLP*
    *[SDNY, June 30, 2014, 13 Civ. 4501 (PAC)]*

*ATSI Communications, Inc. v Shaar Fund, Ltd.*
    493 F3d 87, 99 [2d Cir 2007]

Azrielli v. Cohen Law Offices
    21 F.3d 512, 521-22 (2d Cir. 1994)

*Beach v Citigroup Alt. Invs. LLC*,
    *31 [SDNY, Mar. 7, 2014, 12 Civ. 7717 (PKC)]

*Bell Atlantic Corp. v. Twombly,*
    *550 U.S. 544 (2007)*

City of New York v. Smokes-Spirits.com, Inc.
    541 F.3d 425, 449 (2d Cir. 2008)

*Ganino*, 228 F.3d at 168
    Iannaccone v. Law, 142 F.3d 553, 558 (2d Cir. 1998)

Hemi Grp., LLC v. City of New York
    559 U.S. 1 (2010)

*Iqbal*. *E.g.*, *Deyerberg v. Holder*,
    2010 WL 2131834 (D. D.C.)

*Lama Holding Co. v. Smith Barney, Inc.,*
    *88 N.Y.2d 413, 421 (1996)*

*Luce v. Edelstein*,
    802 F.2d 49, 54 (2d Cir.1986)

Main St. Assocs. v. Manko
    897 F. Supp. 1507, 1527 (S.D.N.Y. 1995)

Maersk, Inc. v. Neewra, Inc.,
        687 F. Supp. 2d 300, 335 (S.D.N.Y. 2009)

Mandarin Trading Ltd. v. Wildenstein,
        16 N.Y.3d 173, 178 (2011)

*New York v United Parcel Serv., Inc.*,
        *8-9 [SDNY, Aug. 9, 2016, 15-cv-1136 (KBF)]

Nindle v. State Bank,

*Novak v. Kasaks*,
        216 F.3d 300, 306 (2d Cir.2000)

Phillips v. Tobin
        548 F.2d 408, 412-15 (2d Cir. 1976)

Redtail Leasing, Inc. v. Bellezza
        No. 95 Civ. 5191 (JFK), 1997 WL 603496, at *5 (S.D.N.Y. Sept. 30, 1997)

Remington Rand Corp. v. Amsterdam-Rotterdam Bank
        N.V., 68 F.3d 1478, 1483 (2d Cir. 1995)

Rodriguez v. Eastman Kodak Co
        88 F. App'x 470, 471 (2d Cir. 2004)

*Telenor E. Invest as v Altimo Holdings Investments*,
        567 F Supp 2d 432, 441 [SDNY 2008]

TravelSavers Enters., Inc. v Analog Analytics, Inc.,
        2014 NY Slip Op 33872 [Sup Ct, Nassau County 2014]

Triangle Underwriters, Inc. v. Honeywell, Inc.,
        604 F.2d 737, 748 (2d Cir. 1979) (internal citations omitted) (applying New York law)

Univ. of Maryland at Baltimore v. Peat, Marwick, Main & Co.
        996 F.2d 1534, 1539 (3d Cir. 1993)

Wynn v. AC Rochester,
        273 F.3d 153, 156 (2d Cir. 2001)

**STATUTES**

17 U.S.C. § 106

28 U.S. Code § 1654

15 U.S.C. § 78u-4(b)(1).

§ 1962(c)

**RULES**

Federal Rule of Civil Procedure 8

Federal Rule of Civil Procedure 9(b)

Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(17)(a)

Federal Rule of Civil Procedure 20.1

Julie Villa ("Defendant") submits this Memorandum of Law in support of her Motion to Dismiss Plaintiff Samantha Siva Kumaran's First Amended Complaint, ("Amended Complaint")

## PRELIMINARY STATEMENT

In its consolidated form as Plaintiff's Amended Complaint, this case attempts a falsely construed narrative describing normal, ordinary, usual, and historical financial market activities, and those of associated participants, as the operations of a RICO organization. A litany of unsubstantiated assertions wholly imagines the conversion of software(s) with unproven performance, no third party evaluation or validation, and no independently recognized fair-market value.  as *Iqbal* emphasized, courts should not accept the truth of factual allegations that are "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." 129 S. Ct. at 1949.

Plaintiff is nudging towards becoming a vexatious litigant, having spent years suing various defendants, bringing complaints with disturbingly similar 15 count charges combined and packed with hundreds of parroted allegations. (Exhibit 4: Manitoba), incorporated by reference, "Plaintiff The A Star Group, Inc. ("AStar") alleges 15 claims against Manitoba Hydro ("Hydro"), et al. *A Star Grp., Inc. v Manitoba Hydro, KPMG LLP*, *1 [SDNY, June 30, 2014, 13 Civ. 4501 (PAC)]

Plaintiff's foundational assertions consist of intellectual property or copyright infringement claims expanded through weaving and fabricating a network enterprise of scheming, colluding conspirators, and fraud committing Defendants.

Plaintiff is detail oriented while writing the elements of her cases yet surprisingly, but conveniently, dependent on the imposed duty of bench assistance while pleading and proceeding

as Pro Se.   The parties' considerable costs from responding to Plaintiff's complaints are yoked equally by the intangible amount of burden placed on the court, caused by the time and expense of Plaintiff's real-time legal education and practice.

