JULIE VILLA
Pro Se
933 Nottingham Road
Keller, TX  76248
Phone 808-357-6764
Email: julievilla2002@gmail.com

## IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAMANTHA SIVA KUMARAN,<br>NEFERTITI RISK CAPITAL MANAGEMENT, LLC,<br>NEFERTITI ASSET MANAGEMENT, LLC<br>NEFERTITI HOLDING CORPORATION<br>　　　　　　　Plaintiffs,<br>　　　vs. | Case　No:1:20:CV:03871-GHW-SDA<br><br>Related Case: 1:20:CV 03873<br>Related Case: 1:20:CV 03668 |
| Vision Financial Markets, LLC<br>Howard Rothman,<br>Robert Boshnack,<br>High Ridge Holding Corporation, LLC<br>High Ridge Futures, LLC<br>H Rothman Family, LLC<br>Boshnack Family, LLC<br>Vision Brokerage Services, LLC<br>John Felag,<br>Vision Investment Advisors, LLC<br>Lazzara Consulting, Inc,<br>Gerard Stephen Lazzara,<br>Julie Villa<br>　　　　　　Defendants | **MEMORANDUM OF LAW** |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S  MOTION TO DISMISS

## PLAINTIFF'S SECOND AMENDED  COMPLAINT

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

I.      Background............................................................................................................. 1

II.     Preliminary Statement........................................................................................... 4

III.    Kumaran's Allegations Against Defendant ........................................................ 9

IV.     Arguments............................................................................................................ 10

V.      Counts .................................................................................................................. 12

VI.     Legal Standard .................................................................................................... 19

VII.    Conclusion ........................................................................................................... 21

# **TABLE OF AUTHORITES**

Cases

Ashcroft v. Iqbal, 556 U.S. ................................................................................... 9

Bell Atlantic Corp. v. Twombly, 550 U.S. ............................................................. 9

Rodriguez v. Eastman Kodak Co., 88 F. .............................................................. 12

**STATUTES**

17 U.S.C. § 106

28 U.S. Code § 1654

<u>15 U.S.C. § 78u-4(b)(1)</u>.

§ 1962(c)


**RULES**

Federal Rule of Civil Procedure 8

Federal Rule of Civil Procedure 9(b)

Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(17)(a)

Federal Rule of Civil Procedure 20.1

Julie Villa ("Defendant") submits this Memorandum of Law in support of her Motion to Dismiss Plaintiff's Second Amended Complaint ("SAC") and seeks to remove Defendant from the Complaint based on FRCP 12(b)(6) Plaintiff's failure to state a claim upon which relief can be granted; FRCP 8(a)(2) Plaintiff's failure to state a short and plain statement of the claim showing that the pleader is entitled to relief, and FRCP 12(b)(1) Lack of subject-matter jurisdiction.

## INTRODUCTION

### I.      Background

Plaintiff's Complaint adds Defendant "Julie Villa" to a series of continuing litigation Plaintiff "Kumaran" is expanding through the courts through a growing and burdensome number of false assertions based on supposed information, misrepresentations of belief, and hundreds of baseless allegations against Defendant.  Plaintiff has provided no affirmative evidence to support a highly constructed misconstrued morass of opinion.  Plaintiff's SAC as it relates to Defendant, Julie Villa, prevaricates the truth of my limited and disinterested involvement in this matter. Defendant and Plaintiff had (1) two series of interactions (2) in two distinctly different situations (3) and both for very limited periods of time.

### A.      Defendant "Julie Villa"

Defendant is a registered equities and options representative in the financial services industry.  Defendant's licenses are commensurate with passing six exams working for four firms comprising twenty-one years of experience, and has no disclosures, i.e., a "spotless record". Defendant is registered with Gar Wood Securities, LLC ("Gar Wood") a brokerage firm headquartered in Warrenville, Illinois, that operated a branch office located in Austin, Texas at all relevant periods.  Defendant worked for Gar Wood from an off-site, remote location at her home office in Hawaii during all times relevant to the allegations brought here.  Defendant first became aware of Plaintiff "Samantha Kumaran" when served with the First Amended Complaint ("FAC").  Plaintiff only referred to herself previously as "Samantha Siva" or "Samantha".

### B.      Plaintiff "Samantha Siva Kumaran"

1

Plaintiffs' actions *inter alia*: (1) December 14, 2015, registered Nefertiti Risk Capital Management, LLC in New York ("NRCM"), (2) December 12, 2016, called and introduced herself to Defendant, (3) April 7, 2017, registered as a Commodity Trading Adviser ("CTA"), (4) September 21, 2017, registered Nefertiti Holding Corporation in New York ("NHC"), (5) May 29, 2018, registered Nefertiti Asset Management LLC ("NAM") in Delaware.

**C.**    **Lazzara Consulting Inc., dba TradePro Futures ("LCI")**

TradePro Futures is a Futures and FOREX introducing broker and National Futures Association ("NFA") registered member. On July 11, 2014, Defendant registered as an associated person ("AP") through the NFA with Trey Lazzara ("Lazzara"), the President of Lazzara Consulting, Inc, ("LCI") dba TradePro Futures located in Austin, Texas (and are named "Defendant's" in this Complaint).

The registration took place one month before Defendant's 2-year re-registration window would have expired in August 2014; this precluded a requirement for additional testing to reinstate the license. Defendant remained at LCI until May 6, 2015, unable to successfully refer business to LCI, and after ten months with no customer referrals subsequently withdrew registration with the NFA and has not been a registered futures broker since. This is relevant should Defendant have wanted to participate in revenue sharing as Plaintiff alleges, Defendant could have simply re-registered with NFA as an AP any time prior to May 5, 2017 and participated in whatever "potential business" Plaintiff may have represented.

**D.**    **Defendant Solicited by Plaintiff**

Circa November 2016, Plaintiff while seeking investments for NRCM, a hedge fund she controlled, was introduced to Melissa Armo ("Armo"). Armo is a New York resident providing equities and options trading education and classes over the internet through her company "Stock Swoosh" and is a prior client and friend of Defendant. Plaintiff contacted Armo using the name "Samantha Siva" under the pretext that she was interested in Armo's trading classes. Armo met with Plaintiff who turned the conversation towards Plaintiff's desire to raise capital for her hedge fund. Plaintiff also expressed her interest to Armo in finding a new equities and options brokerage firm that offered lower fees and asked Armo for a referral.

