# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| SAMANTHA SIVA KUMARAN, | ) | |
| NEFERTITI RISK CAPITAL MANAGEMENT, LLC, | ) | Case No. 1:20-cv-03871- |
| NEFERTITI ASSET MANAGEMENT, LLC, | ) | GHW-SDA |
| NEFERTITI HOLDING CORPORATION | ) | |
| | ) | |
| Plaintiffs, | ) | Related Case: 1:20:CV |
| | ) | 03668 |
| vs. | ) | Related Case: 1:20:CV |
| | ) | 03873 |
| VISION FINANCIAL MARKETS, LLC, | ) | |
| HOWARD ROTHMAN, | ) | |
| ROBERT BOSHNACK, | ) | September 17, 2021 |
| HIGH RIDGE HOLDING CORPORATION, LLC, | ) | |
| HIGH RIDGE FUTURES, LLC, | ) | |
| H ROTHMAN FAMILY, LLC, | ) | |
| BOSHNACK FAMILY, LLC, | ) | |
| VISION BROKERAGE SERVICES, LLC, | ) | |
| JOHN FELAG, | ) | |
| VISION INVESTMENT ADVISORS, LLC, | ) | |
| LAZZARA CONSULTING, INC., | ) | |
| GERARD STEPHEN LAZZARA, | ) | |
| JULIE VILLA | ) | |
| Defendants. | ) | |
| | ) | |

# MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANTS' MOTION TO COMPEL ARBITRATION IN PART, AND TO DISMISS
# OR IN THE ALTERNATIVE TO STAY PENDING ARBITRATION

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. iii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 2

I.     Factual Background ................................................................................................. 2

II.    Procedural History ................................................................................................. 5

    A. The NFA Arbitration ........................................................................................ 5

    B. The Federal Litigations .................................................................................... 5

    C. Filings in the Instant Lawsuit ........................................................................ 6

III.   The Moving Defendants ....................................................................................... 7

ARGUMENTS .................................................................................................................. 10

I.     NRCM and NAM's Claims Against High Ridge, Rothman, Boshnack, Felag, LCI, Lazzara, and VIA are Subject to NFA Arbitration. ........................................ 10

II.    Dismissal of All Remaining Claims Is Warranted for Failure to Comply with Rule 8. .... 13

III.   Kumaran Lacks Standing to Assert Derivative Claims. ................................... 17

IV.    NHC and NAM Fail to State a Claim as to Alleged Events Before Their Formation ...... 18

V.     Plaintiffs Fail to Pierce High Ridge or VIA's Corporate Veil. ....................... 20

VI.    Plaintiffs' Claims Fail for Additional Reasons. ............................................... 21

    A. Counts I & II, Civil RICO and Civil RICO Conspiracy .............................. 21

    B. Counts III & IV, Misappropriation of Trade Secrets under the Defend Trade Secrets Act and New York Law ............................................................................ 23

    C. Count V, Conversion ....................................................................................... 26

    D. Count VI, Aiding and Abetting Conversion and Misappropriation .............. 27

    E. Count VII, Common Law Fraud ..................................................................... 27

    F. Count VIII, Fraudulent Inducement of Contract ........................................... 30

    G. Count IX, Breach of Fiduciary Duty .............................................................. 31

i

H. Count X, Aiding and Abetting Fraud ............................................................... 32

I. Count XI, Aiding and Abetting Breach of Fiduciary Duty ............................... 32

J. Count XII, Conspiracy .................................................................................... 32

K. Count XIII, Unfair Competition ..................................................................... 33

L. Count XIV, Unjust Enrichment....................................................................... 33

M. Count XV, Tortious Interference in Economic Advantage .............................. 34

N. Count XVI, Tortious Interference with Contract ........................................... 35

O. Count XVII, Breach of Implied Covenant of Good Faith and Fair Dealing .................. 36

P. Count XVIII, Negligent Misrepresentation/Breach of Duty of Care ............................ 37

Q. Count XIX, Breach of Contract/Implied in Fact IB [Introducing Broker] Contract
(against Lazzara and LCI) ................................................................................ 37

R. Count XX, Breach of Contract / G&F [Guarantee and Fee] Agreement and ORSA
[Oral Risk Services Arrangement] ................................................................... 38

S. Claims for Punitive Damages.......................................................................... 39

VII. In the Alternative, All Remaining Claims Should Be Stayed Pending Arbitration.......... 40

CONCLUSION.................................................................................................... 40

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                           **Page(s)**

*442 Decatur St., LLC v. Spheres Realty, Inc.,*
14 A.D.3d 535, 787 N.Y.S.2d 669 (N.Y. App. Div. 2005) ...................................................19

*Agency Holding Corp. v. Malley-Duff & Associates, Inc.,*
483 U.S. 143 (1987).................................................................................................19, 36, 38

*Alpha Cap. Anstalt v. Schwell Wimpfheimer & Assocs. LLP,*
2019 WL 146993 (S.D.N.Y. Mar. 30, 2019) (Woods, D.J.)...................................................27

*Alpvex, Inc. v. John Swan Ltd.,*
2019 WL 6330274 (N.D.N.Y. Nov. 26, 2019) ......................................................................18

*In re Aluminum Warehouse Antitrust Litig.,*
No. 13-md-2481, 2015 WL 1344429 (S.D.N.Y. 2015) ..........................................................16

*Am. Fuel Corp. v. Utah Energy Dev. Co.,*
122 F.3d 130 (2d Cir. 1997).................................................................................................21

*Anhui Konka Green Lighting Co., Ltd. v. Green Logic LED Electrical Supply Inc.,*
18 Civ. 12255 (PAE), 2019 WL 5498094 (S.D.N.Y. Dec. 3, 2019) .......................................29

*Arcadia Biosciences, Inc. v. Vilmorin & Cie,*
356 F. Supp. 3d 379 (S.D.N.Y. 2019).................................................................................27

*Arciniaga v. Gen. Motors Corp.,*
460 F.3d 231 (2d Cir.2006).................................................................................................11

*AT&T Mobility LLC v. Concepcion,*
563 U.S. 333 (2011)............................................................................................................11

*ATSI Comms., Inc. v. Shaar Fund, Ltd.,*
493 F.3d 87 (2d Cir. 2007)..................................................................................................28

*AUA Private Equity Partners., LLC v. Soto,*
17 Civ. 80355 (GHW), 2018 WL 1684339 (S.D.N.Y. Apr. 5, 2018).....................................25

*Backus v. U3 Advisors., Inc.,*
16 Civ. 8990 (GHW), 2017 WL 3600430 (S.D.N.Y. Aug. 18, 2017).....................................18

*Barron Partners, LP v. LAB123, Inc.,*
593 F. Supp. 2d 667 (S.D.N.Y. 2009)..................................................................................31

*Berrios v. N.Y. City Hous. Auth.,*
564 F.3d 130 (2d Cir. 2009)................................................................................................17

*Bingham v. Zolt*,
    66 F.3d 553 (2d Cir. 1995) ............................................................................................18

*Blakely v. Wells*,
    209 F. App'x 18 (2d Cir. 2006) ....................................................................................14

*Buhannic v. Am. Arbitration Assoc.*,
    18 Civ. 2430 (ER), 2019 WL 4735005 (S.D.N.Y. Sept. 27, 2019) ..............................22

*Bus. Networks of N.Y., Inc. v. Complete Network Sols. Inc.*,
    265 A.D.2d 194, 696 N.Y.S.2d 433 (1999) ..................................................................35

*Bytemark, Inc. v. Xerox Corp.*,
    342 F. Supp. 3d 496 (S.D.N.Y. 2018) ..........................................................................33

*Carvel Corp. v. Noonan*,
    3 N.Y.3d 182 (2004) ......................................................................................................35

*Collins & Aikman Prods. Co. v. Building Sys., Inc.*,
    58 F.3d 16 (2d Cir.1995) ...............................................................................................11

*Commodity Futures Trading Comm'n v. Heritage Cap. Advisory Servs., Ltd.*,
    823 F.2d 171 (7th Cir. 1987) ...................................................................................29, 31

*ConnTech Dev. Co. v. Univ. of Connecticut Educ.Properties, Inc.*,
    102 F.3d 677 (2d Cir. 1996) .....................................................................................12, 13

*Council of Commuter Organizations v. Metro. Transportation Auth.*,
    No. 82 CIV. 8372 (PNL), 1984 WL 603 (S.D.N.Y. July 2, 1984) ...............................17

*Crawford v. Franklin Credit Mgmt. Corp.*,
    758 F.3d 473 (2d Cir. 2014) ..........................................................................................37

*Crosses v. BCBSD, Inc.*,
    836 A.2d 492 (Del. 2003) ..............................................................................................20

*Debellis v. White*,
    19 Civ. 8730, 2020 WL 5076827 (S.D.N.Y. Aug. 27, 2020) .......................................14

*DiVittorio v. Equidyne Extractive Indus., Inc.*
    822 F.2d 1242 (2d Cir. 1987) ........................................................................................16

*Doberstein v. G-P Indus., Inc.*,
    2015 WL 6606484 (Del. Ch. Oct. 30, 2015) ................................................................20

*Efron v. Embassy Suites (Puerto Rico), Inc.*,
    223 F.3d 12 (1st Cir.2000) ............................................................................................22

*El Paso Pipeline GP Co., L.L.C. v. Brinckerhoff,*
    152 A.3d 1248 (Del. 2016) ..................................................................18

*Fischkoff v. Iovance Biotherapeutics, Inc.,*
    339 F. Supp. 3d 408 (S.D.N.Y. 2018)...................................................27

*Flatiron Acquisition Vehicle, LLC v. CSE Morg. LLC,*
    17 Civ. 8987-GHW, 2019 WL 1244294 (S.D.N.Y. Mar. 18, 2019) .......................37

*Fletcher v. Atex, Inc.,*
    68 F. 3d 1451 (2d Cir. 1995)...............................................................20

*Gabayzadeh v. Global Equip. & Mach. Sales Inc.,*
    18 Civ. 3851 (LGS), 2019 WL 5880639 (S.D.N.Y. Jan. 28, 2019) ..................17, 18

*Gonzalez v. Wing,*
    113 F.3d 1229 (2d Cir. 1997)...............................................................14

*Graham v. Take-Two Interactive Software, Inc.,*
    19 Civ. 2183 (GBD)(SDA), 2019 WL 8111915 (S.D.N.Y. Nov. 25, 2019),
    *adopted*, 2020 WL 408408 (S.D.N.Y Jan. 24, 2020)................................34

*Gross v. Waywell,*
    628 F. Supp. 2d 475 (S.D.N.Y. 2009).................................................22, 23

*Gurfein v. Ameritrade, Inc.,*
    312 F. App'x 410 (2d Cir. 2009) ..........................................................38

*Hadami S.A. v. Xerox Corp.,*
    272 F. Supp. 3d 587 (S.D.N.Y. 2017)...............................................34, 35

*Harley v. Streamlicensing Networks LLC,*
    No. 18-CV-9528 (CM), 2019 WL 2866563 (S.D.N.Y. July 3, 2019), appeal
    dismissed, No. 19-3000, 2020 WL 1467032 (2d Cir. Jan. 13, 2020) ...................14

*Hauptman v. Interactive Brokers, LLC,*
    No. 17 CIV. 9382 (GBD), 2018 WL 4278345 (S.D.N.Y. June 12, 2018)..............38

*Iacovacci v. Brevet Holdings, LLC,*
    437 F. Supp. 3d 367 (S.D.N.Y. 2020).................................................23

*IDT Corp. v. Morgan Stanley Dean Witter & Co.,*
    12 N.Y.3d 132 (N.Y. 2009) ..............................................................31

*Ingrami v. Rovner,*
    45 A.D.3d 806, 847 N.Y.S.2d 132 (2d Dept. 2007) ................................20

*Int'l Television Prods. Ltd. v. Twentieth Century-Fox Television Div. of Twentieth Century-Fox Film Corp.*,
  622 F. Supp. 1532 (S.D.N.Y. 1985)........................................................................39

*Interallianz Bank AG v. Nycal Corp.*,
  No. 93 Civ. 5024 (RPP), 1994 WL 177745 (S.D.N.Y. May 4, 1994)....................37

*Isidro Mejia v. N.Y.P.D.*,
  1:16-cv-9706-GHW, 2019 WL 3412151 (S.D.N.Y. July 28, 2019)........................16

*Jones v. Niagara Frontier Transp. Auth.*,
  836 F.2d 731 (2d Cir. 1987)....................................................................................18

*JPMorgan Chase Bank, N.A. v. The IDW Grp.*,
  2009 WL 321222 (S.D.N.Y. Feb. 9, 2009)..............................................................36

*Kim v. Kimm*,
  884 F.3d 98 (2d Cir. 2018)......................................................................................22