Plaintiff's theory obfuscates and materially misrepresents facts concerning Defendant and Defendant's actions, duties and obligations as an equities and options broker and similarly portrays Plaintiff's representations about herself in the same opaque narrative.   In a sea of counts, and allegations it is easy to lose sight of the fact that Plaintiff's Amended Complaint contains no claims Samantha Siva Kumaran, individually can assert against Individual Defendant, Julie Villa. Defendants' averments with documentary evidence and witness declaration gives Plaintiff no plausible boat on which to float the assertions made, as  much of the complaint is parroting legal standards rather than referring to case-specific acts or omissions within the plaintiff's knowledge.

Irrespective of Plaintiff's numerous cases and vexatious litigation through the court, overwhelming assertions based on information and belief, compounded by multiple counts against Defendants, Plaintiff's First Amended Complaint fails to provide sufficient allegations to state a claim under the law against Defendant. Several and repeated assertions without evidence do not create conditions precedent or hold merit, FRCP 9(b)(c).

Plaintiff's failure to comply with the pleading standard the Supreme Court articulated in Bell Atlantic Corp. v. Twombly, 550 U.S.544, 570 (2007) (articulating proper pleading standard under Federal Rule of Civil Procedure 8) and Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), is fatal. Therefore, the court should dismiss with prejudice Plaintiff's First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).

Among other failings,The Amended Complaint:

1. Only makes three conclusory allegations against the Defendant. The continued blanket restatements by Plaintiff repeating and realleging each and every allegation through revisiting and repeating the elements of a cause of action does not satisfy Rule 8 and *Twombly*.

2. Combines allegations against all "Defendants" together; This collective-style pleading also fails to satisfy Rule 8.

   -and-

3. Fails, as a substantive matter, to adequately plead the requirements for each of its eleven claims against Defendant.

Each of these reasons, standing alone, would be sufficient for this Court to dismiss the Amended Complaint. When considered together, the infirmities in the Amended Complaint requiring dismissal are clear.

Nor should Plaintiff be provided yet another opportunity to amend her insufficient pleading. Plaintiff's failure to make particularized allegations against Defendant is due to the unfounded, meritless claims upon which she structures her faulty assumptions and factually wrong allegations.

## **PROCEDURAL BACKGROUND**

Plaintiff has multiple cases proceeding through the United States District Court Southern District of New York.  Plaintiff's original complaint in this matter was a class action civil case, seeking relief from damages to parties named as "SAMANTHA SIVA KUMARAN; Other similarly situated Customers 1-100; Other similarly situatedCTA's 1-100; NEFERTITI RISK CAPITALMANAGEMENT, LLC,"

Plaintiff Samantha Siva Kumaran ("Kumaran") commenced this action on May 19, 2020. Three months later on August 20, 2020, Kumaran individually and in *Pro Se* proceeded before the court on behalf of a class action, violative of 28 U.S.C. § 1654, Rodriguez v. Eastman Kodak Co., 88 F. App'x 470, 471 (2d Cir. 2004) (summary order) (citing Iannaccone v. Law, 142 F.3d

553, 558 (2d Cir. 1998)); Phillips v. Tobin, 548 F.2d 408, 412-15 (2d Cir. 1976).

The Honorable Gregory Woods ordered and dismissed without prejudice the claims of all Plaintiffs except those of Kumaran. Three of the cases are consolidated under the Amended Complaint:

> "The Court denies Kumaran's request for this action to proceed as a class action, and dismisses without prejudice the claims of all the plaintiffs <u>except those of Kumaran</u>"
> *Kumaran v Adm Inv'r Servs.*, *3 [SDNY, Aug. 20, 2020, 1:20-CV-3873 (GHW)]

> "The Court denies Kumaran's request for this action to proceed as class action. The Court <u>dismisses Kumaran's claims that she asserts on behalf of the other plaintiffs, as well as any NRCM has assigned to her</u>, without prejudice."
> *Kumaran v Nat'l Futures Ass'n*, *10 [SDNY, July 2, 2020, 1:20-CV-3668 (GHW)]

> "Kumaran does not allege that she is an attorney. Accordingly, <u>because Kumaran may only represent herself</u>, the Court denies her request to proceed with this action as a class action, and the <u>Court dismisses without prejudice any claims Kumaran asserts on behalf of any individual other than herself</u>. In addition, the Court dismisses without prejudice any claims Kumaran asserts on behalf of NRCM - a limited liability company - or that were assigned to her by NRCM.
> *Kumaran v Vision Fin. Markets, LLC*, *3 [SDNY, Aug. 20, 2020, 1:20-CV-3871 (GHW)]

On September 30, 2020, Plaintiff filed the first amended complaint, removing Plaintiffs "Other similarly situated Customers 1-100, Other similarly situated CTA's 1-100, Nefertiti Risk Capital Management, LLC." yet continuing to assert the same 15 counts in total. Plaintiff amended the caption title to the original complaint but failed to relevantly or correspondingly amend the remaining body of the pleadings in the Plaintiff's First Amended Complaint.

## <u>STATEMENT OF FACTS</u>

Even taking all of the facts alleged in the Amended Complaint to be true, Plaintiff has still failed to allege cognizable claims against Individual Plaintiff, Julie Villa.