On December 12, 2016, Plaintiff further acted on the referral from Armo by placing a phone call directly to Defendant.  Plaintiff solicited Defendant using the name "Samantha Siva" and asked for information about trading software programs for equities and options trading accounts.  **During their one and only phone conversation** Defendant was responsive to solicitation by Plaintiff acting solely in her limited capacity as an equities and options broker. Defendant provided the equities and options information requested by Plaintiff through email. When Plaintiff solicited Defendant for possible futures solutions she appeared to be considering, Defendant explained she was no longer a futures AP, even though no requirement exists to inform, and mentioned Lazzara for futures related conversation.

Defendant had no contractual obligations, no fiduciary relationship, and no professional, special, or material relationship with Plaintiff.  Plaintiff always was able to conduct any due diligence, internet research, access public NFA and FINRA records, or consult with any number of actively registered futures representatives before taking a decision to open an account at any futures brokerage.

BASIC is a free tool that NFA Members and investors can use to research the background of derivatives industry professionals. Whether you are an investor thinking about opening a futures account or an NFA Member contemplating a new business relationship, BASIC can be a valuable resource[1].

FINRA established BrokerCheck in 1988 (then known as the Public Disclosure Program) to provide the public with information on the professional background, business practices, and conduct of FINRA members and their associated persons. By making most of this information publicly available, BrokerCheck, among other things, helps investors make informed choices about the individuals and firms with which they conduct business[2].

**E.**     **Defendant's Interim Assistance with LCI**

On or about April 27, 2017, Defendant was asked during a phone call with Lazzara to help him bridge a gap while he found a new assistant to replace Shelly Steltzer ("Steltzer"), his

---

[1] https://www.nfa.futures.org/basicnet/

[2] https://brokercheck.finra.org/

longtime assistant of eight years who had recently resigned to pursue other interests. It was to be for a short, indeterminate time answering overflow calls, some clerical help with paperwork, and basic customer service tasks. Defendant was not a registered futures broker and at all times acted only in an unregistered capacity.  Defendant simply agreed to help a friend without remuneration since his wife Michelle had babysat my grandchildren several times without payment as a friend when they had both lived in California in 2005.  And even if Defendant had been paid by LCI in her unregistered capacity it would not have been violative of FINRA or NFA rules.  It was to be a similarly brief, sporadic as needed basis that eventually lasted forty-five business days ("the interim period") until about June 28, 2017.  During the interim period Defendant's actions were limited to receiving occasional overflow phone calls for Lazzara and talking to customers to either take messages or transfer them to Lazzara.  It was during "the interim period" that Defendant learned "Samantha" had opened a trading account with LCI.

It is worth judicial notice that an email dated May 24, 2017 from ADM directs Lazzara to move her account out, "*ADM sent me an email this morning about moving your account out of ADM"*, (Plaintiffs Exhibit: Document 89-23), nine business days after Defendant was copied on an email dated May 11, 2017 regarding files Defendant had no idea about and never received, (Plaintiffs Exhibit: Document 89-22), eighteen business days after Defendant began filling the gap for Steltzer.

## II.   **Preliminary Statement**

("[F]or the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true."). *See Ashcroft* v. *Iqbal*, 556 U.S. 662. 678 (2009)

There is no relationship between the Defendant and the Plaintiff. There is no controversy arising over contract because there is none, not actual, not expressed nor implied. There is no  agreement to contest. There are no material facts to dispute, only matters of conduct that are the subject matter jurisdiction of a self-regulatory organization, namely the National Futures Association ("NFA").  The only remaining torts relate to trade secrets, all other claims depend on this alleged tort.

The Second Amended Complaint by Plaintiffs is at least a third rendering of a boilerplate lawsuit before the courts. Generically it consists of 15 counts, 100 or more pages and at least twice as many allegations. The court, defendants and plaintiffs change, except for Samantha Kumaran. Whether it is a Canadian public utility company, the National Futures Association, an energy trading company or a futures clearing organization the main counts remain intact, e.g., Plaintiffs' proprietary intellectual property in the form of software has been stolen, and theft, fraud, omission, misappropriation of trade secrets, breach of contract, etc., comprise some of the basic 15 counts. Relief is being sought by the courts for in an inestimable amount of damages and lost revenue potential from the software theft. Defendant Julie Villa has been dragged up in this net of vexatious litigation in a collective, lump pleading effort before the Southern District of New York. This version of the Complaint includes 202-pages, 1015 allegations and 20 counts, of which 996 allegations and 18 counts are directed toward Villa.

If every factual allegation in the Complaint is true, as it pertains to Defendant Villa, then:

(1) Defendant, who only knew Kumaran as Siva, until the Complaint was filed, four years later; (2) also knew "how the scheme directly targeted CTA's" (¶634.) and that Kumaran was a "CTA target" as of December of 2016 prior to her actual documented CTA registration on April 7, 2017, four months later; (3) In December 2016, when Defendant "communicated both telephonically and in email with Kumaran regarding both NAM, NRCM" (¶307.), it was despite NAM's registration on May 29, 2018, one year and five months later. (4) Defendant's prescient ability is the only explanation for her motive to act outside an unblemished 21 year history of industry experience - to risk it all on an industry "new comer to trading" (¶60.) "newcomers as traders (including Plaintiffs)" (*id*), "[Kumaran] She was an outsider and a newcomer" (*id*). "[Villa] solicited Kumaran in New York City, a newcomer to the futures industry" (*id*.)

(5) All Defendant needed to do was "reverse engineer" (¶75.) either the "risk management software for quantification of commodities options and futures risk" (¶359.) or in "this action" not software but a trading strategy, "CTA's usually give their trading strategies a name, which they call a trading program. This does not mean "program" in the literal sense such as a software program, but the name of the trading strategy." (¶68.) Again, "we are specialized derivatives/options traders using proprietary algorithms with in-built enterprise risk management

5

real-time calculations." (Plaintiffs Exhibit 89-24). And again, "Plaintiffs' transaction records, trading strategies and risk management strategies constitute competitive commercially sensitive information, including trade details, (options strategies which disclose the volumes, strikes, premium, timing, risk profile of delta, gamma and vega and execution) and ***formulae, compilations, programs, methods, techniques, or processes***, that give them an economic advantage, and are trade secrets" (¶66.)