*Kirch v. Liberty Media Corp.*,
  449 F.3d 388 (2d Cir. 2006)....................................................................................32

*Kumaran v. ADM Inv'r Servs., Inc.*,
  20 Civ. 3873 (S.D.N.Y. May 18, 2020)...............................................6, 12, 15, 40

*Kumaran v. ADM Investor Services, Inc.*,
  No. 20-cv-03873, 2021 WL 2333645 (S.D.N.Y. June 7, 2021) ..................12, 13, 40

*Kumaran v. National Futures Assoc., et al.*,
  20 Civ. 3668 (S.D.N.Y. May 11, 2020) ...................................................................5

*Kumaran v. Northland Energy Trading*,
  LLC, No. 119CV8345MKVDCF, 2021 WL 797113 (S.D.N.Y. Feb. 26, 2021)..............24, 25

*Lafurno v. Walters*,
  18-CV-1935, 2018 WL 2766144 (E.D.N.Y. June 8, 2018)....................................14

*Mahon v. Ticor Title Ins. Co.*,
  683 F. 3d 59 (2d Cir. 2012)....................................................................................16

*Mangiafico v. Blumenthal*,
  471 F.3d 391 (2d Cir. 2006)......................................................................................3

*Marks v. Energy Materials Corp.*,
  14 Civ. 8965 (GHW), 2015 WL 3616973 (S.D.N.Y. June 9, 2015) ......................34

*McCall v. Chesapeake Energy Corp.*,
  817 F. Supp. 2d 307 (S.D.N.Y. 2011)....................................................................20

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*,
　　456 U.S. 353 (1982) .............................................................................................10

*Middleton v. United States*,
　　10 Civ. 6057 (JFB) (ETB), 2012 WL 394559 (E.D.N.Y. Feb. 7, 2012) ...............................16

*MWH Intern. Inc. v. Inversora Murten, S.A.*,
　　1:11 Civ. 2444-GHW, 2015 WL 728097 (S.D.N.Y. Feb. 11, 2015) ....................................21

*Nat'l Union Fire Ins. Co. v. Worley*,
　　257 A.D.2d 228, 690 N.Y.S.2d 57 (1st Dep't 1999) .............................................31

*Navigant Consulting, Inc. v. Kostakis*,
　　No. 07 Civ. 2302, 2007 WL 2907330 (E.D.N.Y. Oct. 4, 2007) .............................................31

*Novak v. Kasaks*,
　　216 F.3d 300 (2d Cir. 2000)....................................................................................28

*Ohio Players, Inc. v. Polygram Records, Inc.*,
　　99 Civ. 33, 2000 WL 1616999 (S.D.N.Y. Oct. 7, 2000) .........................................36

*Press v. Chem Inv. Servs. Corp.*,
　　166 F.3d 529 (2d Cir. 1999)................................................................................30, 32

*Prezzi v. Schelter*,
　　469 F.2d 691 (2d Cir. 1972)....................................................................................14

*Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*,
　　813 F. Supp. 2d 489 (S.D.N.Y. 2011)......................................................................25

*R.J. O'Brien & Assocs., Inc. v. Pipkin*,
　　64 F.3d 257 (7th Cir. 1995) ..................................................................................11

*RCC Ventures v. Brandtone Holdings. Ltd.*,
　　322 F.R.D. 422 (S.D.N.Y. 2017) .............................................................................20

*Rosa v. Goord*,
　　29 F. App'x 735 (2d Cir. 2002) .............................................................................14

*Rubenstein v. Mayor*,
　　41 A.D.3d 826 (N.Y. App. Div. 2007) ...................................................................19

*Salahuddin v. Cuomo*,
　　861 F.2d 40 (2d Cir. 1988)................................................................................13, 14

*Sanchez v. Walentin*,
　　526 F. App'x 49 (2d Cir. 2013) ...............................................................................17

*Schentag v. Negben*,
    17 Civ. 8734 (GHW), 2018 WL 3104092 (S.D.N.Y. June 21, 2018) .................................... 28

*Schiff v. ZM Equity Partners, LLC*,
    19 Civ. 4735 (WHP), 2020 WL 5077712 (S.D.N.Y. Aug. 27, 2020) ..................................... 18

*Schroeder v. Pinterest Inc.*,
    133 A.D.3d 12, 17 N.Y.S.3d 678 (1st Dept. 2015) ................................................................. 24

*Selevan v. N.Y. Thruway Auth.*,
    584 F.3d 82 (2d Cir. 2009) ...................................................................................................... 16

*Shapiro v. Goldman*,
    696 F. App'x 532 (2d Cir. 2017) ............................................................................................ 14

*Sirohi v. Trustees of Columbia Univ.*,
    162 F.3d 1148 (2d Cir. 1998) .................................................................................................. 16

*Sperry v. Crompton Corp.*,
    8 N.Y.3d 204 (2007) ............................................................................................................... 34

*Stewart v. J.P. Morgan Chase & Co.*,
    02 Civ. 1936 (MHD), 2004 WL 1823902 (S.D.N.Y. Aug. 16, 2004) .............................. 30, 31

*Tannerite Sports, LLC v. NBCUniversal Media LLC*,
    135 F. Supp. 3d 219 (S.D.N.Y. 2015) ...................................................................................... 3

*TNS Holdings., Inc. v. MKI Sec. Corp.*,
    92 N.Y.2d 335 (1998) ............................................................................................................. 21

*Trahan v. Lazar*,
    457 F. Supp. 3d 323 (S.D.N.Y. 2020) ..................................................................................... 37

*Turret Labs USA, Inc. v. CargoSprint, LLC*,
    No. 19CV6793EKRML, 2021 WL 535217 (E.D.N.Y. Feb. 12, 2021) ..................................... 33

*Uni-Sys., LLC v. United States Tennis Ass'n, Inc.*,
    350 F. Supp. 3d 143 (E.D.N.Y. 2018) ..................................................................................... 33

*Vigilant Ins. Co. of Am. v. Hous. Auth. of City of El Paso, Tex.*,
    87 N.Y.2d 36, 660 N.E.2d 1121 (N.Y. 1995) .......................................................................... 26

*W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*,
    549 F.3d 100 (2d Cir. 2008) .................................................................................................... 16

*William Wrigley Jr. Co. v. Waters*,
    890 F.2d 594 (2d Cir. 1989) .................................................................................................... 20

*Wynder v. McMahon*,
    360 F.3d 73 (2d Cir. 2004)..............................................................................7, 17

*Zaretsky v. William Goldberg Diamond Corp.*,
    No. 14 CIV. 1113 SAS, 2014 WL 4160232 (S.D.N.Y. Aug. 18, 2014).................................39

*Zirvi v. Flatley*,
    433 F. Supp. 3d 448 (S.D.N.Y.), *aff'd*, 838 F. App'x 582 (2d Cir. 2020)............27, 32, 35, 39

*Zirvi v. Flatley*,
    838 F. App'x 582 (2d Cir. 2020) ...........................................................................20

## Statutes

18 U.S.C. § 1836....................................................................................................20, 23

18 U.S.C. § 1839..............................................................................................23, 24, 26

18 U.S.C. § 1962.................................................................................................. 21-23

9 U.S.C. § 1, *et seq*...............................................................................................11, 12

## Rules and Other Authorities

5 C. Wright & A. Miller, Federal Practice and Procedure § 1281................................13

CFTC Rule 33.7....................................................................................................29

Fed. R. Civ. P. 8 .......................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6)....................................................................................1, 14, 40

Fed. R. Civ. P. 12(f) ...............................................................................................14

Fed. R. Civ. P. 9(b) ...........................................................................................27, 37

*In re Nefertiti Risk Capital Management LLC*, 18-ARB-5 (NFA) .................................5

NFA Bylaws, Rule 301(f), *Available at*
    https://www.nfa.futures.org/rulebook/rules.aspx?Section=3...................................11

NFA Member Arbitration Rules, Section 2(a), *Available at*
    https://www.nfa.futures.org/rulebook/rules.aspx?Section=6...................................11

N.Y. CPLR 214 (3) ...........................................................................................20, 26

N.Y. CPLR 214 (4) ...........................................................................................20, 31

ix

**INTRODUCTION**

From January to June 2017, Plaintiff Nefertiti Risk Capital Management, LLC ("NRCM") opened, traded in, and closed three commodities futures trading accounts with ADM Investor Services ("ADMIS"). NRCM and its principal, Plaintiff Samantha Siva Kumaran ("Kumaran") subsequently alleged that ADMIS and the introducing broker, Defendant Gerard Lazzara, failed to disclose the involvement of Defendant High Ridge Futures, LLC ("High Ridge") in performing risk-management services for ADMIS, and that ADMIS charged certain unauthorized fees. From this narrow premise, Kumaran and NRCM – and now two additional related entities that were not even formed until after NRCM's accounts were closed – have asserted a far-reaching conspiracy allegedly involving Lazzara, his business, ADMIS, High Ridge, High Ridge's owners, other affiliated individuals and entities, and even the National Futures Association ("NFA") itself.

NRCM should be compelled to return to the NFA arbitration it initiated in 2018 against ADMIS and Defendants High Ridge, Howard Rothman, Robert Boshnack, John Felag, Lazzara and Lazzara Consulting, Inc. ("LCI'). As NFA Members, NRCM and newly added plaintiff Nefertiti Asset Management, LLC ("NAM") are required by the NFA's Rules to arbitrate any claims they may have against other NFA Members, which include the foregoing Defendants as well as Defendant Vision Investment Advisors ("VIA").

The remainder of the Second Amended Complaint ("SAC") should then be dismissed for Plaintiffs' abject failure to meet even the minimum requirements of Fed. R. Civ. P. 8(d) that pleadings be "short and plain" and provide defendants with adequate notice of the nature of the claims against them. To the extent that Plaintiffs' claims are even decipherable, each should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Given that Plaintiffs have been afforded multiple opportunities to replead, and the pleading failures have only worsened with each

pleading, dismissal should be with prejudice.

Alternatively, the Court should stay the remainder of the action pending arbitration.

**<u>BACKGROUND</u>**

## I.    Factual Background

Kumaran registered NRCM as a limited liability company in New York on December 14, 2015.[1] Kumaran alleges that she was referred to Lazzara and LCI by defendant Julie Villa[2] in or around December 2016, and that after speaking with Lazzara by telephone, she decided to open commodities futures trading accounts for NRCM at ADMIS. (*See* ¶¶ 325, 333-35.)[3]

By way of background, a commodities futures contract is a legally binding agreement to buy or sell a commodity at a later date.[4] Someone expecting the price of a particular commodity to increase over a given period of time can seek to profit by buying futures contracts. If they are correct, the futures contract can later be sold for a higher price, yielding a profit; if they are incorrect, the trade will result in a loss.[5] The margin required to buy or sell a futures contract is a deposit of good faith money that can be drawn on by the brokerage firm to cover losses that the investor may incur in the course of futures trading.[6] Due to the risk involved for the customer and the brokerage firm, brokerage firms monitor margin levels and may require higher margin amounts

---

[1] New York Department of State records indicate NRCM is still active with no registered agent. *See* N.Y. Dep't of State, https://apps.dos.ny.gov/publicInquiry/ (enter "Nefertiti Risk Capital Management" and check "LimitedLiabilityCompany").

[2] Villa is not represented by the undersigned in this matter.

[3] Citations to "¶ _" refer to the numerated paragraphs of the Second Amended Complaint, dated July 30, 2021 (ECF No. 89) ("SAC").

[4] *See* NFA, "Opportunity AND Risk: An Educational Guide to Trading Futures and Options on Futures," *available* at https://www.nfa.futures.org/investors/investor-resources/files/opportunity-and-risk-entire.pdf ("NFA Educational Guide"), at 14.

[5] *Id.* at 30.

[6] *Id.* at 27.

from their customers than the exchange-set minimums.[7]

In connection with opening NRCM's accounts at ADMIS, Kumaran received ADMIS's Privacy Policy and signed a Customer Agreement and Arbitration Agreement as NRCM's Managing Member.[8] ADMIS's Privacy Policy expressly provides that ADMIS has permission to ". . . *share your personal information with affiliates and subsidiaries and/or unaffiliated third parties . . . to service your account . . . .*" *See* Ex. 1 (ADMIS Privacy Policy). As relevant here, ADMIS had an arrangement with Defendant High Ridge for High Ridge to perform risk-management services for accounts opened by certain introducing brokers, including LCI. Accordingly, ADMIS provided High Ridge with margin reports and access to NRCM's accounts as needed for High Ridge to perform the requisite risk management functions for ADMIS, which High Ridge principally conducted through its employee, John Felag. (*See* ¶ 350 (alleging Lazzara was notified that High Ridge, Felag and other employees would be materially involved in risk management on behalf of ADMIS.))