A.   <u>The Plaintiff.</u>

Plaintiff is an individual purportedly holding a Cambridge Masters in Applied Math and Theoretical Physics, working in all aspects of Global Financial Markets with JP Morgan. Kumaran is an apparent risk management expert with software knowledge. (Exhibit 12: Kumaran CV), incorporated by reference.

Plaintiff's Amended Complaint claims cover an expansive time period from 2011 to 2019. Plaintiff's straw man [1],[2] alias, SIVA, was introduced to Defendant on December 7, 2016 by electronic mail. (Exhibit 02: Siva alias), incorporated by reference.

Defendant and SIVA exchanged communications until December 22, 2016, with one electronic mail that was resent upon SIVA's request on January 3, 2017. No further contact or communications were exchanged between Defendant and SIVA

On August 20, 2020 Plaintiff was ordered to amend the original 70 page Complaint containing 15 counts and 374 allegations in compliance with 28 U.S. Code § 1654, but has failed to substantively modify the 15 counts. Plaintiff has further enlarged the Amended Complaint adding 33 pages, including an additional 173 allegations, which now totals 547 allegations against Defendant's collectively.  The caption of the case was changed in compliance with the court order but the body of the complaint continues to assert claims beyond Plaintiff's individual standing. Plaintiff can not assert facts that are outside the scope of her individual pleadings. Plaintiff's  Amended Complaint cites "upon information and belief" 33 times lacking material evidence or substantive evidence.

## B.    <u>The Defendant.</u>

Defendant, Julie Villa, is a Financial Regulatory Authority ("FINRA") registered representative at Garwood Securities, LLC., headquartered in Warrenville, Illinois, with a branch

---

[1] "straw man | Wex | US Law | LII / Legal Information Institute.https://www.law.cornell.edu/wex/straw_man.
[2] "straw man - Legal Dictionary | Law.com. https://dictionary.law.com/Default.aspx?selected=2026.

office in Austin, Texas.  Defendant's father was Don Burton, former investigator for the District Attorney's Office in Orange County, CA, Defendant has grown up around and under the law and has a clean NFA history and spotless FINRA record after more than twenty years in the financial services industry. (Exhibit 5: JV-FINRA), incorporated by reference, Defendant was born and raised in California from (Oct.1958 - Apr.2010), resided in Hawaii (May 2010 - Oct. 2011), California (Nov. 2011 - Sep. 2013), Hawaii (Oct. 2013 Aug.2019). And currently resides in Utah since Sep. 2019. Defendant has never lived in Austin, Texas as falsely asserted in a statement by Plaintiff. (FAC Vision - Page 30, 147)

Defendant is an equities and options stockbroker and registered representative, since June 1, 2016 to the present, of Garwood Securities, LLC, both regulated by Financial Industry Regulatory Authority ("FINRA"). Defendant works in a sales and support capacity in the equities and options Industry. Defendant holds the: Series 7 license; Series 63 license; Series 24 license, Series 55 license, and Series 4 license. Defendant became a registered Futures associated person to expand her Financial Services education as an investment professional. Defendant passed her Series 3 examination and obtained a series 3 futures-trading license.

Defendant was a registered futures broker with Lazzara Consulting Inc. dba as TradePro Futures ("TradePro Futures (LCI)") from July 11, 2014 to May 6, 2015 a period of ten months. Defendant has never: (i) worked in a sales capacity in the Futures Industry; (ii) spoken to any prospective client or active customer about anything related to the Futures Industry; (iii) placed a commodities trade. This was solely a referral arrangement which allowed Defendant to be paid on any futures business that Defendant referred to TradePro Futures (LCI). Defendant only referred potential business to LCI with the expectation of compensation. Defendant was never involved in the day to day activities of the firm.  Defendant was unable to successfully refer

business to TradePro (LCI) and after ten months with no customer referrals, Defendant subsequently withdrew registration with the NFA and has not been a registered futures broker since. Defendant did not receive any compensation or remuneration of any kind from TradePro (LCI) or any other Defendant named in the Amended Complaint. (Exhibit 15: Declaration-Lazzara), incorporated by reference.

**C.    <u>Plaintiff Alleges Defendant Aggressively Solicited Plaintiff's Business</u>.**

A foundational argument Plaintiff asserts in the Amended Complaint insists Defendant aggressively solicited Plaintiff. The facts and evidence disclose that not only was Plaintiff the original solicitor, pushing to be introduced to Defendant, but also Defendant was uncharacteristically lackluster in following up with Plaintiff. During the course of a well documented two week period the records reveal an insistent Plaintiff initiating each occurrence of contact with ARMO and Defendant..

1.    During the two week period from initial contact to final email exchange, Defendant sent 5 emails consisting of 143 words, every one of them was responsive to either ARMO or Plaintiff. They include: (12/7: 22 words), (12/16: 28 words), (12/22:17 words), (12/22: 55 words), and (12/22: 21 words). During the same two period Plaintiff sent 2 emails consisting of 79 words including (12/22: 67 words), and (12/22: 12 words). Defendant never initiated an electronic mail communication.