(6) This software, **or** this (formulae, compilations, programs, methods, techniques, or processes) **or** this program/trading strategy, **or** this real-time proprietary algorithm, which took "a First Class Masters and Bachelors, in Applied Math and Theoretical Physics from the University of Cambridge"(¶60.) that was "uniquely developed and designed over twenty years" (¶689.) (¶61.) was reversed engineered, redeployed, and used more effectively by Defendant, than Plaintiff who created it, to gain a competitive edge in the market because Defendant then "engaged in activities to destroy a rival (Plaintiffs) business performance, track record and competitive advantage as CTA's" (¶441.)

(7) Defendant accomplished this within forty-five days, "This is supported by the fact she immediately left working for LCI, just a week after Plaintiffs withdrew all their funds, after there was no more possibility of illegal conversion of Plaintiffs moneys and profits to withdraw for Villa's benefit, and the end of June 2017 admitting the same "45 days" of overlap of involvement (¶823.) Furthermore, Plaintiff asserts that LCI, ADMIS and HRF can't even add a "patch", "and there was no "dev team", or "tech team" (¶469.)

(8) Plaintiffs' software is not accurately and precisely defined within this complaint; (see *supra*) and is not consistently defined with other descriptions of "the software" in other cases this Plaintiff has in the courts.

(9) Defendant then took actions based entirely around a new comer whose system "started to prove out its profitability by April 2017, showing returns of approximately 12% in 60 days" (¶245.) Even though Plaintiff's marketing brochure plainly states, "Past performance is not indicative of future performance." (Plaintiffs Exhibit 89-24) and "The risk of loss in trading commodity interests can be substantial." (*id.*)

6

If this scenario is plausible, consider that - reverse engineering a (A) trading strategy; as defined by Plaintiff: (1) using proprietary algorithms and (2) real-time risk calculations that "is (3) about 75% systematic and (4) 25% discretionary in execution" (*id, p.2*) based upon (a) "geo-political events,  (b) journalists, and (c) market fundamentals" (*id.*) and (B) adding in the additional variable that "transactions where Plaintiff or a customer owned 100% of the Open Interest" (¶468.); is tantamount to regularly picking winning numbers through the randomness associated with lottery statistics.

Furthermore, of the 9 data items listed in Plaintiff's software; "*components that provide the trade secrets of the trading strategy, are the (1) type of option strategy, (2) combination of options trades placed, (3) volumes, (4) **strikes**, (5)**premiums**, (6) delta, (7)gamma, (8) vega, and (9) **times to expiration**, and the combination and integration of the foregoing. The trade secrets also include the timing and execution of the trades as well as the risk management strategies to mitigate risk.*" (¶64.)  Only 3 are in the trade records which are provided by ADM pursuant to 17 CFR Part 240, 17 CFR § 1.33(3): and includes:  (i) the customer's account identification number, (ii) amount of the **premium** (price), (iii) **the strike price**, (iv) underlying commodity, (v) **expiration date**, (vi) date of transaction.

For the allegations in this complaint to be considered as true against Villa is a bridge too far.  The willful suspension of disbelief Plaintiff requires for this pleading to survive a motion to dismiss in its Second Amended Complaint far exceeds the plausibility standard.   The Twombly/Iqbal pleading standards not only specify that a complaint must be plausible on its face, but it must bring forth sufficient factual allegations that nudge a claim across the line from conceivable to plausible.

Plaintiffs Second Amended Complaint through 202-pages avers 18 counts, and 996 allegations that  base their claims against Defendant on three main issues.  Defendant "Villa" (1) as an equities and options broker representative allegedly solicited Plaintiff for a futures account in violation of NFA rules, (2) failed to disclose her prior history to Plaintiff as an AP in an alleged violation of NFA rules, and (3) Defendant while acting in her 'properly unregistered' capacity as a temporary clerical assistant to Lazzara at LCI allegedly had a duty to disclose information required by the National Futures Association ("NFA") Rules and Regulations.  All

7

other repeated allegations, assertions, claims and counts against Defendant rely upon contract or depend upon torts.  Since no actual or implied contract exists between Defendant and Plaintiff the scope of the Complaint is narrowly confined around alleged torts against Plaintiff by Defendant.

Plaintiff's Second Amended Complaint loosely constructs a narrative describing normal, ordinary, usual, and historical financial market activities, and those of associated participants, as the operations of a RICO organization. <u>Plaintiff presents only one Exhibit as alleged evidence (Exhibit 89-22)   against Defendant "Julie Villa" to support any of the 18 counts or 996 allegations, including 27 asserted as facts.</u> (P. 59-63; ¶306-332.) Not one Exhibit presented as evidence by Plaintiff is from Defendant. as *Iqbal* emphasized, Where complaints go no further than those sorts of "threadbare recitals of the elements of a cause of action," they should be dismissed. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Oliver v. U.S. Bancorp, No. 14 Civ. 8948 (PKC), 2015 WL 4111908, at *5 (S.D.N.Y. July 8, 2015) (dismissing FDCPA complaint where the plaintiff provided only "a formulaic recitation of acts prohibited by the FDCPA, without any alleged factual content" in support of her claim).

Plaintiffs' obfuscation of a legal theory through material misrepresentation of the facts makes it a challenge to respond. The Second Amended Complaint is at worst deliberately misleading and at best illustrates a gross misunderstanding of FINRA regulations and NFA regulations concerning Defendant's actions, duties and obligations as an equities and options broker.  In a broad sea of counts and allegations it is easy to lose sight of the fact that Plaintiff's Second Amended Complaint contains no claims or set of facts that, (entities Samantha Kumaran owns and controls named as Plaintiffs: "Nefertiti Risk Capital Management, LLC", "Nefertiti Asset Management, LLC", "Nefertiti Holding Corporation" or Samantha Siva Kumaran as an individual), have been asserted with specificity against Individual Defendant, Julie Villa.

- The claims against the individual Defendant – Julie Villa – relate to alleged conduct on behalf of other named Plaintiffs and Entities, for which she can not be sued individually.