NRCM was not unique in this regard; as the SAC alleges, NRCM's accounts were among thousands of commodities futures trading accounts for which High Ridge monitored margin levels and performed third party risk management services for ADMIS. (*See* ¶ 6.) Crucially, the arrangement between ADMIS and High Ridge was well-known to the National Futures Association ("NFA") – the self-regulatory organization that maintains standards of conduct,

---

[7] *Id.; see also id.* at 23 ("Perhaps more so than in any other form of speculation or investment, gains and losses in futures trading are highly leveraged.").

[8] The Privacy Policy, Customer Agreement and Arbitration Agreement, attached hereto as Exhibits 1-3, were attached as Exhibits to Respondents' Supplemental Answer to NRCM's Statement of Claim in Arbitration. They should be considered incorporated in the SAC by reference as the SAC "relies heavily upon their terms and effect, thereby rendering the document[s] integral to the complaint." *Tannerite Sports, LLC v. NBCUniversal Media LLC*, 135 F. Supp. 3d 219, 224 n.1 (S.D.N.Y. 2015) (citing *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)).

polices compliance of its members with federal law, and adjudicates disputes between its members and associates – and was (and still is) without objection.[9]

NRCM conducted trading activity on the ADMIS platform from approximately January 2017 through June 2017. (¶ 479.) Plaintiffs allege that Kumaran informed Lazzara that she intended to use the accounts to develop a track record as a Commodity Trading Advisor ("CTA") with the goal of launching "a commodities options hedge fund under the name 'STORM.'" (¶¶ 335-338). Kumaran is alleged to be the "sole owner, author and inventor" of "a set of options trading and risk management strategies which was named STORM," standing for "the acronym 'Super Timetrics Options Risk Management.'" (¶ 61.) NRCM, NAM, and NHC are alleged to have "also possessed and owned license to use and benefit from" STORM. (¶ 62.) While Plaintiffs variously refer to STORM's "algorithms" (*see, e.g.,* ¶ 59) or "programs" (*see, e.g.* ¶ 83), the SAC makes clear that, at bottom, STORM was nothing more than Kumaran's self-described trading strategy. (*See* ¶ 68 (alleging that "CTA's usually give their trading strategies a name, which they call a trading program," which "does not mean 'program' in the literal sense such as software program, but the name of the trading strategy,'" and that "Plaintiffs' name of the trading strategy is STORM."))

In May 2017, based upon margin reports provided to it by ADMIS in the regular course of its risk management functions, High Ridge became aware that amounts in NRCM's accounts fell below the standard margin requirements imposed by ADMIS, which it communicated to LCI; Lazzara informed Kumaran of this violation and that NRCM would need to infuse additional funds

---

[9] High Ridge and ADMIS have undergone multiple independent audits since the arrangement was consummated; never was a red flag raised by the arrangement.

in the accounts to resume trading, but NRCM failed to comply.[10] Kumaran closed NRCM's accounts at the end of June 2017. (¶ 579.) At the end of the six-month period during which NRCM was active on the ADMIS platform, it had incurred a total loss of $32,666.32 from the $90,000 it had invested in its accounts.

## II.    Procedural History

### A.    <u>The NFA Arbitration</u>

In or around June 2018, NRCM filed an arbitration claim with the NFA. *In re Nefertiti Risk Capital Management LLC*, 18-ARB-5 (NFA). NRCM named as Respondents ADMIS, its Chief Compliance Officer, Greg Hostetler, and Defendants High Ridge, Rothman, Boshnack, Felag, Lazzara and LCI. The Statement of Claim concerned the same events and purported injuries alleged here. *See* Ex. 4. Citing purported biases of the NFA, in November 2019, NRCM petitioned for, and was granted by the NFA Arbitration Panel, a one-year stay of the Arbitration for the limited purpose of proceeding ***against the NFA*** in U.S. District Court. *See* Ex. 5 (NFA Arbitration Panel 2019-11-13 Order on Confidentiality, Discovery and Stay).

### B.    <u>The Federal Litigations</u>

Instead of bringing a federal lawsuit against just the NFA, in May 2020 Kumaran filed ***three separate lawsuits***, *pro se*, against (1) the NFA and related individuals, *see Kumaran v. National Futures Assoc., et al.*, 20 Civ. 3668 (S.D.N.Y. May 11, 2020) (the "NFA Lawsuit"); (2)

---

[10] In its Customer Agreement with ADMIS, NRCM agreed to "at all times maintain adequate margins, so as continually to meet the margin requirements established by ADMIS," and that "when required, to wire transfer margins to ADMIS or any monies so required." *See* Ex. 2, Para. 4. The Customer Agreement further provided that "ADMIS may, in its sole and absolute discretion, at any time or from time to time…close out [NRCM's] open positions in whole or in part ***or take any other action it deems necessary to satisfy such [margin] requirements…***" (*See id.*, para. 5 (emphasis added).) NRCM's failure to maintain adequate margins led to restrictions on NRCM's accounts to prevent it from establishing new positions.

ADMIS, *see Kumaran v. ADM Inv'r Servs., Inc.,* 20 Civ. 3873 (S.D.N.Y. May 18, 2020) ("ADMIS Lawsuit"); and (3) High Ridge, Rothman, Boshnack, Felag, Lazzara, LCI, other entities associated with Vision, and Julie Villa, *see* Complaint (ECF No. 1). On its own accord, the Court dismissed all three actions; of particular note, the Court dismissed *all* claims Kumaran brought on behalf of others, including NRCM, on the ground that, as a *pro se* non-attorney, she is statutorily prohibited from representing others in federal court. However, the Court granted Kumaran leave to replead. (*See* Dismissal Order, dated August 20, 2020 (ECF No. 13)).

### C.   Filings in the Instant Lawsuit

On September 30, 2020, Kumaran filed an Amended Complaint, again *pro se,* spanning 103 pages, 547 numbered paragraphs, and fifteen separate causes of action. (ECF No. 20.)

The Vision Defendants and Julie Villa each filed motions to dismiss on or about December 1, 2020. (ECF Nos. 26, 32; 36, 37.) The Vision Defendants' motion argued, *inter alia*, that the Amended Complaint failed to comply with Fed. R. Civ. P. 8, and that Kumaran was improperly asserting NRCM's claims in her own name (*See* ECF No. 37, at pp. 11-14 and 14-17.)

On December 22, 2022, after Defendants had already expended tremendous resources trying to decipher and respond to Kumaran's Amended Complaint, Attorney Brian August entered an appearance for NRCM (ECF No. 40), then subsequently moved to add NRCM back to the case (ECF No. 41). After a status conference with the parties, the Court permitted NRCM to be added as a plaintiff, and ordered that "Plaintiff and NRCM shall file a Second Amended Complaint ('SAC') adding NRCM as a plaintiff no later than February 26, 2021." (ECF No. 41.) But, as the Court is well aware, rather than filing a Second Amended Complaint that comported with the Court's order, Kumaran and NRCM tried to file ***separate*** complaints of 150 pages each. (*See, e.g.*, ECF Nos. 48, 49.) Plaintiffs also moved to add NAM and NHC as parties (ECF No. 60) – even

though, by Plaintiffs' own allegations, neither entity even existed until well after Kumaran closed NRCM's account at ADMIS. (*Compare* ¶ 579 (account closed June 2017), *with* ¶ 58 (NHC formed September 2017) and ¶ 57 (NAM formed May 2018).)

After a status conference on April 30, 2021, the Court gave Plaintiffs one more opportunity to file a second amended complaint that would comport with the Court's orders and the federal rules. (ECF No. 69.) Yet, despite the Court's express admonishment that the pleading must comply with Rule 8 (*see id.,* citing *Wynder v. McMahon*, 360 F.3d 73, 79 n.11 (2d Cir. 2004) for the proposition that Rule 8 applies to both self-represented and counseled plaintiffs), Plaintiffs have now filed a SAC that spans 201 pages, 1015 separately enumerated paragraphs, and twenty separate causes of action.

## III. The Moving Defendants

The moving Defendants are as follows:

**High Ridge Futures, LLC ("High Ridge")** – High Ridge has been a member of NFA since 2014. As relevant here, High Ridge had an arrangement – known to NFA – to perform risk-management services for accounts opened at ADMIS by certain introducing brokers, including Lazzara Consulting, Inc. The thrust of Plaintiffs' allegations appears to be that this standard industry arrangement was actually an elaborate scheme to divert trade secrets and fees to High Ridge and others. (*See* ¶ 26 (alleging "[t]hey diverted first to HRF")). NRCM initiated NFA member arbitration against High Ridge on these issues in 2018. *See* Ex. 4.

**Howard Rothman and Robert Boshnack** – Rothman and Boshnack are High Ridge's managing members and the co-founders of Vision Investment Advisors, LLC ("VIA").[11] In the SAC, Plaintiffs attempt to cast aspersions based on Rothman and Boshnack's ownership interests

---

[11] *See* http://www.highridgefutures.com/company/executive-team/.

in various related entities, and guarantees in support of High Ridge's arrangement with ADMIS. But Plaintiffs still fail to direct a single meaningful, specific allegation towards either Rothman or Boshnack directly, and fail to plead requisite facts to pierce the corporate veil. Rothman and Boshnack are NFA members, and NRCM also initiated NFA member to arbitration against them in 2018. *See* Ex. 4, Paras. 5-6.

**John Felag** – Felag is High Ridge's Chief Risk Officer.[12] Parsing through Plaintiffs' group pleading, Plaintiffs appear to allege that Felag, through his provision of risk-management services as High Ridge's principal employee, accessed NRCM's accounts in order to misappropriate STORM and impose purportedly unauthorized fees. Felag is a NFA member, and NRCM also initiated NFA member arbitration against him in 2018. *See* Ex. 4, Para. 7.

**Lazzara Consulting, Inc. ("LCI") and Gerard Lazzara** – LCI is an ADMIS introducing broker located in Austin, Texas, whose sole employee is Lazzara. While Plaintiffs' allegations against LCI and Lazzara in the SAC are truly labyrinth, Plaintiffs appear mainly to allege that LCI and Lazzara were responsible for facilitating NRCM's opening of accounts with ADMIS, and failed to disclose ADMIS's relationship with High Ridge. LCI and Lazzara are NFA members, and NRCM also initiated NFA member arbitration against them in 2018. *See* Ex. 4, Paras. 2-3.

**Vision Investment Advisors, LLC ("VIA")** – VIA is a long-established investment management and advisory firm founded by Rothman and Robert. VIA has provided discretionary investment advisory services to its clients in the area of securities and stock options for approximately twenty years.[13]  Plaintiffs allege that VIA "directly compet[ed]" with NRCM apparently based on the fact that VIA registered with the NFA as a CTA in 2018, nearly a year

---

[12] *See id.*

[13] *See* http://www.advicewithvision.com/.

after NRCM's accounts had closed. (¶¶ 83-84.) Plaintiffs variously allege that VIA "modified," "scrutinized," "copied," "replicated," "incorporated," "studied," "downloaded," "uploaded," "used," and "mimicked" "parts and aspects of the STORM program" (¶¶ 84, 260, 619), but fail to aver anywhere what commodities VIA actually traded, much less the ways in which VIA's trading strategies were allegedly similar to STORM's, exposing the vacuity of their claims. VIA has been a NFA member since March 2018. *See* Ex. 6.

**Vision Financial Markets, LLC ("VFM") –** VFM was a futures commission merchant owned by the owners of High Ridge. VFM has no apparent connection to NRCM's accounts at issue, other than Plaintiffs' allegation that VFM owns the servers onto which High Ridge allegedly "download[ed]" STORM. (¶¶ 172-73.)

**Vision Brokerage Services, LLC ("VBS")** – The SAC still does not direct a single meaningful, specific allegation towards VBS, alleging only in group pleading that "VIA, Boshnack, Rothman, Felag, RF, BF, HRHC, VFM, VBS, and the other trading arms" "used, incorporated, profited and procured other leverage and benefit from" acquiring STORM's trading strategies. (¶ 177.) The claims against VBS should be dismissed for this reason alone.

**High Ridge Holding Company, LLC ("High Ridge Holding")** – Plaintiffs also do not direct a single meaningful, specific allegation towards High Ridge Holding other than its ownership of High Ridge and relationship to other Vision defendants. The claims against High Ridge Holding should be dismissed for this reason alone.