2.    Plaintiff's statements to the court are provably false and have no evidentiary support in violation of Rule 11.

3.    On December 7, 2016 Plaintiff "Samantha Siva Kumaran", an individual residing in the state of New York, first began to solicit Defendant through her straw man alias using electronic email systems, pleading for a referral to an equity and options broker and introduction

through a third party, Melissa Armo ("ARMO"). Armo, a New York resident and owner-operator of Stock Swoosh, LLC, has offices in New York City.  (Exhibit 1:Armo profile), incorporated by reference.

4.      Armo forwarded Plaintiff's email to Defendant "Julie Villa", an individual residing in the state of Hawaii. (Exhibit 03: Email1-4), incorporated by reference.

5.      Defendant is a Registered Representative with Garwood Securities, LLC, a Registered Broker Dealer located in Warrenville, IL with a branch office in Austin, Texas.

6.      Each and every electronic mail communication and interaction between Plaintiff and ARMO; and subsequently after referral to Defendant by ARMO, between Plaintiff and Defendant was perpetuated through the straw man alias. Defendant followed up with Plaintiff using normal, ordinary, and routine business practices on behalf of Garwood Securities, specifically two voicemails, and five emails in response to Plaintiff's requests for equity and options information. (Exhibit 6:Email 6), (Exhibit 7:Email 7), (Exhibit 8:Email 8), (Exhibit 9:Email 9), all incorporated by reference.

7.      On December 16, 2016  Plaintiff called and spoke with Defendant and explained she was in the process of opening two hedge funds, one for equities and options and the other for futures.  Defendant told Plaintiff that she could help her with the equities and options account and proceeded to explain the solutions available through Defendants firm. Plaintiff was very solicitous about costs associated with equities and options software products and brokerage services charged to her by Plaintiff's existing brokerage firm. This included equities and options exchange fees for data, software trading platform costs and brokerage trade commissions.

        Plaintiff then began to solicit Defendant for alternatives to equities and options software products and brokerage related service fees through a futures solution. Defendant told

Plaintiff that Defendant could only assist Plaintiff with an equity and options account. Defendant explained equities and options solutions to Plaintiff and referred Plaintiff to Trey Lazarra at Trade Pro Futures as a possible solution for her futures business. Defendant told Plaintiff that Defendant was no longer a Futures Broker. (Exhibit 14:JV-NFA), incorporated by reference. Defendant followed up Plaintiff's phone call with an email.

8.      From December 16, 2016 through December 22, 2016, Defendant sent Plaintiff 5 emails detailing Gar Wood Securities Equity and Option solutions exclusively, i.e. clearing arrangements, software options, commissions and fees, Software Demo download and login information. Subsequent contact between Plaintiff and Defendant was limited to an email exchange on December 22, 2016 where Plaintiff requested a demo of the equity and options trading software

9.      On January 3, 2017 Defendant resent a previous email dated December 16, 2016 upon request of Plaintiff. Plaintiff never proceeded to open an equities and options account with Defendant's brokerage firm, GarWood Securities, LLC. And Defendant was not aware if Plaintiff ever pursued the opening of a futures account with TradePro (LCI).

10.     Plaintiff and Defendant had no further communications regarding equities accounts or option accounts. And there was no more communication between them until the "interim period" described in #11 and #12 below.

11.     On or about April 27, 2017 Gerard Lazzara, III, ("Trey") a nickname from the americanized french pronunciation for "Trois", three or the third, of TradePro Futures (LCI) called Defendant. Trey said his long time assistant, responsible for handling telephone calls and clerical work, had left the company to pursue other interests. Trey asked if Defendant would be able to help him by taking call overflow and providing basic customer service during the interim

period, until he could hire her replacement. Defendant agreed to help as a friend without pay since his wife Michelle had babysat her grandchildren several times without payment, and it was to be a similarly brief, as needed situation. Defendant subsequently took call overflow remotely from Defendant's residence on Maui for a limited, sporadic as needed basis that lasted approximately forty-five business days ("the interim period") until about June 28, 2017.

12.    During the interim period Defendant answered and transferred phone calls to Trey, and on a few occasions heard and spoke with SIVA.

13.    Plaintiff had leveraged her solicited equities and options broker referral of Defendant from AMRO on the pretext that Plaintiff was interested in AMRO's stock market "Swoosh" trading course. Plaintiff instead solicited AMRO again, but this time for an investment in Plaintiff's Hedge Fund. AMRO did not invest, Plaintiff did not take the Swoosh trading course.

14.    Plaintiff then pursued Defendant for information about equities and options trading platforms, and associated brokerage costs. (see #7 above) Plaintiff further solicited Defendant for a Futures broker referral. Defendant at no time discussed futures with Plaintiff. Plaintiff did not open an account with Defendant. Plaintiff instead leveraged Defendant for a Futures broker referral.

15.    It was during the interim period Defendant learned that SIVA had opened a trading account at TradePro Futures (LCI).

**D.    <u>Plaintiff's Alleges That Defendant Knew She Was A CTA Target</u>**

Plaintiff repeatedly and falsely asserts that Defendant had knowledge of "the scheme and the fraud" and knew that Plaintiff was a Commodities Trading Advisor ("CTA") Target. Defendant had no conversations, never mentioned, alluded or made reference to Futures, and did

not discuss anything related to Futures business with Plaintiff. At the time of Defendants responses to Plaintiff's solicitous demands and inquiries into equities and options related business.