- Defendant – Julie Villa – had essentially no involvement in the matter and had no contractual involvement with any of the other named Defendants in the Complaint and

8

was not a party to any agreements between the parties. In fact, Plaintiff described Defendant as one *who represented herself solely as an equities broker for Gar Wood*.

- All allegations prior to April 7, 2017 and all causes of action to the extent they are based on events that took place before April 7, 2017 fail because they are structured upon Plaintiff – Samantha Kumaran – being a registered Commodities Trading Advisor, ("target").

- At a minimum this Complaint should be stayed by the court as it pertains to Defendant – Julie Villa – until Plaintiff brings her primary complaint to the proper arbitrator of facts specifically alleging Defendant committed fraud, acted with malice and scienter, and failed to disclose, etc., in accordance with NFA Rule 3-2(a).

## III.   Kumaran's Allegations Against Defendant

Accepting as true the well-pleaded factual allegations, drawing all reasonable inferences favorable to Plaintiffs, and considering the documents attached to the Complaint and/or incorporated by reference, the Complaint fails to state claims upon which relief can be granted. Among other things:

### A.   Plaintiff Alleges Defendant Aggressively Solicited Plaintiff's Business

A foundational argument Plaintiff alleges in the SAC insists Defendant aggressively solicited Plaintiff. The facts and evidence disclose that not only was Plaintiff the original solicitor pushing to be introduced to Defendant; but that Defendant was uncharacteristically lackluster in following up with Plaintiff. This is evidenced both before the initial solicitation and after the requisite minimal effort afforded a disinterested lookie-loo. Plaintiff clearly had no intention of opening an equities or options account with Defendant. Defendant never even attempted to follow up with Plaintiff. During a well-documented two-week period, the records, which Plaintiff has failed to produce to the court, reveal an insistent Plaintiff initiating each and every occurrence of contact with ARMO and Defendant.

### B.   Plaintiff's Alleges That Defendant Knew She Was A CTA Target

Plaintiff repeatedly and falsely asserts that Defendant had knowledge of "the scheme and the fraud" and knew that Plaintiff was a Commodities Trading Advisor ("CTA") Target.

Defendant had no conversations, never mentioned, alluded, or referred to Futures, and did not discuss anything related to Futures business with Plaintiff. Defendant had no knowledge of Plaintiff's account, where it was opened or what name it was opened under. Plaintiff was not involved with the opening of Plaintiff's, or any other Futures account. Further, Defendant has no knowledge of the policies or procedures of ADMIS as Plaintiff alleges in the Second Amended Complaint.

**C.**     **Plaintiff's Alleges That Defendant Had a Duty to Disclose Her Former AP Status**

Plaintiff alleges that during their one telephone conversation on December 12, 2016 Defendant had a duty to inform Plaintiff that Defendant was a "former AP under NFA Rules and also licensed FINRA member was required to make full disclosures…" (¶ 309.) and "Villa as a registered broker and former AP, also had mandatory duties to comply with the CEA.." (¶ 355.) These allegations are false and are subject matter jurisdiction for the NFA and FINRA by Plaintiffs own admission. All allegations that arise from Defendant (1) being an NFA Associated Person ("AP"), (2) having a duty to disclose her prior AP registration with LCI, or (3) allegedly "soliciting" Plaintiff while not being appropriately registered - all fall under the subject matter jurisdiction of a Self-Regulatory Agency ("SRO"), namely the National Futures Association ("NFA"). All claims connected, directly or indirectly, with all allegations and claims, express or implied, that Plaintiff *asserted or could have asserted* in this lawsuit pertaining to Defendant – Julie Villa – relate back to the NFA.

**IV.**     **Arguments**

**A.**     **Plaintiff Alleges Misleading Signature Block Information**

Plaintiff alleges Defendant provided false, inaccurate, and misleading information in her email signature block, but does not provide the exhibits as evidence which are in her hands. Plaintiff failed to realize the information contained in Defendant's email signature block is representative of Defendant's member firm Gar Wood and the branch office. Gar Wood is a Member of FINRA, SPIC, NFA. Furthermore, the LinkedIn profile in the signature block is also hyperlinked to information about Gar Wood. "Villa communicated both telephonically and in email with Kumaran regarding both NAM, NRCM and opening an individual account. In her emails dated

December 16, 2016, December 22, 2016, and January 3, 2017, **Villa signed her electronic signature as a "Member of FINRA, SPIC, NFA".**  That information was false when made, as Villa had terminated her membership at the NFA, according to the NFA BASIC on or around May 18, 2015, and was inaccurate and misleading." (¶ 315.)

Plaintiff's allegations are matters considered under 15 U.S. Code § 78s – Registration, responsibilities, and oversight of self-regulatory organizations ("SRO").  The Financial Industry Regulatory Authority ("FINRA") is a private American corporation that acts as a SRO which regulates member brokerage firms and exchange markets.  FINRA Rules set forth in the FINRA Manual[3] govern Defendant's FINRA broker/dealer member firm Gar Wood, as defined by 15 U.S. Code § 78c(a)(3)(A)(ii).  Defendant as an equities and options registered representative with Gar Wood which requires information on its registered representatives **signature blocks** to be compliant with FINRA[4] Rule 2210(a)(1) and Article XV, Section 2 of the FINRA By-Laws, and FINRA[5] Rule 3110(a).  Defendant's signature block information represents the details about member firm Gar Wood in conformance with FINRA advertising policies and is not information about the registered representative.

## B.    Plaintiff Allegations Stem from Improper Definition of Associated Person

Plaintiffs Complaint primarily concerns itself with allegations that Defendant acted improperly in her duties as an AP.  These allegations are false and are subject matter jurisdiction for the NFA and FINRA by Plaintiffs own admission.  The origin of Plaintiff's Complaint stems from an improper understanding of what FINRA rules and NFA rules guide the behaviors of a former AP and what duties can be properly performed by an unregistered person.  "APs are individuals involved in a capacity that involves the "solicitation or acceptance of customer orders" or "the supervision of any person or persons so engaged." NFA Rule 9002, Defendant was not an "associated person" and was not performing duties or conducting activities requiring registration."