**H. Rothman Family LLC and Boshnack Family, LLC –** H. Rothman Family LLC and Boshnack Family, LLC (the "Family LLCs"), are limited liability companies established by Rothman and Boshnack, respectively, which hold ownership interests in certain Vision entities and affiliates; the Family LLCs' members include High Ridge's owners and/or their family

members. The Family LLCs do not – nor do Plaintiffs allege that they do, in fact – play any role in managing or directing High Ridge or its affiliated entities. Indeed, Plaintiffs do not direct a single meaningful, specific allegation towards the Family LLCs, alleging only in group pleading that "[t]he entities that profit and use from the misappropriation trade secrets, are HRHC, VIA, VFM, their owners Boshnack, Felag, Rothman, Rothman Family, LLC and Boshnack Family, LLC." (¶ 178.) The claims against the Family LLCs also should be dismissed for this reason alone.

## ARGUMENTS

**I.     NRCM and NAM's Claims Against High Ridge, Rothman, Boshnack, Felag, LCI, Lazzara, and VIA are Subject to NFA Arbitration.**

As members of the NFA, NRCM and NAM are obligated to arbitrate any claims they have against fellow NFA members, here, Defendants High Ridge, Rothman, Boshnack, Felag, LCI, Lazzara, and VIA. Indeed, NRCM already initiated arbitration against all of the foregoing Defendants other than VIA in 2018, and NRCM should not be permitted to circumvent that arbitration process now.

### A.     NRCM and NAM Agreed to Mandatory Arbitration of NFA Member vs. Member Disputes.

NRCM and NAM's agreement to arbitrate claims against fellow NFA members pursuant to the NFA's membership rules falls squarely within the Federal Arbitration Act's admonition that arbitration agreements are to be favored and enforced.

The NFA is a statutorily-authorized self-regulatory organization for the futures industry. S*ee Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,* 456 U.S. 353, 365 n. 28 (1982). Applicants for NFA membership expressly agree, *inter alia*, to "become and remain bound by all NFA requirements, including without limitation all applicable NFA Bylaws . . . ***Code of Arbitration and Member Arbitration Rules*** as then and thereafter in effect." *See*, NFA Bylaws,

Rule 301(f)(emphasis added).[14] Section 2 of the Member Arbitration Rules provides that – apart from certain exceptions not applicable here – "disputes between and among Members shall be arbitrated under these rules." *See* NFA Member Arbitration Rules, Section 2(a).[15]

NRCM was previously a member of the NFA, and was a member at the time it initiated arbitration against many of the named Defendants in 2018. Ex. 4 (NRCM Arbitration Claim), Para.1 (noting NRCM's NFA membership and acknowledging that "[a]s such, NRCM is required to resolve member to member disputes in accordance with NFA Member rules and requirements"). NAM was registered as a NFA member on September 22, 2020. (¶ 57). Accordingly, NRCM and NAM have expressly agreed to arbitrate any disputes they may have with fellow NFA members *See R.J. O'Brien & Assocs., Inc. v. Pipkin*, 64 F.3d 257, 260-63 (7th Cir. 1995) (finding that plaintiff NFA registrant consented to mandatory arbitration under NFA's Rules, and that the requirement to arbitrate did not violate due process).

Under the Federal Arbitration Act ("FAA") and Second Circuit precedent, arbitration agreements are to be favored, and enforced. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345-346 (2011) (FAA reflects "a liberal federal policy favoring arbitration"); *Arciniaga v. Gen. Motors Corp.,* 460 F.3d 231, 234 (2d Cir.2006) ("it is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy we 'have often and emphatically applied'"); *Collins & Aikman Prods. Co. v. Building Sys., Inc.,* 58 F.3d 16, 19 (2d Cir.1995) ("We will compel arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'").

---

[14] *Available at* https://www.nfa.futures.org/rulebook/rules.aspx?Section=3.

[15] *Available at* https://www.nfa.futures.org/rulebook/rules.aspx?Section=6.

Accordingly, NRCM and NAM should be compelled to arbitrate any claims they may have against fellow NFA members High Ridge, Rothman, Boshnack, Felag, LCI, Lazzara, and VIA. *See* FAA, 9 U.S.C. § 4 ("upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement"). To be clear, the moving Defendants do not concede that NAM has standing, or that NRCM or NAM have valid claims against them. However, any dispute NAM and NRCM may have with fellow NFA members must be submitted in accordance with NFA's Member Arbitration Rules.

**B.      NRCM Initiated Arbitration Against High Ridge, Rothman, Boshnack, Felag, LCI, and Lazzara in 2018.**

NRCM should be compelled to arbitrate its claims against Defendants High Ridge, Rothman, Boshnack, Felag, LCI, and Lazzara for the additional reason that NRCM initiated NFA arbitration against them and others on these issues in 2018. *See* Ex. 4. NRCM and its managing member, Plaintiff Kumaran, actively participated in the arbitration for well over a year before petitioning for, and receiving from the NFA Arbitration Panel a stay for the limited purpose of proceeding ***against the NFA only*** in U.S. District Court.

As this Court has held in the related ADMIS Lawsuit, "separate and apart from any written agreement to arbitrate, NRCM, through its conduct, has agreed to arbitrate its claims or, at the very least, has waived its right to challenge the arbitration agreement or the authority of the arbitrator." *See Kumaran v. ADM Investor Services, Inc.,* No. 20-cv-03873, 2021 WL 2333645, at *4 (S.D.N.Y. June 7, 2021) (citing cases); *see also ConnTech Dev. Co. v. Univ. of Connecticut Educ.Properties, Inc.,* 102 F.3d 677, 685 (2d Cir. 1996) ("An objection to the arbitrability of a claim must be made on a timely basis, or it is waived."). Specifically, "not only did NRCM initiate

the arbitration, it went on to participate in arbitration for at least a year and a half without challenging the jurisdiction of the arbitrator." *Id.*

Notably, it remains the NFA Arbitration Panel's order and expectation that NRCM's claims are to be arbitrated in that forum. In granting NRCM's petition for a stay of arbitration for the limited purpose of pursuing a lawsuit against the NFA, the Arbitration panel emphasized: **"*However, to be clear, the dispute between the parties being members of the NFA shall remain in this arbitration forum.*"** Ex. 5 (emphasis added). As this Court has recognized, "to allow a party to pursue arbitration and then later, after it is unhappy with the way arbitration is unfolding, challenge whether it had ever agreed to arbitrate, would run contrary to the clear policy favoring arbitration." *Kumaran v. ADM Investor Services, Inc.,* 2021 WL 2333645, at *5. NRCM should not be permitted to circumvent the arbitration process it started.

## II.    Dismissal of all Remaining Claims Is Warranted for Failure to Comply with Rule 8.

To the extent that Plaintiffs have asserted any claims that are not subject to mandatory NFA arbitration – *i.e.,* any claims Kumaran asserts as an individual, rather than as the managing member of NRCM and/or NAM; any claims NHC asserts in its own right, rather than due to its association with any other Plaintiff; and any claims NRCM and NHC assert against non-NFA member Defendants – they should be dismissed for failure to comply with Federal Rule of Civil Procedure 8(a)(2). Under Rule 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "Unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1281). Noncompliance may be met with dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or, alternatively, a court may strike

redundant, immaterial, impertinent, or scandalous portions thereof pursuant to Fed. R. Civ. P. 12(f). *See Debellis v. White*, 19 Civ. 8730, 2020 WL 5076827, at *1 (S.D.N.Y. Aug. 27, 2020) (Furman, D.J.) (citing *Salahuddin*, 861 F.2d at 42).

Plaintiffs' 201-page, 1015-paragraph Second Amended Complaint speaks for itself. Courts in this district have repeatedly dismissed, and the Court of Appeals has affirmed dismissals of, complaints of equivalent prolixity. *See, e.g., Shapiro v. Goldman*, 696 F. App'x 532, 533 (2d Cir. 2017) (Summary Order) (plaintiff's repeated violation of Rule 8 in "filing a prolix 115-page Second Amended Complaint . . . by itself, warrants affirmance of the district court's dismissal"); *Rosa v. Goord*, 29 F. App'x 735, 735 (2d Cir. 2002) (Summary Order) (affirming dismissal where *pro se* plaintiff's "amended filings remained 'prolix' and 'not susceptible of a responsive pleading'"); *Gonzalez v. Wing*, 113 F.3d 1229 (2d Cir. 1997) (Summary Order) (affirming dismissal of *pro se* plaintiff's 287-page "incredibly dense and verbose" complaint); *Harley v. Streamlicensing Networks LLC*, No. 18-CV-9528 (CM), 2019 WL 2866563, at *3 (S.D.N.Y. July 3, 2019) (*pro se* plaintiff's complaint failed to comply with Rule 8 where it was "lengthy, includes unnecessary and unimportant details, and lacks sufficient relevant details to state a claim for relief"), appeal dismissed, No. 19-3000, 2020 WL 1467032 (2d Cir. Jan. 13, 2020).[16]

Plaintiffs' continued breach of Rule 8 is particularly inexcusable in light of the Court's admonition at the status conference held on April 30, 2021 that, "with respect to the [second

---

[16] *See also Prezzi v. Schelter*, 469 F.2d 691 (2d Cir. 1972) (noting, with approval, that plaintiff's original "88-page, legal size, single spaced *pro se* complaint" was dismissed for failure to comply with Rule 8 "since it contained a labyrinthian prolixity of unrelated and vituperative charges that defied comprehension"); *Blakely v. Wells*, 209 F. App'x 18, 20 (2d Cir. 2006) (Summary Order) (District Court acted within bounds of permissible discretion in dismissing second amended complaint for noncompliance with Rule 8(a), where the pleading, "which spanned 57 pages and contained 597 numbered paragraphs, was far from short or plain"); *Lafurno v. Walters*, 18-CV-1935, 2018 WL 2766144, at *1 (E.D.N.Y. June 8, 2018) (dismissing *pro se* plaintiff's lengthy, "rambling, at times incoherent, and disjointed" submission for failure to comply with Rule 8).

amended complaint] that's filed, Rule 8 needs to be abided." Ex. 7 (Tr. of April 30, 2021 Hearing), 20:7-8. The Court specifically noted that the previously filed complaints were "prolix" and that the Court was "very confused by them." *Id.* at 20:9-10. The Court also cautioned plaintiffs that "[i]t would not be consistent with the letter and spirit of Rule 8 to incorporate by reference multiple paragraphs of another pleading." *Id.* at 32:19-21. The Court's Order following the status conference directed that all remaining plaintiffs were to "file a single SAC" and that "[s]uch pleading must comply with Federal Rule of Civil Procedure Rule 8 and contain a short and plain statement of the claim showing that the pleader is entitled to relief." (ECF No. 69.)

The SAC did not shorten or clarify Plaintiffs' pleading; to the contrary, the SAC *doubled* the length of Kumaran's First Amended Complaint (*see* ECF No. 20 (103 pages)), and ran 50 pages longer than the attempted separate complaints for Kumaran and NRCM (*see* ECF Nos. 48, 49 (150 pages each)). The increased length of the SAC cannot be explained or excused by the fact that there is an individual *pro se* and three counseled entity plaintiffs, as all Plaintiffs appear to join in all general allegations, and the entity Plaintiffs do not assert any counts independent of Kumaran. The SAC also attempts to incorporate *even more* external pleadings by reference – including even a document filed under seal in another case – in violation of "the letter and spirit of Rule 8." (*See* SAC Introductory Paragraph ("incorporating by reference the exhibits…filed on the docket in related cases"); ¶ 29 ("common facts to the Complaint are included by reference the NFA Verified Amended Complaint, attached hereto as Exhibit 26"); ¶ 88 ("Plaintiff includes by reference Section IV on Trade Secrets ¶26-¶57 that was filed in related Complaint 20-CV-3873"); ¶ 95 (referencing alleged Guarantee and Fee Agreement filed under seal in ADMIS Lawsuit; *see also* ¶¶ 35, 93, 96, 102, 108, 114 n. 3, 120, 198, 263, 367, 395, 607, 622, 634.)

Most troublingly, the SAC continues to lump all Defendants together in a fashion that

precludes them from fully discerning the nature and basis of the claims against them. The SAC repeatedly refers the Defendants as a group, and never once sets forth anything more than minimal conclusory allegations against Defendants VFM, VBS, High Ridge Holding, Rothman, Boshnack, or the Family LLCs. Put simply, the SAC fails to plead facts that "establish the specific personal involvement by any of the[se] Defendants . . . in the alleged wrongful acts." *Isidro Mejia v. N.Y.P.D.*, 1:16-cv-9706-GHW, 2019 WL 3412151, at *7 (S.D.N.Y. July 28, 2019) (Woods, D.J.).

Such allegations not only fail to establish a "fairly traceable injury" to any Defendant for standing purposes[17] or to state a claim,[18] but they also violate a central tenet of Rule 8(a)(2): "to give defendants 'fair notice of what plaintiff's claim is and the grounds upon which it rests in order to enable the opposing party to prepare answer and prepare for trial, and to identify the nature of the case.'" *Id.* at *7 (quoting *Middleton v. United States*, 10 Civ. 6057 (JFB) (ETB), 2012 WL 394559 at *2 (E.D.N.Y. Feb. 7, 2012)).