**Please take Notice**: Plaintiff states at (p. 30, #150) "Villa at the time of the solicitation had direct, actual and material knowledge that if Kumaran as a CTA, opened an account with Lazzara and ADMIS, *et al*."  On December 12, 2016 Plaintiff initiated telephonic communications with Defendant, soliciting more information after their email exchange. Plaintiff did not become a registered "CTA" until April 07, 2017, almost four months later.  (Exhibit 13:NFA-Kumaran), incorporated by reference.

Defendant never solicited accounts in the name of "Samantha Siva" or "Samantha Siva Kumaran", or any other account related to the Futures Industry. Defendant did not work or have any arrangement or agreement with TradePro (LCI), (LCI), Vision, HRHC or ADMIS. Defendant had no knowledge of Plaintiff's account, where it was opened or what name it was opened under. Plaintiff was not involved with the opening of Plaintiff's, or any other, Futures account. Further, I have no knowledge of the policies or procedures of ADMIN as Plaintiff alleges in the Amended Complaint.

E.     **The Allegations Against  Defendant.**

**WHETHER ALLEGED FRAUD OR FRAUDULENT  OMISSION IS PRESENT:
COUNTS 1 AND 3)**

Defendant has no agreement or contract with Plaintiff and does not have any special or superior knowledge that would be contemplated by the "special facts" doctrine.  And at all times during the actions alleged in the Amended Complaint Defendant held no fiduciary position or role that would require Defendant to disclose. See Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173, 178 (2011). Defendant had no special relationship with Plaintiff and therefore had

no duty to disclose that fact that Defendant was at one time registered with the National Futures Association ("NFA") and that Defendant's registration was at TradePro (LCI). Defendant's detailed history with NFA and FINRA are easily accessible in the public domain. Where the alleged fraud consists of omitting information rather than the misrepresentation of facts, courts typically require special circumstances in order to impose a duty to disclose. Thus, a fraud claim cannot ordinarily be based on the failure to disclose information rather than a false representation of facts. [3]

"Under New York law, to state a claim for fraud a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." Wynn v. AC Rochester, 273 F.3d 153, 156 (2d Cir. 2001) (citing Lama Holding Co. v. Smith Barney, Inc., 88 N.Y.2d 413, 421 (1996)). An omission is fraudulent "only if the non-disclosing party has a duty to disclose." Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V., 68 F.3d 1478, 1483 (2d Cir. 1995). A duty to disclose arises if, among other things, "one party makes a partial or ambiguous statement that requires additional disclosure to avoid misleading the other party." Id.

### *WHETHER ANY AGREEMENT OR FIDUCIARY DUTY  EXISTS BETWEEN THE PARTIES (COUNT 2)*

Plaintiff's allegations and causes of action are based on events prior to Defendant's involvement. Plaintiff's timeline of events and claims do not include accurate representations or statements  made by Defendant or any entity represented by Defendant. And do not correctly describe the Defendant's proper title, duties, or associations when interacting with Plaintiff.

---

[3] "Fraud Claim Can be Based on Duty to Disclose Even Without ...." 18 Sep. 2017, http://nyfraudclaims.com/fraud-claim-based-on-duty-disclose-without-special-relationship/.

Plaintiff's claims and Exhibits have no direct or indirect bearing on the Defendant and the alleged causes of action are based on events prior to Kumeran's soliciting Defendant.

Plaintiff has not produced evidence, or extrinsic evidence of a contract or agreement with Defendant and Defendant has never affirmed a contract or agreement with Plaintiff, because no express or implied contract or agreement between the parties exists. Defendant does not have a contract or agreement with any of the named Defendants in Plaintiffs Complaint. Defendant has not received any compensation or remuneration of any kind from the named Defendants in Plaintiffs Complaint. The patent ambiguity of claims asserted in counts (1-15) by Plaintiff arise from the fact that no relationship exists between the Plaintiff and Defendant. "Plaintiff has not been aggrieved by Defendant and there is no remedy, cure or relief that can be granted Plaintiff". Nindle v. State Bank,

There is no dispute or controversy with Defendant; Julie Villa is not a party to any agreement or contract. "When a claim alleges fraudulent inducement of contract, the cause of action accrues when the contract is executed. Triangle Underwriters, Inc. v. Honeywell, Inc., 604 F.2d 737, 748 (2d Cir. 1979) (internal citations omitted) (applying New York law)." *Beach v Citigroup Alt. Invs. LLC*, *31 [SDNY, Mar. 7, 2014, 12 Civ. 7717 (PKC)]

### _WHETHER DEFENDANT PARTICIPATED IN CONSPIRACY OR RICO SCHEME (COUNTS: 4, 5, 6)_

Defendant  was never part of any sales team with LCI, Vision or ADMIS and has never solicited a futures account on behalf of any of the other named Defendants, aggressively or otherwise. Defendant has never been associated with or done any business with Vision Financial or ADMIS and was not aware that LCI had a clearing arrangement with them. Defendant does not know any of the other named Defendant's in the Amended Complaint beyond Gerard

Stephen Lazzaara, III, (Trey) of Lazzara Consulting, Inc. Defendant answered phones and provided some clerical assistance to TradePro (LCI) for an interim-period of forty-five business days in the capacity of an outside service provider and did not, during that time or any time before or after, direct or participate in the operation or management of the alleged RICO enterprise. Defendant's registration with LCI was strictly for referral purposes but since Defendant  had zero referrals after 10 months Defendant  withdrew Defendant's registration. Defendant never received any form of compensation or remuneration from Gerard Lazzaara, III, TradePro (LCI) or any of the other Defendants named in this Amended Complaint.