---

[3] https://www.finra.org/rules-guidance/rulebooks/finra-rules

[4] FINRA Rule 2210. Communications with the Public

[5] FINRA Rule 3310. Supervision

Plaintifs Complaint is largely absent form and its content is challenging to understand. As an initial matter, courts in this district have dismissed, and the Court of Appeals has affirmed dismissals of, *pro se* complaints of equivalent prolixity.[19] "Unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Salahuddin*, 861 F. 2d at 42 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1281 ); *see also Wynderv. McMahon,* 360 F.3d 73, 80 (2d Cii^004) (a noncompliant complaint "overwhelm[s] defendants' ability to understand or mount a defense). Kumaran's 202- page. 20 count, 1015-paragraph Complaint, rests on all fours with complaints courts routinely and uniformly dismiss.

Plaintiff's numerous allegations are based solely on information without evidence or public record, and belief exclusively held by Plaintiff, compounded by multiple unsubstantiated counts against Defendant.  Plaintiff's factual allegations in the Second Amended Complaint remain insufficient to state a claim under the law upon which relief may be granted by Defendant.

## V.   Counts

## A.   Counts 1, 2: Whether Defendant Participated in Conspiracy or RICO Scheme

Plaintiff produced (Exhibit 89-15) a twelve-page list formatted with six columns and 115 rows of allegations titled "Schedule of Select Predicate RICO acts (Subject to Rule 9(b))".  This is a table created by Plaintiff, albeit inaccurate, documenting normal ordinary and usual business activities.

Defendant does not meet the "Operation or Management" Test. In Reves v. Ernst & Young, 507 U.S. 170 (1993), the Supreme Court set forth the standard to determine whether a defendant's activity constitutes sufficient participation in a RICO enterprise to hold it liable for a substantive RICO violation. Interpreting the statutory phrase "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs," the Court held that at a minimum the RICO statute requires that the defendant have "some part in directing the enterprise's affairs." Id. at 179 (emphasis in original). Applying that understanding, the Court further determined that a defendant cannot be held liable for a substantive RICO violation unless it "participated in the

12

operation or management of the enterprise itself." Id. at 183. The Court instructed that it is not enough for a defendant to conduct or participate in its own affairs—to be liable it must participate in the conduct of the enterprise's affairs. Id. at 185. Accordingly, "simply aiding and abetting a violation is not sufficient to trigger liability. *New York v United Parcel Serv., Inc.*, *8-9 [SDNY, Aug. 9, 2016, 15-cv-1136 (KBF)]

The test advanced in Reves is intended to make it difficult to hold an outside service provider—such as, for instance, an accountant or lawyer—liable under § 1962(c). Maersk, Inc. v. Neewra, Inc., 687 F. Supp. 2d 300, 335 (S.D.N.Y. 2009); Arthur Andersen, 924 F. Supp. at 465-67; 131 Main St. Assocs. v. Manko, 897 F. Supp. 1507, 1527 (S.D.N.Y. 1995). Subsequent to Reves, courts in this Circuit have made clear that providing ordinary but important business services to a RICO enterprise is not itself sufficient to meet the operation or management test. City of New York v. Smokes-Spirits.com, Inc., 541 F.3d 425, 449 (2d Cir. 2008), rev'd on other grounds, Hemi Grp., LLC v. City of New York, 559 U.S. 1 (2010); Azrielli v. Cohen Law Offices, 21 F.3d 512, 521-22 (2d Cir. 1994); Arthur Andersen, 924 F. Supp. at 466 (collecting cases); see also Univ. of Maryland at Baltimore v. Peat, Marwick, Main & Co., 996 F.2d 1534, 1539 (3d Cir. 1993). Likewise, "[a] defendant does not 'direct' an enterprise's affairs under § 1962(c) merely by engaging in wrongful conduct that assists the enterprise." Redtail Leasing, Inc. v. Bellezza, No. 95 Civ. 5191 (JFK), 1997 WL 603496, at *5 (S.D.N.Y. Sept. 30, 1997).

**B.      Counts 3,4: Whether Defendant Misappropriated Trade Secrets**

The Complaint Fails To Adequately Allege Any Trade Secrets. Both the federal and state claims for misappropriation of trade secrets must be dismissed because the Complaint fails to sufficiently plead the existence of trade secrets with specificity.  Plaintiff uses the terms defined in the elements of the claim but does not say what it is or how it is used. Plaintiff's complaint gives barely a passing reference to the terms, this is violative of FRCP 8(a)(2).

A "trade secret" is defined as "any formula, pattern, device or compilation of information which is used in one's business, and which gives the owner an opportunity to obtain an advantage over competitors who do not know or use it." *Faiveley Transp. Malmo AB* v. *Wabtec Corp.*, 559 F.3d 110, 117 (2d Cir. 2009) (citation and internal quotation marks omitted). "To state a claim for misappropriation of trade secrets, a plaintiff must plead facts with sufficient

particularity to provide defendants fair notice of what the claim is and the grounds upon which it rests. This requires, at minimum, that the plaintiff generally *identify the trade secrets* at issue." *Alexander Interactive. Inc. v. Leisure Pro Ltd* No. 14-CV-2796, 2014 WL 4651942, at *5 (S.D.N.Y. Sept. 16, 2014) (emphasis added, internal quotation marks and citation omitted). "[T]o survive a motion to dismiss, a party alleging that it owns a trade secret must put forth *specific allegations* as to the information owned and its value." *Democratic Nat'l Comm.* v. *Russian Fed'n,* 392 F. Supp. 3d 410.447 (S.D.N.Y. 2019) (emphasis added).

Defendant had no knowledge of "Trade Secrets" that Plaintiff claims to own. Plaintiff continues to assert unspecified damages on behalf of Plaintiffs against all Defendants. "Plaintiffs' transaction records, trading strategics and risk management strategics constitute competitive commercially sensitive information, including trade details, (options strategies which disclose the volumes, strikes, premium, timing, risk profile of delta, gamma and vega and execution) and formulae, compilations, programs, methods, techniques, or processes, that give them an economic advantage, and are trade secrets and are (1) non-public information; (2) protected by reasonable measures; and (3) and which derive independent economic value, actual or potential, from not being known to other persons, who can obtain economic value from its disclosure or use. of the information. They are also material non-public information protected by insider trading laws." (¶ 66.)