Plaintiffs' abject failure to comply with Rule 8 is not only inexcusable, it is sanctionable. *See Sirohi v. Trustees of Columbia Univ.*, 162 F.3d 1148, at *3 (2d Cir. 1998) (Summary Order) ("[T]he court's decision to grant the defendants leave to renew their motion for sanctions was not

---

[17] "It is well-established that a plaintiff must demonstrate standing for each claim [it] seeks to press." *Mahon v. Ticor Title Ins. Co.*, 683 F. 3d 59, 64 (2d Cir. 2012). To demonstrate standing, a plaintiff must show, *inter alia*, "(1) *injury-in-fact*, which is a 'concrete and particularized' harm to a 'legally protected interest'; (2) *causation* in the form of a 'fairly traceable' connection between the asserted injury-in-fact and the alleged actions of the defendant[.]" *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009) (quoting *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 106-07 (2d Cir. 2008)). A plaintiff cannot predicate standing to sue one defendant based merely on facts supporting standing to sue another. *Mahon*, 683 F.3d at 66.

[18] A pleading must "inform each defendant of the nature of [its] alleged participation in the [alleged wrongdoing.]" *DiVittorio v. Equidyne Extractive Indus., Inc.* 822 F.2d 1242, 1247 (2d Cir. 1987). Corporate proximity is insufficient. *See, e.g.*, *In re Aluminum Warehouse Antitrust Litig.*, No. 13-md-2481, 2015 WL 1344429, at *3 (S.D.N.Y. 2015) (Engelmayer, D.J.) ("The fact that two separate legal entities may have a corporate affiliation does not alter [Rule 8's] pleading requirement.").

an abuse of discretion because of the complaint's excessive length and considerable disorganization."); *Council of Commuter Organizations v. Metro. Transportation Auth.*, No. 82 CIV. 8372 (PNL), 1984 WL 603, at *1 (S.D.N.Y. July 2, 1984) (noting with approval that another judge had described an earlier complaint of 80 pages with over 120 paragraphs "as 'a gross, unmitigated, inexcusable imposition on the court, counsel and the 41 parties-defendant" and stated that 'the breach of reasonable pleading invites the imposition of sanctions'"). As the Court noted in its April 30, 2021 Order, Rule 8 applies to *pro se* plaintiffs as well as counseled plaintiffs. (*See* ECF No. 60 (citing *Wynder v. McMahon*, 360 F.3d 73, 79 n.11 (2d Cir. 2004)). But any consideration Kumaran might receive as a *pro se* plaintiff certainly does not apply to NRCM, NAM, and NHC, who are represented by counsel.

## III.  Kumaran Lacks Standing to Assert Derivative Claims.

Despite the Court's clear prior orders that "Kumaran cannot assert claims on behalf of any other individual or other entity," (ECF No. 13), Kumaran continues to assert derivative claims on behalf of NRCM in the SAC. (*See* ¶ 55 (claiming to "bring[] claims in both her individual capacity and also derivatively on behalf of NRCM"); Counts VIII, IX, XI, XVI, XVIII, XIX). All such claims should be dismissed. "[A] layperson may not represent a corporation in which [s]he is the shareholder, a limited liability company of which [s]he is the sole member, or a partnership where [s]he is a partner." *Sanchez v. Walentin*, 526 F. App'x 49, 51 (2d Cir. 2013) (Summary Order) (citing *Berrios v. N.Y. City Hous. Auth.*, 564 F.3d 130 (2d Cir. 2009).

Further, as a general rule, "[a] shareholder – even the sole shareholder – does not have standing to assert claims alleging wrongs to the corporation." *Gabayzadeh v. Global Equip. & Mach. Sales Inc.*, 18 Civ. 3851 (LGS), 2019 WL 5880639, at *2-3 (S.D.N.Y. Jan. 28, 2019) (Schofield, D.J.) (citing *Jones v. Niagara Frontier Transp. Auth.*, 836 F.2d 731 (2d Cir. 1987)).

"When the claim is that corporate property has been removed from the corporation, it is the corporation – having an independent legal duty – that must seek on its own or derivatively, to redress its injury. The shareholder in such a case is injured only as a result of the injury to another, *i.e.*, the corporation, and therefore generally lacks standing." *Id.* at *3 (quoting *Bingham v. Zolt*, 66 F.3d 553, 561–62 (2d Cir. 1995)). These "same principles apply to limited liability companies" and their members. *Schiff v. ZM Equity Partners, LLC*, 19 Civ. 4735 (WHP), 2020 WL 5077712, at *10 (S.D.N.Y. Aug. 27, 2020) (Pauley III, D.J.).

Applying this standard, Kumaran plainly lacks standing to bring claims for Fraudulent Inducement of Contract (Count VIII), Breach of Fiduciary Duty (Count IX), Aiding and Abetting Breach of Fiduciary Duty (Count XI), Tortious Interference with Contract (Count XVI), Breach of Implied Covenant of Good Faith and Fair Dealing (Count XVII), and Breach of Contract as "implied in fact IB" (Count XIX), which solely implicate the contractual rights of **NRCM**. *See Backus v. U3 Advisors., Inc.*, 16 Civ. 8990 (GHW), 2017 WL 3600430, at *16 (S.D.N.Y. Aug. 18, 2017) (Woods, D.J.) (holding when a claim "sounds in breach of a contractual duty owed to the company" and the "essence" of the alleged injury is to an interest belonging to the company, the claim is derivative (citing *El Paso Pipeline GP Co., L.L.C. v. Brinckerhoff*, 152 A.3d 1248, 1260 (Del. 2016)); *Alpvex, Inc. v. John Swan Ltd.*, 2019 WL 6330274, at *6 (N.D.N.Y. Nov. 26, 2019) (dismissing fraudulent conveyance, conversion, bad faith, and unjust enrichment claims, finding each "hing[ed] entirely on alleged abuses of the capital contribution after it became [the limited liability company's]—and not plaintiffs'—property"). Kumaran also lacks standing to bring the remaining claims to the extent that they invoke duties owed to, or injuries suffered by NRCM.

## IV.    NHC and NAM Fail to State a Claim as to Alleged Events Before Their Formation.

As best one can tell, all of Plaintiffs' claims hinge on allegations that LCI and Lazzara failed to disclose High Ridge's involvement in performing risk-management services for ADMIS before NRCM opened its accounts with ADMIS, and that High Ridge was able to "steal" Kumaran's STORM strategy by having access to NRCM's accounts. While these claims are defective for the reasons stated elsewhere in this brief, newly added plaintiffs NHC and NAM's attempts to assert them are complete non-starters.

NRCM's accounts with ADMIS were closed in June 2017. (¶ 579.) By Plaintiffs' own allegations, NHC "is a New York S Corporation that was formed in or around **September 2017**" (¶ 58), and NAM is a "Delaware LLC that was formed in **May 14 2018**" (¶ 57) (emphases added). As such, NHC and NAM could not have held any rights to STORM during the alleged period of misconduct. (*Contra* ¶ (alleging that "NAM and NHC, as well as NRCM and other Nefertiti entities had a license to use, exploit and derive revenue from the [alleged intellectual property in STORM], as part of the structure of capitalization")). *See, e.g., Rubenstein v. Mayor*, 41 A.D.3d 826, 828 (N.Y. App. Div. 2007) ("a nonexistent entity cannot acquire rights or assume liabilities"); *442 Decatur St., LLC v. Spheres Realty, Inc.*, 14 A.D.3d 535, 536, 787 N.Y.S.2d 669, 670 (N.Y. App. Div. 2005) (a purported entity "cannot 'acquire rights by contract or otherwise'"). All of NHC's claims, and all of NAM's claims not subject to NFA member-to-member arbitration (*see* Part I.A, above) should be dismissed for this reason alone.[19]

---

[19] In addition to the fundamental standing issues facing NHC and NAM, their claims for violation of RICO (Counts I and II), misappropriation of trade secrets under the DTSA and New York law (Counts III and IV), conversion (Counts V and VI), unfair competition (Count XIII), unjust enrichment (Count XIV), tortious interference in economic advantage (Counts XV), and civil conspiracy to the extent based on the foregoing (Count XII) also should be dismissed as untimely. NRCM's accounts were closed – and any alleged theft of its trading secrets necessarily ended – in **June 2017**. (¶ 579.) NAM and NRCM did not properly join in a pleading against Defendants until the SAC was filed **July 30, 2021**, more than four years later. (ECF No. 89.) Civil RICO claims must be brought within four years of accrual. *Agency Holding Corp. v. Malley-Duff & Associates,*

**V.      Plaintiffs Fail to Pierce High Ridge or VIA's Corporate Veil.**

The SAC still fails to allege any discernible direct claims against Defendants VFM, VBS, High Ridge Holding, Rothman, Boshnack, or the Family LLCs. Plaintiffs apparently seek to hold them liable by piercing the corporate veil of High Ridge and/or VIA. These efforts fall far short.

"Under New York's choice of law rules, the law of the state of incorporation determines when the corporate form will be disregarded." *Fletcher v. Atex, Inc.*, 68 F. 3d 1451, 1456 (2d Cir. 1995). High Ridge and VIA are both organized in Delaware. "To state a 'veil-piercing claim' [under Delaware law] the plaintiff must plead facts supporting an inference that the corporation, through its alter ego, has created a sham entity designed to defraud investors and creditors." *Crosses v. BCBSD, Inc.*, 836 A.2d 492, 497 (Del. 2003). "Specific facts a court may consider . . . include: (1) whether the company was adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the dominant shareholder siphoned company funds; and (5) whether, in general, the company simply functioned as a façade for the dominant shareholder." *Doberstein v. G-P Indus., Inc.*, 2015 WL 6606484, at *4 (Del. Ch. Oct. 30, 2015); *McCall v. Chesapeake Energy Corp.*, 817 F. Supp. 2d 307, 313–14 (S.D.N.Y. 2011) (Cote, D.J.); *RCC Ventures v. Brandtone Holdings. Ltd.*, 322 F.R.D. 422, 448 (S.D.N.Y. 2017) (Woods, D.J.).[20]

---

*Inc.*, 483 U.S. 143, 156 (1987). DTSA claims have a three year statute of limitations. 18 U.S.C. § 1836(d). Misappropriation of trade secrets claims under New York law also have a three-year statute of limitations, as do other claims for injury to property. *See* N.Y. C.P.L.R. 214(3), (4); *Zirvi v. Flatley*, 838 F. App'x 582, 586 (2d Cir. 2020). The three-year statute of limitations also applies to NHC and NAM's unjust enrichment claims as they seek monetary, as opposed to equitable, relief. *See Ingrami v. Rovner*, 45 A.D.3d 806, 808, 847 N.Y.S.2d 132 (2d Dept. 2007) ("Contrary to the plaintiff's contention, the three-year statute of limitations of CPLR 214 (3) governs here, since the plaintiff is seeking monetary, as opposed to equitable, relief.").

[20] To the extent that New York law applies (VBS is organized in New York), the law is the same. "It is well-settled that New York courts are reluctant to disregard the corporate entity," *William Wrigley Jr. Co. v. Waters*, 890 F.2d 594, 600 (2d Cir. 1989), "and thus that a party seeking to do

Plaintiffs do not allege a single fact that would enable a court to make a finding that the corporate forms of High Ridge or VIA should be ignored to reach their affiliates or owners; instead, Plaintiffs make conclusory assertions regarding the ownership and control Boshnack, Rothman and Felag exercise over the Vision entities, and that those entities share facilities, servers, and computers. (*See, e.g.,* ¶ 255.) Plaintiffs fail to plead any fact even suggestive of the notion that High Ridge or VIA operated as the mere alter egos of VFM, VBS, High Ridge Holding, Rothman, Boshnack, or the Family LLCs. Thus, each of these Defendants should be dismissed.

## VI.   Plaintiffs' Claims Fail for Additional Reasons.

Besides the fundamental, independently fatal deficiencies stated above, each of Plaintiffs' causes of action not otherwise subject to mandatory NFA arbitration should be dismissed for the additional reasons set forth below.