Defendant does not meet the "Operation or Management" Test. In Reves v. Ernst & Young, 507 U.S. 170 (1993), the Supreme Court set forth the standard to determine whether a defendant's activity constitutes sufficient participation in a RICO enterprise to hold it liable for a substantive RICO violation. Interpreting the statutory phrase "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs," the Court held that at a minimum the RICO statute requires that the defendant have "some part in directing the enterprise's affairs." Id. at 179 (emphasis in original). Applying that understanding, the Court further determined that a defendant cannot be held liable for a substantive RICO violation unless it "participated in the operation or management of the enterprise itself." Id. at 183. The Court instructed that it is not enough for a defendant to conduct or participate in its own affairs—to be liable it must participate in the conduct of the enterprise's affairs. Id. at 185. Accordingly, "simply aiding and abetting a violation is not sufficient to trigger liability

*New York v United Parcel Serv., Inc.*, *8-9 [SDNY, Aug. 9, 2016, 15-cv-1136 (KBF)]

The test advanced in Reves is intended to make it difficult to hold an outside service provider—such as, for instance, an accountant or lawyer—liable under § 1962(c). Maersk, Inc. v.

Neewra, Inc., 687 F. Supp. 2d 300, 335 (S.D.N.Y. 2009); Arthur Andersen, 924 F. Supp. at

465-67; 131 Main St. Assocs. v. Manko, 897 F. Supp. 1507, 1527 (S.D.N.Y. 1995). Subsequent

to Reves, courts in this Circuit have made clear that providing ordinary but important business

services to a RICO enterprise is not itself sufficient to meet the operation or management test.

City of New York v. Smokes-Spirits.com, Inc., 541 F.3d 425, 449 (2d Cir. 2008), rev'd on other

grounds, Hemi Grp., LLC v. City of New York, 559 U.S. 1 (2010); Azrielli v. Cohen Law

Offices, 21 F.3d 512, 521-22 (2d Cir. 1994); Arthur Andersen, 924 F. Supp. at 466 (collecting

cases); see also Univ. of Maryland at Baltimore v. Peat, Marwick, Main & Co., 996 F.2d 1534,

1539 (3d Cir. 1993). Likewise, "[a] defendant does not 'direct' an enterprise's affairs under §

1962(c) merely by engaging in wrongful conduct that assists the enterprise." Redtail Leasing,

Inc. v. Bellezza, No. 95 Civ. 5191 (JFK), 1997 WL 603496, at *5 (S.D.N.Y. Sept. 30, 1997).

### *TRADE SECRETS AND MISAPPROPRIATION COUNTS:  (7,8, 9)*

Defendant has no knowledge of any software that Plaintiff claims to own, moreover at p.90 no.

468 of the Amended Complaint "Plaintiff Kumaran's and other CTA's transaction records,

trading strategies and risk management strategies constitute competitive commercially sensitive

information, including trade details, formulae, compilations, programs, methods, techniques, or

processes, that give them an FAC Vision - Page 91 economic advantage are trade secrets"

Plaintiff continues to assert damages on behalf of prior class action Plaintiffs "other CTA's

similarly situated". This count does not hold for Plaintiff individually in the Amended

Complaint.  "To succeed on a claim for the misappropriation of trade secrets under New York

law, a party must demonstrate 1) that it possessed a trade secret; and 2) that the defendants used

that trade secret in breach of an agreement, confidential relationship or duty, or as a result of

discovery by improper means." *The A Star Group*, *Inc*. *v*. *Manitoba Hydro*, 2014 U.S. Dist.

LEXIS 88825, * 24 (S.D.N.Y. 2014, *TravelSavers Enters., Inc. v Analog Analytics, Inc.*, 2014 NY Slip Op 33872, *4-5 [Sup Ct, Nassau County 2014]

### *WHETHER DEFENDANT HAD DUTIES IN CONTRACT OR BENEFITED:* *(COUNTS 12 AND 14)*

There was no duty arising for Defendant to inform Plaintiff of Defendant's past futures license or role as an NFA associated member from a seventeen-month prior registration which expired unrenewed.

> "Stockbrokers can hold both a Series 7 and a Series 3 license simultaneously, but if they don't, they are required by law to refer a client interested in commodities and futures on to a licensed Series 3 representative.[4] This is the action that Defendant took when referring TradePro (LCI) to Plaintiff."

***Please Notice*** that clearing firms having introducing brokers that open accounts for individuals CTA's, LLC's, corporations etc is what they were intended to do. This is the normal course of business.  Plaintiff's assertions would be the equivalent of demonizing Nordstroms for selling their goods to customers.