This count does not hold for Defendant "Villa" individually in the SAC. "To succeed on a claim for the misappropriation of trade secrets under New York law, a party must demonstrate (1) that it possessed a trade secret; and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship, or duty, or as a result of discovery by improper means." *The A Star Group*, *Inc. v. Manitoba Hydro*, 2014 U.S. Dist. LEXIS 88825, * 24 (S.D.N.Y. 2014, *TravelSavers Enters., Inc. v Analog Analytics, Inc.*, 2014 NY Slip Op 33872, *4-5 [Sup Ct, Nassau County 2014] accordingly, Counts 3 and 4 must be dismissed for failure to adequately allege the existence of any trade secrets.

**C.**     **Counts 7, 8, 10: Whether Alleged Fraud or Fraudulent Omission Is Present**

Claims of fraud are subject to a heightened pleading standard. *First Capital Asset Management, Inc. v. Satinwood, Inc.*, 385 F.3d 159, 179 (2004); Fed. R. Civ. P.9(b). "In addition to alleging the particular details of a fraud, 'the plaintiffs must allege facts that give rise to a strong inference of fraudulent intent." Id. (*quoting Moore v. PaineWebber, Inc.*, 189 F.3d 165, 173 (2d Cir. 1999). Defendant at the time of interactions with Plaintiff was not an AP or acting in the capacity of an AP and had no reason to tell Plaintiff she was previously an AP a year and half previous to Plaintiff's solicitations. To state a distinct cause of action for fraudulent inducement, a plaintiff must allege "misrepresentations of present fact" Orix Credit Alliance v Hable Co., 256 AD2d 114,115 (1ˢᵗ Dep't 1998)). (quoting Kumaran et al v. Northland Energy) Plaintiffs' allegations of fraud fail to state a distinct cause of action.

<u>Defendant has no agreement or contract with Plaintiff</u> and does not have any special or superior knowledge that would be contemplated by the "special facts" doctrine. And at all times during the actions alleged in the SAC Defendant held no fiduciary position or role that would require Defendant to disclose. *See Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 178 (2011). Defendant had no special relationship with Plaintiff and therefore had no duty to disclose the fact that Defendant was at one time registered with the NFA and that Defendant's registration was at LCI. It is also immaterial because neither regulatory Agencies, FINRA nor NFA have a rule or requirement in this situation and given these circumstances to disclose. Furthermore, Defendant's detailed history with NFA and FINRA are easily accessible in the public domain. Additionally, where the alleged fraud consists of omitting information rather than the misrepresentation of facts, courts typically require special circumstances in order to impose a duty to disclose. Thus, a fraud claim cannot ordinarily be based on the failure to disclose information rather than a false representation of facts.

"Under New York law, to state a claim for fraud a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001) (citing *Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y.2d 413, 421 (1996)). An omission is fraudulent "only if the non-disclosing party has a duty to disclose." *Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*, 68 F.3d 1478, 1483 (2d Cir. 1995). A duty to disclose arises if, among other things, "one party makes a partial or ambiguous

statement that requires additional disclosure to avoid misleading the other party." Id. None of these elements are present.

The Complaint's fraud-related claim (Count 10) - for aiding and abetting fraud against Defendant, who knew nothing about the allegations - should be dismissed for failure to state a claim. "To establish liability for aiding and abetting fraud under New York law, the plaintiffs must show (1) the existence of a fraud; (2) [the] defendant's knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the fraud's commission." *Krys v. Pigott.* 749 F.3d 117, 127 (2d Cir. 2014) (quotations omitted).  Plaintiff merely alleges these elements repetitiously but never provides specific examples of how the Defendant "knew" of the fraud or that it even existed.

First, as established above, the Complaint fails to state any underlying fraud claim. Accordingly, the aiding and abetting claim should be dismissed on this ground alone. *See Habberstad* v. *Revere Secs.,* 183 A.D.3d 532, 532 (1st Dep't 2020) ("Since there is no underlying fraud claim, the aiding and abetting claim must also be dismissed."); *Simon v. Franclnvest, S.A.*, 178 A.D.3d 436. 437 (1st Dep't 2019) (same).

Second, the Complaint fails to adequately allege that Defendant had actual knowledge of the alleged fraud. *"[A]dual knowledge* is required to impose liability on an aider and abettor under New York law." *Krys,* 749 F.3d at 127 (emphasis added; internal quotations omitted). To allege actual knowledge, "[t]he plaintiff must allege facts that give rise to a *'strong inference'* of fraudulent intent," which can be alleged in two ways - (i) alleging "a motive for committing fraud"; or (ii) "by identifying circumstances indicating conscious behavior by the defendant, but the strength of circumstantial allegations must be correspondingly greater." *Rosner* v. *Bank of China,* No. No. 06 CV 13562, 2008 WL 5416380, at *4 (S.D.N.Y. Dec. 18, 2008) (emphasis added, citations and internal quotation marks omitted).//

Finally, while the Complaint alleges that Defendant participated in copying Plaintiffs' purported trade secrets, those allegations are wholly conclusory and do not specify Defendant's actions other than wholly imagined. Plaintiff's main point is that everyone had access to the Trade Secrets and files, which is exactly why Defendant would not have any reason to access them from Hawaii. With such vague and conclusory allegations, the Complaint fails to create a

16

"strong inference" of actual knowledge. *See* Iqbal. 556 U.S. at 678- 79. Accordingly, the fraud claims against Defendant should be dismissed.

**D.**    **Counts 11, 16, 17, 19: Whether Contract or Fiduciary Duty Exits Between Parties**

Defendant affirmatively declares as fact that no contract between any of the Plaintiffs named in this case ever existed or is extant AND Defendant has never received consideration or remuneration of any kind or at any time from any of the Defendant's named in this case.

Plaintiff's allegations and causes of action are based on events prior to Defendant's involvement. Plaintiff's timeline of events and claims do not include accurate representations or statements made by Defendant or any entity represented by Defendant. And do not correctly describe the Defendant's proper title, duties, or associations when interacting with Plaintiff.