### A.   <u>Counts I & II, Civil RICO and Civil RICO Conspiracy</u>

Counts I and II assert that all Defendants violated and conspired to violate the RICO statute, 18 U.S.C. § 1962(c) and (d). Plaintiffs' incredible claim that the Defendants were engaged in a RICO scheme with ADMIS, ADMIS's CEO Tom Kadlec, ***and NFA officials*** for the purpose of stealing the trading strategies of a small investor with no track record should be dismissed. To state a claim for a civil RICO violation, a plaintiff must ***plausibly*** allege (1) a violation of the RICO

---

so bears a 'heavy burden,'" *MWH Intern. Inc. v. Inversora Murten, S.A.*, 1:11 Civ. 2444-GHW, 2015 WL 728097, at *11 (S.D.N.Y. Feb. 11, 2015) (quoting *TNS Holdings., Inc. v. MKI Sec. Corp.*, 92 N.Y.2d 335, 339 (1998)). New York law requires the party seeking to pierce a corporate veil to make a two-part showing: "(i) that the owner exercised complete domination over the corporation with respect to the transaction at issue; and (ii) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997) (citation omitted). Notably, "[w]hile complete domination of the corporation is the key to piercing the corporate veil, such domination, standing alone, is not enough; some showing of a wrongful or unjust act toward [the party seeking piercing] is required." *Id.*

statute; (2) an injury to business or property; and (3) that the injury was caused by the violation of the RICO statute. *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018) (citations omitted). "The elements of a § 1962(c) violation are (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *See Buhannic v. Am. Arbitration Assoc.*, 18 Civ. 2430 (ER), 2019 WL 4735005, at *5 (S.D.N.Y. Sept. 27, 2019) (Ramos, D.J.). "[C]laims under both § 1962(c) and (d) require that the plaintiff adequately allege a pattern of racketeering activity." *Id.*

In keeping with Plaintiffs' apparent strategy of pleading by volume, not substance, Plaintiffs attach as Exhibit 15 to the SAC a "Schedule of Select Predicate RICO Acts" listing 115 alleged acts of wire fraud. On closer examination, the entries describe nothing more than routine telephone and email communications in the course of opening NRCM's accounts, monitoring risk, and responding to account-related questions. (*See, e.g.,* SAC Ex. 15, No. 2 ("Email and phone calls showing inquiries by Kumaran to Lazzara to disclose risk management procedures and options margin"); No. 5 ("Documents containing disclosures about ADMIS Disclosure Documents")).

Courts have cautioned against just this type of would-be RICO pleading: "'RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it.'" *Gross v. Waywell*, 628 F. Supp. 2d 475, 493 (S.D.N.Y. 2009) (quoting *Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12, 20 (1st Cir.2000)). Indeed, "courts in this Circuit have held repeatedly that allegations of RICO violations involving solely mail and wire fraud or little other variety in the predicate acts, a limited number of participants or victims, a discrete scheme with a narrow purpose or a single property—as opposed to complex, multi-faceted schemes—are generally insufficient to demonstrate closed-ended continuity, and thus to satisfy to 'pattern' element of a plausible RICO claim. *Gross*, 628 F. Supp. 2d at 494 (citing cases and

finding that alleged scheme involving over 100 instances of mail and/or wire fraud failed to establish pattern of racketeering activity). Plaintiffs' RICO allegations are likewise insufficient.

Because a RICO conspiracy claim under § 1962(d) may stand only where a predicate violation of § 1962(c) has been pled, both Counts I and II should be dismissed.

**B.     Counts III & IV, Misappropriation of Trade Secrets under the Defend Trade Secrets Act and New York Law**

Plaintiffs claim that all Defendants misappropriated a trade secret – STORM – in violation of federal and state law. Although Plaintiffs have divided their claims in two, the elements of a claim under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836(b)(1), "are fundamentally the same," as a claim under New York law, *Iacovacci v. Brevet Holdings, LLC*, 437 F. Supp. 3d 367, 380 (S.D.N.Y. 2020) (Pauley D.J.), and thus will be addressed together here.

The DTSA provides a private cause of action to the "owner of a trade secret that is misappropriated." 18 U.S.C. § 1836(b)(1). "Misappropriation" is the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" or "disclosure or use of a trade secret of another without express or implied consent." 18 U.S.C. § 1839(5). "Improper means" under the Act includes "theft, bribery, misrepresentation, [and] breach or inducement of a breach of a duty to maintain secrecy," but excludes "reverse engineering, independent derivation, or any other lawful means of acquisition." 18 U.S.C. § 1839(6). Plaintiffs here fail to plead the existence of a trade secret; that any information about NRCM's accounts was accessed by improper means; and that any trade secrets were improperly disclosed or used.

To begin, the SAC now admits that STORM was neither an "algorithm" nor "program" as previously alleged, but rather, nothing more than Kumaran's self-described trading strategy. (*See* ¶ 68 (alleging that "CTA's usually give their trading strategies a name, which they call a trading

23

program," which "does not mean 'program' in the literal sense such as software program, but the name of the trading strategy'"). Plaintiffs never allege that Defendants had access to any information that would allow them to ascertain how NRCM would trade before it actually did so. While the DTSA and New York law define "trade secret" broadly, *see* 18 U.S.C. § 1839(3) and *Schroeder v. Pinterest Inc.*, 133 A.D.3d 12, 27, 17 N.Y.S.3d 678 (1st Dept. 2015), it cannot be that strategies in Kumaran's head alone or the trades themselves constitute a trade secret. If that were the case, then any of the thousands of market professionals that process the trades of millions of investors would be at risk of a trade secrets claim, however non-meritorious.

Even if Plaintiffs were to fall back on claims that they "have a specialized options trading strategy and algorthims [sic]" (*See* ¶ 64 ("Specific components that provide the trade secrets of the trading strategy, are the *type of option strategy, combination of options trades placed, volumes, strikes, premiums, delta, gamma, vega,* and *times to expiration, and the combination and integration of the foregoing*. The trade secrets also include the *timing and execution of the trades* as well as the *risk management strategies* to mitigate risk." (emphasis in original)), such vague and generalized claims would be insufficient. Notably, Kumaran's similarly vague allegations of trade secrets were rejected by Judge Vyskocil in another recent case brought by Kumaran and entities controlled by her. *See Kumaran v. Northland Energy Trading*, LLC, No. 119CV8345MKVDCF, 2021 WL 797113, at *11 (S.D.N.Y. Feb. 26, 2021). There, Kumaran similarly "define[d] the 'IP' that Defendants allegedly misappropriated as 'risk management tools, hedging strategies, designs, models, processes, techniques, algorithms, hedging methodologies, graphical interfaces, decision support tools, Timetrics Software and other Confidential Information.'" *Id.* Judge Vyskocil found that "[a]lthough Plaintiffs tack on many synonyms, and stress that their 'IP' is confidential and valuable, Plaintiffs' allegations clearly boil down to lists

24

of 'general categories of information'… which are not sufficiently particularized to state a claim for misappropriation." *Id.* (citation omitted). Indeed, Plaintiffs' allegations are so vague that it is impossible to rule out that STORM (an acronym for "Super Timetrics Options Risk Management" (¶ 61)) and the rejected Timetrics "trade secrets" are one and the same.

Plaintiffs also fail to put forward plausible allegations that any Defendant accessed (much less acquired) any information about NRCM's accounts *improperly*. As noted above, High Ridge and its Chief Risk Officer, Felag, received information about NRCM's margin levels and could view NRCM's accounts as needed to perform the requisite risk management functions for ADMIS. Indeed, by signing NRCM's account opening papers, Kumaran did, in fact expressly consent to ADMIS outsourcing certain risk monitoring to third parties, including High Ridge, pursuant to the Privacy Policy. *See* Ex. 1 (giving ADMIS permission to "…share your personal information with affiliates and subsidiaries and/or unaffiliated third parties…to service your account").

Finally, the SAC's admission that STORM was nothing more than Kumaran's trading preferences are fatal to Plaintiffs' ability to plausibly plead that any of the Defendants acquired – much less "copied, replicated, studied, downloaded, uploaded, modified, incorporated, strategies, and used" – it. (*Contra* ¶ 619.) This is not a situation like in *AUA Private Equity Partners., LLC v. Soto*, 17 Civ. 80355 (GHW), 2018 WL 1684339, at *2 (S.D.N.Y. Apr. 5, 2018) (Woods, D.J.), where a plaintiff corporation successfully pled an "acquisition theory" upon allegations that the defendant former employee began uploading the company's proprietary files on to her personal Google Drive account before her termination. Nor have Plaintiffs pled facts similar to *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489 (S.D.N.Y. 2011), where it was alleged that a former employee downloaded the employer's customer list to a personal thumb drive without permission.

What Plaintiffs are really asking the Court to believe is that Defendants studied and reverse-engineered NRCM's trades based on the documents provided to High Ridge and Felag by ADMIS for risk-management purposes to crack STORM's code. Even if it were true that High Ridge and Felag viewed NRCM's accounts for anything other than risk management services – it is not – this outlandish theory of liability cannot support a misappropriation claim. *See* 18 U.S.C. § 1839(6) ("improper means" do not include "reverse engineering").

Plaintiffs' allegations that VIA copied STORM's strategies in a new trading program called SSP are similarly unavailing. Plaintiffs allege that SSP "replicated the core strategy of Plaintiffs" because it "include[ed] features of *volumes, strikes, option profiles, premiums, time frames and short term risk profile*." (¶ 253 (emphasis in original)). Those generic terms might describe *any* futures trading strategy, and certainly do not support Plaintiffs' claim of copying. Simply put, Plaintiffs' theory that Defendants sought out and copied a trading strategy from accounts that had been inactive for eight months, had been the subject of numerous margin calls, and had otherwise performed unremarkably, is not plausible.

### C.    Count V, Conversion

Plaintiffs plead a claim for conversion for the first time in the SAC. It is time-barred. Conversion claims are subject to a three-year statute of limitations. *See* CPLR §214(3); *Vigilant Ins. Co. of Am. v. Hous. Auth. of City of El Paso, Tex.*, 87 N.Y.2d 36, 44, 660 N.E.2d 1121 (N.Y. 1995). As set forth in note 19, above, NRCM's accounts were closed in June 2017. (¶ 579.) Even if Kumaran and NRCM and NAM's filings at ECF Nos. 48 and 49 on March 15 and 16, 2021 had been proper pleadings – which the Court has held they are not (*see* ECF No. 68) – the conversion claims therein would have been untimely.

Plaintiffs fail to state a claim for conversion in any event. To the extent the claim is based on the alleged intellectual property of STORM, the claim "lacks merit because the conversion of intangible property is not actionable under New York State law." *Zirvi v. Flatley*, 433 F. Supp. 3d 448, 466 (S.D.N.Y.), *aff'd*, 838 F. App'x 582 (2d Cir. 2020) ("Moreover, the mere fact that the alleged act of conversion involved learning intangible ideas from tangible documents does not make the claim actionable."); *see also Arcadia Biosciences, Inc. v. Vilmorin & Cie*, 356 F. Supp. 3d 379, 404 (S.D.N.Y. 2019); *Fischkoff v. Iovance Biotherapeutics, Inc.*, 339 F. Supp. 3d 408, 415 (S.D.N.Y. 2018) (conversion claim futile where alleged copying was not "to the exclusion of the owner's rights"). To the extent Plaintiffs' conversion claim is based on improper fees charged on NRCM's accounts at ADMIS, the claim fails as Plaintiffs do not allege that any of the moving Defendants wrongfully withheld Plaintiffs' property. *Id.* (conversion requires defendant's "unauthorized assumption and exercise of the right of ownership over goods").

### D. Count VI, Aiding and Abetting Conversion and Misappropriation

Plaintiffs' Count VI claim for aiding and abetting falls with Plaintiffs' failure to establish any underlying misappropriation of trade secrets (Counts III and IV) or conversion (Count V).

### E. Count VII, Common Law Fraud

Count VII of the SAC asserts a claim of common law fraud against all Defendants except the Family LLCs. "To state a claim for common law fraud under New York law, 'a plaintiff must show [(1)] a material misrepresentation or omission of fact, [(2)] made with knowledge of its falsity, with scienter or an intent to defraud, [(3)] upon which the plaintiff reasonably relied, and [(4)] that such reliance caused damage to the plaintiff.'" *Alpha Cap. Anstalt v. Schwell Wimpfheimer & Assocs. LLP*, 2019 WL 146993, at *12 (S.D.N.Y. Mar. 30, 2019) (Woods, D.J.)). "Claims sounding in fraud are subject to the heightened pleading requirements of Federal Rule of

Civil Procedure 9(b)," which "requires that the complaint 'state with particularity the circumstances constituting fraud.'" *Schentag v. Negben*, 17 Civ. 8734 (GHW), 2018 WL 3104092 (S.D.N.Y. June 21, 2018). "To satisfy that requirement, the complaint must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *ATSI Comms., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007) (quoting *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000).

Plaintiffs do not identify *any* representations or omissions made to NHC or NAM, and thus Count VII can readily be dismissed as to them. Plaintiffs also do not identify any representations by the cited Defendants Felag, Rothman, Boshnack, High Ridge, High Ridge Holding Company, VIA or VFM, leaving only NRCM and Kumaran's claims against LCI and Lazzara. NRCM's claims against LCI and Lazzara should be arbitrated, for the reasons stated in Part I. Kumaran's claims should be dismissed, as nothing in the SAC would support a finding that LCI or Lazzara made any representations to her in her individual capacity.