Because there is a two-year window after registration expiration that remained open, where there was no requirement for Defendant to retest for the license but only to re-register, there is no financial motive in allowing the registration to expire. Defendant had no superior knowledge and never acted in any way to defraud Plaintiff.  ***Please Notice*** *that the timing of* *Plaintiff's allegations are seventeen months prior to the time Defendant was solicited by Plaintiff* *after being introduced by ARMO*. Further, Defendant never provided Plaintiff a unique or specific link to Defendant's "Linked-in" profile, it is part of Defendant's associated firm, Gar Wood Securities, email signature block. Because Defendant does not have a role or any

---

[4] "Series 3 License: A Career With No Limits - Investopedia."
https://www.investopedia.com/articles/professionaleducation/08/series-3-commodities.asp. Accessed 21 Nov. 2020.

involvement with the Futures market, or Vision Financial, there is no information on Defendant's "Linked-in" profile that reflects it.

Plaintiff fails to present any evidence or make a probative statement alleging what action Defendant made, on which Plaintiff relied upon, that specifically caused injury or harm. a complaint alleging securities fraud must satisfy Rule 9(b), *Ganino*, 228 F.3d at 168, which requires that "the circumstances constituting fraud shall be stated with particularity,"Fed.R.Civ.P. 9(b). The particularity pleading threshold requires, among other elements, that the Plaintiff state what the Defendant gained from withholding the information and why the plaintiff's reliance on the omission was reasonable and detrimental.

> APs are individuals involved in a capacity that involves the "solicitation or acceptance of customer orders" or "the supervision of any person or persons so engaged." If a person communicates only with broker-dealers or finders and not directly with investors, that person will not be deemed an "associated person" and can continue interacting with such intermediaries without registration.[5]

Merely "parroting a legal conclusion" is insufficient, and noted that the court was "hard pressed" to see how the alleged silence of defendants regarding previous NFA futures registration could give rise to a claim for fraud where those very facts were contained in public records contained at the NFA and FINRA websites. A securities fraud complaint based on misstatements must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.*Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir.2000). Allegations that are conclusory or

---

[5] "Who Does Not Have to Take the Series 3?."
https://seccc.com/news/who-does-not-have-to-take-the-series-3/. Accessed 22 Nov. 2020.

unsupported by factual assertions are insufficient.*See Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir.1986).*ATSI Communications, Inc. v Shaar Fund, Ltd.*, 493 F3d 87, 99 [2d Cir 2007]

Rule 9(b) has long required plaintiffs in securities fraud cases to state "the circumstances constituting fraud . . . with particularity." The PSLRA imposed an additional requirement: whenever plaintiffs allege, on information and belief, that defendants made material misstatements or omissions, the complaint must "state with particularity all facts on which that belief is formed."15 U.S.C. § 78u-4(b)(1). This requirement plainly applies in this case. In numerous places in their complaint, the plaintiffs allege, based on information and belief, that the assertions made are true. *Novak v Kasaks*, 216 F3d 300, 312 [2d Cir 2000]

Securities fraud allegations are subject to the heightened pleading requirements of the PSLRA. The PSLRA requires plaintiffs to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). *Telenor E. Invest as v Altimo Holdings Investments*, 567 F Supp 2d 432, 441 [SDNY 2008]

## ARGUMENT

### A.      The Motion to Dismiss Standard

Under Twombly, a complaint should be dismissed where it does not contain sufficient allegations of fact to state a claim for relief that is "plausible on its face." Twombly, 550 U.S. at 570; see also Fleurimond v. N.Y. Univ., 722 F. Supp. 2d 352, 354 (E.D.N.Y. 2010). Although the Court must accept the material facts of the complaint to be true and to draw all reasonable inferences in the plaintiff's favor, this "'tenet' 'is inapplicable to legal conclusions,' and 'threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice.'" Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Iqbal, 556U.S. at 678).

The legal baseline is established by determining whether "Kumaran" individually has suffered any harm or damages personally for which she should be granted relief. Plaintiff's narrative is overreaching and the framework of the original complaint relies on an alleged nexus of nefarious activities and transactions between previously named Defendants as part of a class action. The prior claims asserted in Counts (1-15) and associated relief sought on behalf of prior class action Plaintiffs do not survive and are not applicable to Plaintiff's amended complaint as Samantha Silva Kumaran ("Kumeran") as an individual, sole-proprietor, assignee or successor in interest to NRCM. Because the Court denied Kumaran's request for this action to proceed as a class action, and dismissed without prejudice the claims of all the plaintiffs except those of Kumaran.

Moreover, a court's "review of a decision to grant a motion to dismiss 'is limited to the facts as asserted within the four corners of the complaint' and any attached documents." Abdullahi v. Pfizer, Inc., 562 F.3d 163, 210-211 (2d Cir. 2009) (quoting McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007)

## B.    Burden of Proof Standard

In the Amended Complaint, Plaintiff reveals a fact pattern of asserting allegations against Defendant that Plaintiff is found to be perpetrating. Defendant has focused on the issue of whether Plaintiff had been solicited by Defendant as she claims or if in fact Plaintiff was found to be the one soliciting Defendant. This is a material fact on which the rest of Plaintiff's causes of action depend. The burden of proving every assertion and every count made against Defendant is the responsibility of the Plaintiff. If Plaintiff fails to meet the burden of proof

standard in the claims of fraud, it is more than likely Plaintiff's other claims are unfounded.