Plaintiff's claims and Exhibits have no direct or indirect bearing on the Defendant and the alleged causes of action are based on events prior to Kumaran's soliciting Defendant. Plaintiff has not produced evidence, or extrinsic evidence of a contract or agreement with Defendant and Defendant has never affirmed a contract or agreement with Plaintiff, because no express or implied contract or agreement between the parties exists. Defendant does not have a contract or agreement with any of the named Defendants in Plaintiffs Complaint. Defendant has not received any compensation or remuneration of any kind from the named Defendants in Plaintiffs Complaint. The patent ambiguity of claims asserted in counts (1-15) by Plaintiff arise from the fact that no relationship exists between the Plaintiff and Defendant. "Plaintiff has not been aggrieved by Defendant and there is no remedy, cure or relief that can be granted Plaintiff". Nindle v. State Bank,

There is no dispute or controversy with Defendant; Julie Villa is not a party to any agreement or contract. "When a claim alleges fraudulent inducement of contract, the cause of action accrues when the contract is executed. Triangle Underwriters, Inc. v. Honeywell, Inc., 604 F.2d 737, 748 (2d Cir. 1979) (internal citations omitted) (applying New York law)." *Beach v Citigroup Alt. Invs. LLC*, *31 [SDNY, Mar. 7, 2014, 12 Civ. 7717 (PKC)]

**E.**    **Counts 12, 14: Whether Defendant Had Duties in Contract, Benefited or Enriched**

17

There was no duty arising for Defendant to inform Plaintiff of Defendant's past futures license or role as an NFA associated member from a seventeen-month prior registration which expired unrenewed.

> "Stockbrokers can hold both a Series 7 and a Series 3 license simultaneously, but if they don't, they are required by law to refer a client interested in commodities and futures on to a licensed Series 3 representative" (find reference).  This is the action that Defendant took when referring LCI to Plaintiff."

Plaintiff fails to present any evidence or make a probative statement alleging what action Defendant made, on which Plaintiff relied upon, that specifically caused injury or harm. a complaint alleging securities fraud must satisfy Rule 9(b), *Ganino*, 228 F.3d at 168, which requires that "the circumstances constituting fraud shall be stated with particularity,"Fed.R.Civ.P. 9(b). The particularity pleading threshold requires, among other elements, that the Plaintiff state what the Defendant gained from withholding the information and why the plaintiff's reliance on the omission was reasonable and detrimental.

Merely "parroting a legal conclusion" is insufficient, and noted that the court was "hard pressed" to see how the alleged silence of defendants regarding previous NFA futures registration could give rise to a claim for fraud where those very facts were contained in public records contained at the NFA and FINRA websites. A securities fraud complaint based on misstatements must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.*Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir.2000). Allegations that are conclusory or unsupported by factual assertions are insufficient.*See Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir.1986).*ATSI Communications, Inc. v Shaar Fund, Ltd.*, 493 F3d 87, 99 [2d Cir 2007]

## All Other Counts 3,4,5,6,913,14,15,18: Misappropriate of Trade Secrets, Conversion, Unfair Competition, Unjust Enrichment, Tortious Interfence in economic advantage

In addition to the fundamental standing issues facing NHC and NAM. their claims for violation of RICO (Counts I and II), misappropriation of trade secrets under the DTSA and New York law (Counts III and IV), conversion (Counts V and VI), unfair competition (Count XIII), unjust

enrichment (Count XIV), tortious interference in economic advantage (Counts XV), and civil conspiracy to the extent based on the foregoing (Count XII) also should be dismissed as untimely. NRCM's accounts were closed - and any alleged theft of its trading secrets necessarily ended - in **June** 2017. 579.) NAM and NRCM did not properly join in a pleading against Defendants until the SAC was filed **July** 30, 2021. more than four years later. (ECF No. 89.) Civil RICO claims must be brought within four years of accrual. *Agency Holding Corp.* v. *Malley-Duff & Associates.*

## VI.   Legal Standard

To state a claim for relief, a plaintiff must "provide the grounds upon which plaintiffs claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns,* **Inc.,** 493 F.3d at 98 (quoting *Bell Atl. Corp.* **v.** *Twombly,* 550 U.S. 544, 555 (2007)). Plaintiff must allege '"enough facts to state a claim to relief that is plausible on its face.'" *Starr* **v.** *Sony BMG Music Entm't,* 59i^.3d 314, 321 (2d Cir. 2010) (quoting *Twombly,* 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The Court accepts as true all well-pleaded factual allegations and draws all inferences in Plaintiff's favor. *See Allaire Corp.* **v.** *Okumus,* 433 F.3d 248, 249-50 (2d Cir. 2006).

## A.   Motion to Dismiss Standard

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, [that] 'state[s] a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Facial plausibility exists when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Twombly, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). "Although for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is] 'not bound to accept as true a legal conclusion

couched as a factual allegation.'" Id. (quoting Twombly, 550 U.S. at 555). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679.

Under Twombly, a complaint should be dismissed where it does not contain sufficient allegations of fact to state a claim for relief that is "plausible on its face." Twombly, 550 U.S. at 570; see also Fleurimond v. N.Y. Univ., 722 F. Supp. 2d 352, 354 (E.D.N.Y. 2010). Although the Court must accept the material facts of the complaint to be true and to draw all reasonable inferences in the plaintiff's favor, this "'tenet' 'is inapplicable to legal conclusions,' and 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Iqbal, 556U.S. at 678).

In Twombly, a seven-justice majority held that a complaint failed to state a claim of conspiracy when it alleged only parallel conduct, which was at least as consistent with legitimate business activity, as with an antitrust violation. The Plaintiff must prove a set of facts in support of her claim which would entitle Plaintiff to relief. The Twombly Court explained that Rule 8 of the Federal Rules of Civil Procedure requires that a complaint include facts (as distinct from legal "labels" and "conclusions") giving rise to a "plausible" (rather than merely "conceivable") entitlement to relief.

The legal baseline is established by determining whether "Kumaran" individually has suffered any harm or damages personally for which she should be granted relief. Plaintiff's narrative is overreaching, and the framework of the original complaint relies on an alleged nexus of nefarious activities and transactions between previously named Defendants as part of a class action. The prior claims asserted in Counts (1-15) and associated relief sought on behalf of prior class action Plaintiffs do not survive and are not applicable to Plaintiff's amended complaint as Samantha Silva Kumaran ("Kumaran") as an individual, sole-proprietor, assignee or successor in interest to NRCM. Because the Court denied Kumaran's request for this action to proceed as a class action and dismissed without prejudice the claims of all the plaintiffs except those of Kumaran.