If the Court were to reach the substance of the fraud claim, Plaintiffs' unreasonably prolix allegations make it impossible to identify or understand all the representations complained of, but an examination of what appears to be the primary allegations reveal that the representations are not fraudulent in any event. Plaintiffs identify three misrepresentations in particular: that Lazzara (1) "used deceptive terminology that he was speaking to '***one of the risk guys***'" when referring to Felag; (2) referred to High Ridge as the "dev" and "tech teams"; and (3) referred to himself as working with "a division of ADMIS," thereby hiding High Ridge's involvement. (¶ 455.) The statement that Felag is a "risk guy" is not a misrepresentation. As Plaintiffs admit, Felag was responsible for overseeing High Ridge's arrangement with ADMIS to provide risk-management

services for certain introducing brokers. (¶ 350.) Moreover, Plaintiffs do not allege that Lazzara was referring to High Ridge or its employees as the "tech team" or "dev team"; they assume so. The only allegation Plaintiffs plead in support of that connection are nondescript, selective, one-line excerpts of emails, set forth in footnotes to the SAC, purportedly sent by Lazzara on January 30, 2017 that "[t]he tech team is looking at this now" and "[t]here was a new patch added by the Dev team." (¶ 455 & n.14, 15.) And as for Lazzara allegedly referring to working with a division of ADMIS, it is clear from the face of the SAC that High Ridge did not and could not have provided its services in isolation – it did so under an arrangement ***with ADMIS***.

Plaintiffs also fail to state a claim based on any material omissions. In addition to the "usual elements of fraud," a fraudulent omission claim must also allege "that the defendant had a duty to disclose material information." *Anhui Konka Green Lighting Co.*, *Ltd. v. Green Logic LED Electrical Supply Inc.*, 18 Civ. 12255 (PAE), 2019 WL 5498094, at *11 (S.D.N.Y. Dec. 3, 2019) (Engelmayer, D.J.). Plaintiffs claim that the Defendants "had a duty under Federal securities laws, and the CEA…independently not to conceal their involvement." (¶ 277). But none of the numerous rules, regulations and statutes to which Plaintiffs cite actually establish such a duty, and overwhelmingly they relate to a ***futures commission merchant ("FCM")'s*** duties, not an introducing broker like LCI, and certainly not a third party like the Vision entities and individuals. Although CFTC Rule 33.7 contains an omnibus clause that requires an introducing broker "to disclose all material information to existing or prospective option customers even if the information is not specifically required," Plaintiffs do not allege why it would be material information that a third party with risk-expertise is performing risk-management services. Nor did Defendants owe NRCM or any other Plaintiff any fiduciary duty, as they were given no discretionary authority over NRCM's accounts. *See Commodity Futures Trading Comm'n v.*

*Heritage Cap. Advisory Servs., Ltd.*, 823 F.2d 171, 173 (7th Cir. 1987) ("Only a broker operating a discretionary account in which the broker determines which investments to make is viewed as a fiduciary."); *Stewart v. J.P. Morgan Chase & Co.*, 02 Civ. 1936 (MHD), 2004 WL 1823902, at *13 (S.D.N.Y. Aug. 16, 2004) (Dolinger, D.J.) ("The courts have consistently held that where a brokerage client has a self-directed account, the broker ordinary has no legal responsibilities beyond the prompt and accurate carrying out of any transaction directed by the client.") (citing, *inter alia*, *Press v. Chem Inv. Servs. Corp.*, 166 F.3d 529, 536 (2d Cir. 1999)).

Finally, Plaintiffs fail to allege reasonable reliance on any misstatement or omission that ADMIS did not outsource its risk-management services. As noted above, the ADMIS Privacy Policy that Plaintiffs themselves cite and rely upon (*see* ¶ 967) ***expressly*** provides that ADMIS is permitted to share account information with third parties. The SAC never alleges that the Privacy Policy prohibits sharing information with third parties. Plaintiffs allege that an ADMIS employee told Kumaran so after she had already closed her account (¶¶ 583-584), but that statement cannot contravene the express terms of the Policy. Plaintiffs have no grounds on which to proceed with their fraud claims in this Court.

### F.  Count VIII, Fraudulent Inducement of Contract

Count VIII for fraudulent inducement of contract is asserted by "Kumaran (individually and derivatively)" and NRCM in connection with (i) NRCM's introducing broker relationship with LCI and (ii) NRCM's customer contracts with ADMIS. (¶ 856.) Any claims that NRCM may wish to assert against LCI (and any other NFA members) are subject to mandatory NFA arbitration, for the reasons stated in Part I, above. Count VIII should be dismissed as to Kumaran, as the SAC does not allege that Kumaran entered into any contracts in her individual capacity, and Kumaran may not assert derivative claims for the reasons stated in Part III above. The remainder of Count

VIII also should be dismissed as to NRCM, because the complaint fails to plausibly allege that any of the moving Defendants made any of the alleged representations or omissions acting on behalf of the contractual party, ADMIS. "[T]o state a claim for fraudulent inducement, 'the person making the representation must *be*, or *[be] acting on behalf of*, the other party to the contract.'" *Barron Partners, LP v. LAB123, Inc.*, 593 F. Supp. 2d 667, 674 n.3 (S.D.N.Y. 2009) (Rakoff, D.J.) (emphasis added) (citing *Nat'l Union Fire Ins. Co. v. Worley*, 257 A.D.2d 228, 233, 690 N.Y.S.2d 57 (1st Dep't 1999); *Navigant Consulting, Inc. v. Kostakis*, No. 07 Civ. 2302, 2007 WL 2907330, at *3 (E.D.N.Y. Oct. 4, 2007). Plaintiffs' attempt to hold the moving Defendants liable for a contract executed with ADMIS falls wide of the mark.

### G.   Count IX, Breach of Fiduciary Duty

Kumaran and NRCM's newly-pled claim for breach of fiduciary duty is barred by the statute of limitations and is baseless in any event. Where plaintiffs seek monetary relief, as they do here, a three-year statute of limitations applies. *See IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 139 (N.Y. 2009) ("Where the remedy sought is purely monetary in nature, courts construe the suit as alleging 'injury to property' within the meaning of CPLR 214 (4)."). More than *four* years elapsed between the closing of NRCM's accounts in June 2017 (¶ 579) and the filing of the SAC on July 30, 2021 (ECF No. 89), and thus the new claim is untimely.

Kumaran and NRCM fail to state a claim for breach of fiduciary duty in any event. "Only a broker operating a discretionary account in which the broker determines which investments to make is viewed as a fiduciary." *Commodity Futures Trading Comm'n v. Heritage Cap. Advisory Servs., Ltd.*, 823 F.2d 171, 173 (7th Cir. 1987); *Stewart v. J.P. Morgan Chase & Co.*, 02 Civ. 1936 (MHD), 2004 WL 1823902, at *13 (S.D.N.Y. Aug. 16, 2004) (Dolinger, D.J.) ("The courts have consistently held that where a brokerage client has a self-directed account, the broker ordinary has

no legal responsibilities beyond the prompt and accurate carrying out of any transaction directed by the client.") (citing, *inter alia*, *Press v. Chem Inv. Servs. Corp.*, 166 F.3d 529, 536 (2d Cir. 1999)). None of the moving Defendants had discretionary authority over NRCM's accounts with ADMIS, and thus could not have been fiduciaries.[21]

### H.   Count X, Aiding and Abetting Fraud

Because Plaintiffs have failed to plead an underlying fraud (Count VII), Count X for aiding and abetting fraud also fails.

### I.   Count XI, Aiding and Abetting Breach of Fiduciary Duty

Kumaran and NRCM's newly-pled claim for aiding and abetting breach of fiduciary duty is premised on ADMIS's alleged breach of fiduciary duty, but suffers the same defects as the direct claim against the moving Defendants in Count IX: the claim is time-barred; Kumaran has no standing; and NRCM cannot plausibly allege that ADMIS owed it any fiduciary duties where ADMIS had no discretionary authority. Count XI should likewise be dismissed.

### J.   Count XII, Conspiracy

Count XII can readily be dismissed, as "New York does not recognize an independent tort of conspiracy." *See Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006); *see also Zirvi v. Flatley*, 433 F. Supp. 3d 448, 467 (S.D.N.Y.), *aff'd*, 838 F. App'x 582 (2d Cir. 2020) ("The plaintiffs cannot state a claim based on civil conspiracy because there is no independent tort of civil conspiracy under New York law."). As Plaintiffs fail to state a cause of action for any of the purported torts underlying the alleged conspiracy, they "necessarily fail[] to state an actionable claim for civil conspiracy." *Kirch*, 449 F.3d at 401.

---

[21]  Kumaran's claim suffers from the additional deficiency that the SAC does not allege that Kumaran had any relationship with the moving Defendants or ADMIS in her individual capacity.

### K.    Count XIII, Unfair Competition

Count XIII, styled as a claim for "Unfair Competition / Misappropriation of Confidential Information," should be dismissed as duplicative of the misappropriation of trade secrets claims in Counts III and IV. *See Turret Labs USA, Inc. v. CargoSprint, LLC*, No. 19CV6793EKRML, 2021 WL 535217, at *6 (E.D.N.Y. Feb. 12, 2021) (where unfair competition claim is "premised on the same allegations as the misappropriation claim…it must be dismissed as duplicative") (citing *Uni-Sys., LLC v. United States Tennis Ass'n, Inc.*, 350 F. Supp. 3d 143, 179 (E.D.N.Y. 2018) ("A claim for unfair competition based on the same allegations as a claim for misappropriation of trade secrets is treated as a single cause of action.")).

Even if the Court were to address Count XIII separately, the claim would have no legs. "The essence of an unfair competition claim under New York law is that the defendant misappropriated the fruit of plaintiff's labors and expenditures by obtaining access to plaintiff's business idea either though fraud or deception, or an abuse of a fiduciary or confidential relationship." *Bytemark, Inc. v. Xerox Corp.*, 342 F. Supp. 3d 496, 505 (S.D.N.Y. 2018) (Gardephe, D.J.). Plaintiffs cannot plausibly plead fraud or deception where High Ridge and Felag appropriately accessed NRCM's account information provided by ADMIS in order to provide risk-management services, consistent with ADMIS's Privacy Policy. And Plaintiffs fail to plead that Defendants owed non-discretionary account holder NRCM – much less Kumaran and the other entities – any fiduciary duties. *See* Count IX, above.

### L.    Count XIV, Unjust Enrichment

Count XIV, for unjust enrichment, also misses the mark. As an initial matter, Plaintiffs' allegations that the Defendants were enriched by STORM are wholly conclusory. Plaintiffs fail to plead sufficient factual information for this Court to infer that any Defendant even used STORM,

let alone profited from it. *See* Part VI.B, above. This deficiency in itself is fatal. Furthermore, "[w]hile 'a plaintiff need not be in privity with the defendant to state a claim for unjust enrichment,' there must exist a relationship or connection between the parties that is not 'too attenuated.'" *Graham v. Take-Two Interactive Software, Inc.*, 19 Civ. 2183 (GBD)(SDA), 2019 WL 8111915, at *2 (S.D.N.Y. Nov. 25, 2019) (Aaron, M.J.) (quoting *Sperry v. Crompton Corp.*, 8 N.Y.3d 204, 215 (2007)) (Report & Recommendation), *adopted*, 2020 WL 408408 (S.D.N.Y Jan. 24, 2020) (Daniels, D.J.). "[T]he relationship is too attenuated if the parties were not connected in a manner that 'could have caused reliance or inducement,' or if they 'simply had no dealings with each other.'" *Id.* (quoting *Marks v. Energy Materials Corp.*, 14 Civ. 8965 (GHW), 2015 WL 3616973 at *6 (S.D.N.Y. June 9, 2015) (Woods, D.J.)). Kumaran individually, NHC, and NAM had no relationship with any of the moving Defendants, and NRCM had no relationships with the Defendants other than LCI, and their claims accordingly fail. While NRCM had a introducing broker relationship with LCI, NRCM fails to plausibly plead that the trading losses and fee expenses it complains of enriched LCI in any way.

### M.    Count XV, Tortious Interference in Economic Advantage

Plaintiffs also fail to state a claim for tortious interference in economic advantage against any of the moving Defendants. "[A] plaintiff suing for . . . tortious interference must prove that '(1) there is a business relationship between the plaintiff and a third party; (2) the defendant, knowing of that relationship, intentionally interferes with it; (3) defendant acts with the sole purpose of harming plaintiff, or, failing that level of malice, uses dishonest, unfair or improper means, and (4) the relationship is injured.'" *Hadami S.A. v. Xerox Corp.*, 272 F. Supp. 3d 587, 602 (S.D.N.Y. 2017) (Engelmayer, D.J.).