It is even more clear and convincing when considering the evidence is discoverable on the publically available internet.  it provides one more reason for the court to grant <u>Defendant's Motion to Dismiss.</u>  by   the focus Defendant has placed provided a preponderance of evidence that clearly shows Plaintiff was soliciting Defendant. "To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)." *Confido Advisors, LLC v United States Real Estate Co.*, *10 [SDNY, Sep. 6, 2018, No. 17 Civ. 5632 (JFK)]

**C.**    **The Complaint Fails To State A Claim Against Upon Which Relief May Be Granted.**

Plaintiff's claim must be dismissed because Plaintiff's legal claim is without merit. Plaintiff's entire argument depends on false assertions. Defendant has never received any money, consideration, remunerations, financial gain, or benefited personally or professionally (in any capacity whatsoever) from any compensation of any kind from, or related to, the other named Defendants. The Complaint Impermissibly Attempts To Hold Defendant Liable Based On Her Status As A Registered Representative Of A Brokerage Firm. The court can not grant money damages simply because Defendant made a referral The multiple claims Plaintiff makes against Defendant are overreaching, repetitive and irrelevant.

**_D_.**    **Plaintiff Repeatedly Violates The Clean Hands Doctrine.**

Plaintiff repeatedly violates the clean hands doctrine by making assertions that are known by Plaintiff, or should be known by Plaintiff, to be inaccurate or altogether false and through misleading statements confuses the issues. Plaintiff submitted sections of websites as hearsay evidence in electronic document form and PDF format that offer no proof of her asserted statements and claims. The effect of Plaintiff's irrelevant hearsay evidence misinforms the court.

Given Plaintiff's extremely brilliant educational history, substantial career achievement in the financial services sector, meticulously detailed software coding prowess, and indefatigable litigious efforts; it is reasonable to believe that Plaintiff is capable with a modicum of due diligence and slight amount of research to find the public records Defendant has produced to quash Plaintiff's bad faith actions.

### *E.* **Plaintiff Lacks Standing, Has No Injury In Fact And Has Suffered No Actual Harm.**

Throughout the Amended Complaint Plaintiff repeatedly and continually asserts the statement "Villa represented to Kumaran...".  However, Villa could  not represent anything to "Kumaran" as Plaintiff was only known, as she represented herself at all times to Defendant (by telephonic and electronic mail communications), as straw man *alias* "Samantha Siva". Therefore, based on the law as applied to the facts the complaint is void ab initio and all claims against Defendant are annulled. Kumaran is not a real party in interest. FRCP (17).

Plaintiff hid behind a straw man alias "Samantha Siva" ("SIVA") for the sole purpose of concealing her identity from Defendant. Plaintiff  knew the nature of her actions and deceived Defendant, purposely concealing Plaintiff's identity.  Plaintiff continues to defraud the court and distract from the fact of how she misidentified herself to Defendant up to and including the day process of service was attempted through email of this First Amended Complaint on August 14, 2020. (Exhibit 10:Service), incorporated by reference. using Plaintiff's name "Samantha Siva Kumaran" ("Kumaran"), (Exhibit 11:Kumaran-plaintiff), incorporated by reference.    and an email address not previously revealed or known to Defendant.

## **CONCLUSION**

## **PLAINTIFF'S AMENDED COMPLAINT DOES NOT APPLY TO DEFENDANT**

Even if all of the assertions in Plaintiff's earlier attempt at class action certification and representation in the original Complaint were true the question arises as to whether they hold true for Plaintiff "Samantha Siva Kumaran" in her individual capacity. The amended Complaint does not materially or sufficiently modify the claims to reflect the Courts Orders to remove prior Plaintiffs, "Other similarly situated Customers 1-100, Other similarly situated CTA's 1-100, Nefertiti Risk Capital Management, LLC."  The nexus has not been made between the originally plead assertions; causes of actions, and following requests for relief and damages, as they would now apply to the Individual Plaintiff "Samantha Siva Kumaran". Defendant further asserts any potential merit to prior claims made have faded if they had ever held merit at all. Plaintiff has failed to demonstrate Defendant was involved in this matter in any legally binding way,

To have standing, a party must show an "injury in fact" to *their own* legal interests. If the party cannot show harm, the party does not have standing and is not the right party to be appearing before the court. Plaintiff has not alleged a sufficient legal interest and "redressable" injury to participate in the case.

Further, Plaintiff has not satisfied the burden of proof and failed on all counts to provide and prove, or offer any evidence in support of, the factual elements of each cause of action to sufficiently meet the test or standard as required for each of the claims against Defendant, and therefore can not be granted relief from the court.

Defendant has made a strong case on balance, constructed of: clear and convincing statements; documentary evidence providing sufficient material facts of consequence; witness declaration; and a preponderance of the evidence in support of its Motion to Dismiss.

For the reasons stated above, Defendant moves this court to grant its Motion to Dismiss Plaintiff's First Amended Complaint against Defendant Julie Villa, in its entirety, with prejudice.


Dated:          November 20, 2020
                Herriman, Utah



                                    _/s/ Jule Villa_____
                                    JULIE VILLA
                                    Pro Se
                                    3778 West Solana Court, A-306
                                    Herriman, UT 84096
                                    Phone 808-357-6764
                                    Email: julievilla2002@gmail.com