Moreover, a court's "review of a decision to grant a motion to dismiss 'is limited to the facts as asserted within the four corners of the complaint' and any attached documents."

Abdullahi v. Pfizer, Inc., 562 F.3d 163, 210-211 (2d Cir. 2009) (quoting McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007)

It is even more clear and convincing when considering the evidence is discoverable on the publicly available internet.  it provides one more reason for the court to grant <u>Defendant's Motion to Dismiss.</u>  "To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, <u>550 U.S. 544, 570</u> (2007)." *Confido Advisors, LLC v United States Real Estate Co.*, *10 [SDNY, Sep. 6, 2018, No. 17 Civ. 5632 (JFK)]

## VII.   <u>Conclusion</u>

## A.   <u>Complaint Fails to State A Claim Against Upon Which Relief May Be Granted FRCP (12)(b)(6)</u>

Plaintiff's claim must be dismissed because Plaintiff's legal claim is without merit. Plaintiff's entire argument depends on false assertions. Defendant has never received any money, consideration, remunerations, financial gain, or benefited personally or professionally (in any capacity whatsoever) from any compensation of any kind from, or related to, the other named Defendants. The Complaint Impermissibly Attempts To Hold Defendant Liable Based On Her Status As A Registered Representative Of A Brokerage Firm. The court cannot grant money damages simply because Defendant made a referral The multiple claims Plaintiff makes against Defendant are overreaching, repetitive and irrelevant.

## B   <u>Dismissal is Warranted Due to Improper Subject Matter Jurisdiction FRCP (12)(b)(1)</u>

Plaintiffs' allegations are not the subject matter jurisdiction of this court as it relates to the following counts: (Count 1) Civil RICO – U.S.C. section 1962(d), (Count 2) Civil RICO – U.S.C. section 1962 (d), (Count VII) Fraud and fraudulent omission, (Count VIII) Fraudulent inducement of contract, (Count X) Aiding and abetting in fraud, (Count XI) Aiding and abetting in fiduciary capacity, (Count XII) Civil conspiracy, (XVI) Tortious interference in contract advantage, (Count XVII) Breach of good faith and implied covenant, (XVIII) negligent

misrepresentation / breach of duty of care, (Count XIX) breach of contract / implied in fact IB contract.

These claims relate back to issues with merits that are determined by the Self Regulating Organization ("SRO") the National Futures Association.   By waiting to bring this action more than four years after allegedly discovering that Defendant – Julie Villa – had acted outside of NFA rules prevents Defendant from a proper hearing and timely adjudication of the claims made by Plaintiff who did not timely file and still has not filed her complaints of  alleged violations to the NFA. In order for a determination to be sufficiently made by the Commodities Futures Trading Commission ("CFTC") or another SRO of competent jurisdiction a report must be filed to the Commission. (NFA Compliance Rules 1-1(d) "associated person" and in accordance with NFA Rule 3-2(a).

### C.    Dismissal Is Warranted For Failure to Comply with FRCP (8)(a)(2)

Under FRCP 8(a)(2). a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Noncompliance may be met with dismissal pursuant to FRCP 12(b)(6) or, alternatively, a court may strike redundant, immaterial, impertinent, or scandalous portions thereof pursuant to FRCP 12(f). *See Debellis* v. *White*, 19 Civ. 8730, 2020 WL 50576827, at *1 (S.D.N.Y. Aug. 27, 2020) (Furman. D.J.) (citing *Salahuddin* v. *Cuomo,* 861 F.2d 40.42 (2d Cir. 1988) and *Shomo* v. *Slate o f N. Y.,* 374F. App'x 180, 182) (Summary Order) (where a complaint "contained] a surfeit of detail ... the district court was within the bounds of discretion to strike or dismiss the complaint for noncompliance with Rule 8.")). Granting such relief is appropriate "where the allegations would stand to result in prejudice to the movant." *Alloco* v. *Dow Jones & Co.,* 02 Civ. 1029, 2002 WL 1484400. at *1 (S.D.N.Y. July 10. 2002) (McKenna. D.J.).

Each of these reasons, standing alone, would be sufficient for this Court to dismiss the Second Amended Complaint. When considered together, the infirmities in the Second Amended Complaint requiring dismissal are clear.

Nor should Plaintiffs be provided yet another opportunity to amend its insufficient pleading. Plaintiff's failure to make particularized allegations against Defendant is due to the

unfounded, meritless claims upon which Plaintiff structures its faulty assumptions and factually wrong allegations.

**D.    Plaintiff's Second Amended Complaint Does Not Apply to Defendant**

Plaintiffs in this case have based their claims against Defendant on three related issues. Even taking all of the facts alleged in the Second Amended Complaint to be true, Plaintiffs have still failed to allege cognizable claims against Individual Plaintiff, Julie Villa.  The nexus has not been made between the originally plead assertions; causes of actions, and following requests for relief and damages, as they would apply to the Plaintiffs. Plaintiff has failed to demonstrate Defendant was involved in this matter in any contractually binding way or acted with any demonstrable behavior that would give rise to tort claims.    Plaintiffs' allegations are speculative conclusions without a path that reasonably connects the dots.

To have standing, a party must show an "injury in fact" to *their own* legal interests. If the party cannot show harm, the party does not have standing and is not the right party to be appearing before the court. Plaintiffs have not alleged a sufficient legal interest and "redressable" injury to participate in the case.  Further, Plaintiff has not satisfied the burden of proof and failed on all counts to provide and prove, or offer any evidence in support of, the factual elements of each cause of action to sufficiently meet the test or standard as required for each of the claims against Defendant, and therefore should not be granted relief from the court.

For the reasons stated above, Defendant respectfully moves this court to grant its Motion to Dismiss Plaintiff's Second Amended Complaint against Defendant Julie Villa, according to FRCP Rules: 12(b)(6), 12(b)(2) and (8)(a)(2).    in its entirety, with prejudice.

23

Dated:  September 17, 2021

Keller, Texas

_/s/ Jule Villa_____

JULIE VILLA

Pro Se
933 Nottingham Road
Keller, TX  76248
Phone 808-357-6764
Email: julievilla2002@gmail.com