Plaintiffs' tortious interference claim is a non-starter as they fail to plead the existence of

any business relationships beyond the most conclusory terms. Plaintiffs allege baldly that "Defendants knew that Plaintiffs had Business Relations with seed investors, partners, friends and family to invest in Nefertiti and were also prospecting and launching hedge funds in the CTA/CPO industry and had developed and were developing other relationships with industry professionals to launch NAM, NHC and the STORM Fund." (¶ 952.) These allegations "are deficient because the plaintiffs have not pleaded specific, non-generalized interference with particular and ongoing business relationships." *Zirvi v. Flatley*, 433 F. Supp. 3d 448, 466–67 (S.D.N.Y.), *aff'd*, 838 F. App'x 582 (2d Cir. 2020); *see also Bus. Networks of N.Y., Inc. v. Complete Network Sols. Inc.*, 265 A.D.2d 194, 696 N.Y.S.2d 433, 435 (1999) ("[T]he cause of action for tortious interference with prospective business relations should have been dismissed for failure to allege any specific prospective relationship with which defendants interfered[.]").

Not surprisingly, Plaintiffs also fail to allege that the Defendants directed any conduct toward any purported third parties to interfere with any purported relationship. "[C]onduct constituting tortious interference with business relations is by definition, ***conduct directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship***." *Hadami*, 272 F. Supp. 3d at 602 (emphasis added) (citing *Carvel Corp. v. Noonan*, 3 N.Y.3d 182 (2004)). Because Plaintiffs do not – and could not – plead that any Defendant directed any conduct at any counterparties or prospects, the tortious interference claim should be dismissed. *See id.*

### N.    Count XVI, Tortious Interference with Contract

Kumaran and NRCM likewise fail to state a claim for tortious interference with contract. Kumaran, of course, cannot assert a claim because she did not enter into any of the relevant contracts in her individual capacity. NRCM should be compelled to arbitrate its claims against Lazzara, LCI, Felag, Rothman, Boshnack, and High Ridge. That leaves only claims against High

Ridge Holding (and Julie Villa, whom the undersigned does not represent). Apart from group pleading, the SAC does not allege that High Ridge *Holding* engaged in any conduct to interfere with any of NRCM's contracts; the claims against it should be dismissed.

In addition to the foregoing deficiencies, this claim fails for the simple reason that the SAC fails to allege any underlying breach of contract. NRCM complains that High Ridge's risk management services caused ADMIS to close its accounts, but NRCM's Customer Agreement with ADMIS expressly provided that "5. If, at any time, Customer's account does not contain the amount of margin required by ADMIS…ADMIS may, in its sole and absolute discretion, at any time or from time to time, without notice to Customer, close out Customer's open positions in whole or in part *or take any other action it deems necessary to satisfy such requirements*…." *See* Ex. 2, Para. 5 (emphasis added). NRCM also complains that High Ridge's services interfered with ADMIS's Privacy Policy, but in fact, the Privacy Policy expressly provided that ADMIS had permission to ". . . ***share [NRCM's] personal information with affiliates and subsidiaries and/or unaffiliated third parties . . . to service [NRCM's] account . . . .***" *See* Ex. 1 ("Disclosure of Personal Information"). Indeed, to the extent that the agreements incorporate ADMIS's obligations under the relevant law, the arrangement is not only lawful under the CEA and the CFTC regulatory scheme, but it was known to the NFA and subject to NFA audit.

## O.   Count XVII, Breach of Implied Covenant of Good Faith and Fair Dealing

Count XVII, for breach of the implied covenant of good faith and fair dealing, can readily be dismissed as "there was no contract in existence, and subsequently no implied duty" between any of the Plaintiffs and any of the Defendants. *See Ohio Players, Inc. v. Polygram Records, Inc.*, 99 Civ. 33, 2000 WL 1616999, at *5 (S.D.N.Y. Oct. 7, 2000) (Duffy, D.J.) (dismissing claim). *See also* Counts XIX and XX; *JPMorgan Chase Bank, N.A. v. The IDW Grp.*, 2009 WL 321222

(S.D.N.Y. Feb. 9, 2009) (Gardephe, D.J.)  (implied covenant "does not create duties" between parties "which are not fairly inferable from the express terms of [a] contract") (citing *Interallianz Bank AG v. Nycal Corp.*, No. 93 Civ. 5024 (RPP), 1994 WL 177745, at *8 (S.D.N.Y. May 4, 1994) (Patterson, Jr., D.J.)); *Trahan v. Lazar*, 457 F. Supp. 3d 323, 359 (S.D.N.Y. 2020) (Woods, D.J.).

### P.      Count XVIII, Negligent Misrepresentation/Breach of Duty of Care

In Count XVIII, Plaintiffs allege negligent misrepresentation against Lazzara, LCI, High Ridge, High Ridge Holding, Boshnack, Rothman, and Felag. All of Defendants' arguments against Plaintiffs' common law fraud claims (Count VII) apply with equal force to, and are dispositive of, the negligent misrepresentation claims.[22] "To state a claim for negligent misrepresentation under New York law, a plaintiff must allege '(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information.'" *Flatiron Acquisition Vehicle, LLC v. CSE Morg. LLC*, 17 Civ. 8987-GHW, 2019 WL 1244294, at *16 (S.D.N.Y. Mar. 18, 2019) (Woods, D.J.) (quoting *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014)). Negligent misrepresentation is governed by Rule 9(b)'s heightened pleading standard. For the reasons explained in connection with the fraudulent omissions claims in Count VII above, Plaintiffs cannot show that they had a special relationship with any of the Defendants giving rise to a duty. Plaintiffs' claims also should be rejected for failure to plead that any information imparted was incorrect, or that they reasonably relied on any such information.

### Q.      Count XIX, Breach of Contract/Implied in Fact IB [Introducing Broker] Contract (against Lazzara and LCI)

---

[22] Defendants' Count VII arguments do not turn on scienter or intent to defraud because Plaintiffs have failed to establish the priors of standing, misrepresentation, and reasonable reliance.

In Count XIX, Kumaran and NRCM newly allege that Lazzara and LCI breached an "implied in fact contract" based on LCI's role as an introducing broker for ADMIS. Again, Kumaran has no standing as neither Lazzara or LCI served as an introducing broker for her individually. Any claims that NRCM wishes to assert are subject to mandatory NFA arbitration. In the unlikely event the Court has occasion to reach the merits of this claim, Plaintiffs would fail to state a claim as they cannot fashion a contractual private cause of action out of CEA and NFA rules. *See Gurfein v. Ameritrade, Inc.*, 312 F. App'x 410, 414 (2d Cir. 2009) (plaintiff is "precluded from creating a private cause of action for violations of [NYSE and NASD] rules and regulations by fashioning her claim as one for breach of contract"); *Hauptman v. Interactive Brokers, LLC*, No. 17 CIV. 9382 (GBD), 2018 WL 4278345, at *7 (S.D.N.Y. June 12, 2018) (same).

### R.    Count XX, Breach of Contract / G&F [Guarantee and Fee] Agreement and ORSA [Oral Risk Services Arrangement]

In Count XX, all Plaintiffs newly allege that they suffered from breach of "(a) G&F Agreement dated August 28, 2014 between ADMIS and HRF, Boshnack and Rothman; (b) an ORSA ('oral risk services arrangement') between Boshnack, Rothman, HRF, HRHC and Felag, which was implemented on or around November 1, 2014 and continued through the life of Plaintiffs business with ADMIS and LCI; and (c) the rules of NFA and the CEA were binding as a contract on Defendants market participation and dealings with Plaintiff." (¶ 1008.) Kumaran, NHC, and NAM have no standing, for the reasons discussed in Parts III and IV above. Indeed, it boggles the mind that NHC and NAM, represented by counsel, would assert that they were the intended beneficiaries of contracts allegedly executed years before either of them was even formed. Any claims that NRCM wishes to assert against High Ridge, Boshnack, Rothman, Felag, and VIA are subject to mandatory NFA arbitration, for the reasons discussed in Part I, above. That

leaves only NRCM's claims against High Ridge Holding, and apart from group pleading, the SAC does not allege that High Ridge *Holding* engaged in any breaches.

In addition to the foregoing deficiencies, Plaintiffs fail to plausibly plead that any of the Defendants named Count XX breached either of the agreements cited, or that any Plaintiff was the intended beneficiary thereof. *See, e.g., Zaretsky v. William Goldberg Diamond Corp.*, No. 14 CIV. 1113 SAS, 2014 WL 4160232, at *2 (S.D.N.Y. Aug. 18, 2014) ("[A] third-party is an intended beneficiary only if 'no one other than the third-party can recover if the promisor breaches the contract' or the contract language should otherwise clearly evidence 'an intent to permit enforcement by the third-party.'"). As discussed in connection with Count XIX, Plaintiffs also cannot fashion a contractual private cause of action out of alleged violations of CEA and NFA rules, *contra* ¶ 1008.

## S.    <u>Claims for Punitive Damages</u>

Plaintiffs' claims for punitive damages, tacked on to the end of each of their twenty Counts, also should be dismissed. Plaintiffs repeat the buzzwords of "moral turpitude" and "wanton disregard" but fail to plead facts to plausibly support such allegations. *See, e.g. Int'l Television Prods. Ltd. v. Twentieth Century-Fox Television Div. of Twentieth Century-Fox Film Corp.*, 622 F. Supp. 1532, 1541 (S.D.N.Y. 1985) (dismissing punitive damages claims where amended complaint "does not allege gross or wanton conduct or criminal indifference to civil obligations").

*                *                *

For the reasons stated in Parts II-VI herein, any portion of the SAC not subject to mandatory arbitration should be dismissed. In light of Plaintiffs' repeated – and growing – pleading failures despite the Court's express admonitions, dismissal should be ***with prejudice***. *See,e.g., Zirvi v. Flatley*, 433 F. Supp. 3d 448, 467 (S.D.N.Y.) (dismissing complaint with prejudice "[b]ecause

the plaintiffs have amended the Complaint twice before, and because further amendments would be futile"), *aff'd*, 838 F. App'x 582 (2d Cir. 2020).

## VII.  In the Alternative, Any Remaining Claims Should Be Stayed Pending Arbitration.

In the alternative, if the Court does not dismiss all remaining claims for the pleading failures set forth above, the moving Defendants respectfully ask that the claims be stayed pending arbitration. In the related ADMIS Lawsuit, the Court stayed Kumaran's individual claims pending arbitration, finding that the "'issues that the arbitration panel will decide ... overlap significantly (if not entirely) with the issues that this Court would need to reach to adjudicate' Kumaran's individual claims." *See* ADMIS Lawsuit, No. 20-cv-03873, 2021 WL 2333645, at *6. The same would be true of any of Kumaran's, as well as NHC and NAM's, surviving claims here.[23]

## CONCLUSION

For the reasons set forth herein, the moving Defendants respectfully request that this Court (i) compel NRCM and NAM to arbitrate their claims against fellow NFA members High Ridge, Rothman, Boshnack, Felag, Lazzara, LCI, and VIA, and (ii) dismiss with prejudice any remaining claims for failure to comply with Rule 8 and/or failure to state a claim under Rule 12(b)(6), or in the alternative to stay the remaining claims pending arbitration.

Dated September 17, 2021                       Respectfully Submitted,

                                              WIGGIN AND DANA LLP

                                               _/s/ Jenny R. Chou_
                                              Jenny R. Chou

---

[23] The Court's decision to stay, rather than dismiss, Kumaran's claims against ADMIS does not preclude dismissal here, as the Court was not presented with a motion to dismiss in the ADMIS Lawsuit. *See Kumaran v. ADM Investor Services, Inc.*, 2021 WL 2333645, at *5 n.9 ("While it is not clear that Kumaran, individually, has stated a claim against ADMIS, the Court presently does not have before it a motion by ADMIS to dismiss under Federal Rule of Civil Procedure 12(b)(6)….Thus, the Court does not consider at this time whether any plausible claims have been pled by Kumaran, individually.").

One Century Tower
P.O. Box 1832
New Haven, CT 06508-1832
Phone: (203) 498-4302
Fax:  (203) 782-2889
E-mail: jchou@wiggin.com

*Attorneys for Vision Financial Markets LLC; Vision Investment Advisors LLC; Vision Brokerage Services LLC; H. Rothman Family, LLC; Boshnack Family, LLC; High Ridge Holding Company, LLC; High Ridge Futures, LLC; Lazzara Consulting Inc.; Howard Rothman; Robert Boshnack; John Felag; Gerard Stephen Lazzara; Lazzara Consulting Inc.*