# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| SAMANTHA SIVA KUMARAN, | ) | |
| NEFERTITI RISK CAPITAL MANAGEMENT, LLC, | ) | Case No. 1:20-cv-03871- |
| NEFERTITI ASSET MANAGEMENT, LLC, | ) | GHW-SDA |
| NEFERTITI HOLDING CORPORATION | ) | |
| | ) | |
| Plaintiffs, | ) | Related Case: 1:20:CV |
| | ) | 03668 |
| vs. | ) | Related Case: 1:20:CV |
| | ) | 03873 |
| VISION FINANCIAL MARKETS, LLC, | ) | |
| HOWARD ROTHMAN, | ) | |
| ROBERT BOSHNACK, | ) | January 14, 2022 |
| HIGH RIDGE HOLDING CORPORATION, LLC, | ) | |
| HIGH RIDGE FUTURES, LLC, | ) | |
| H ROTHMAN FAMILY, LLC, | ) | |
| BOSHNACK FAMILY, LLC, | ) | |
| VISION BROKERAGE SERVICES, LLC, | ) | |
| JOHN FELAG, | ) | |
| VISION INVESTMENT ADVISORS, LLC, | ) | |
| LAZZARA CONSULTING, INC., | ) | |
| GERARD STEPHEN LAZZARA, | ) | |
| JULIE VILLA | ) | |
| Defendants. | ) | |
| | ) | |

# REPLY IN FURTHER SUPPORT OF
# DEFENDANTS' MOTION TO COMPEL ARBITRATION IN PART, AND TO DISMISS
# OR IN THE ALTERNATIVE TO STAY PENDING ARBITRATION

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iii

ARGUMENTS .................................................................................................................... 1

I.   NRCM and NAM Must Arbitrate Their Claims Against High Ridge, Rothman,
     Boshnack, Felag, LCI, Lazzara, and VIA ......................................................... 1

II.  All Remaining Claims Should be Dismissed for Failure to Comply with Rule 8. ............. 5

III. Kumaran Lacks Standing to Assert Derivative Claims. .................................................. 5

IV.  NHC and NAM Fail to State a Claim as to Alleged Events Before Their Formation. ........ 6

V.   Plaintiffs Fail to Pierce High Ridge or VIA's Corporate Veil. ......................................... 6

VI.  Plaintiffs' Claims Fail for Additional Reasons. ............................................................. 6

     A. Counts I & II, Civil RICO and Civil RICO Conspiracy ................................................. 6

     B. Counts III & IV, Misappropriation of Trade Secrets under the Defend Trade Secrets
        Act and New York Law ............................................................................................. 7

     C. Count V, Conversion ................................................................................................ 8

     D. Count VI, Aiding and Abetting Conversion and Misappropriation ................................ 8

     E. Count VII, Common Law Fraud ................................................................................ 9

     F. Count VIII, Fraudulent Inducement of Contract ...................................................... 10

     G. Count IX, Breach of Fiduciary Duty ........................................................................ 10

     H. Count X, Aiding and Abetting Fraud ........................................................................ 10

     I.  Count XI, Aiding and Abetting Breach of Fiduciary Duty ........................................... 11

     J.  Count XII, Conspiracy ............................................................................................ 11

     K. Count XIII, Unfair Competition ............................................................................... 12

     L. Count XIV, Unjust Enrichment ................................................................................ 12

     M. Count XV, Tortious Interference in Economic Advantage .......................................... 13

     N. Count XVI, Tortious Interference with Contract ....................................................... 13

     O. Count XVII, Breach of Implied Covenant of Good Faith and Fair Dealing .................. 14

i

P.  Count XVIII, Negligent Misrepresentation/Breach of Duty of Care ............................. 14

Q.  Count XIX, Breach of Contract/Implied in Fact IB [Introducing Broker] Contract (against Lazzara and LCI) ............................................................................................... 15

R.  Count XX, Breach of Contract / G&F [Guarantee and Fee] Agreement and ORSA [Oral Risk Services Arrangement] .................................................................................... 15

S.  Claims for Punitive Damages ......................................................................................... 16

T.  Dismissal with Prejudice ................................................................................................ 16

VII.  In the Alternative, Any Remaining Claims Should Be Stayed Pending Arbitration. ........ 17

CONCLUSION ........................................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abacus Fed. Sav. Bank v. Lim*,
  75 A.D.3d 472 (2010) ..................................................................................................11

*Christensen v. Nauman*,
  73 F. Supp. 3d 405 (S.D.N.Y. 2014).............................................................................3

*Coffer v. Serv. Asset Mgmt. Co.*,
  No. 02 CIV 9934 (DC), 2003 WL 22493425 (S.D.N.Y. Nov. 4, 2003)..................................4

*Dardashtian v. Gitman*,
  No. 17 CIV. 4327 (LLS), 2017 WL 6398718 (S.D.N.Y. Nov. 28, 2017) ................................8

*DBA Distribution Servs., Inc. v. MSL Prods., LLC*,
  No. 08CV6574 (GBD), 2010 WL 11591632 (S.D.N.Y. Sept. 3, 2010) ................................12

*Gallier v. Woodbury Fin. Servs., Inc.*,
  No. CIV.A. H-14-888, 2015 WL 1296351 (S.D. Tex. Mar. 23, 2015) ................................15

*Graham v. Take-Two Interactive Software, Inc.*,
  19 Civ. 2183, 2019 WL 8111915 (S.D.N.Y. Nov. 25, 2019) ...............................................12

*Gravier Prods., Inc. v. Amazon Content Servs., LLC*,
  No. 19CV1169(DLC), 2019 WL 3456633 (S.D.N.Y. July 31, 2019) ....................................12

*J.E. Hoetger & Co. v. Asencio*,
  558 F. Supp. 1361 (E.D. Mich. 1983)...........................................................................15

*Kolbeck v. LIT Am., Inc.*,
  923 F.Supp. 557 (S.D.N.Y.1996) ................................................................................9

*Kraus USA, Inc. v. Magarik*,
  No. 17-CV-6541 (ER), 2020 WL 2415670 (S.D.N.Y. May 12, 2020)....................................8

*Kumaran v. ADM Investor Services, Inc.*,
  No. 20-cv-03873, 2021 WL 2333645 (S.D.N.Y. June 7, 2021) ............................................3

*Litras v. Litras*,
  254 A.D.2d 395 (1998) ................................................................................................12

*Maor v. Blu Sand Int'l Inc.*,
  143 A.D.3d 579, 38 N.Y.S.3d 907 (2016) ...........................................................................13

*Metro. Life Ins. Co. v. Bucsek*,
   919 F.3d 184 (2d Cir. 2019)..................................................................3

*Milliner v. Mut. Sec., Inc.*,
   207 F. Supp. 3d 1060 (N.D. Cal. 2016) .................................................15

*N. Donald & Co. v. Am. United Energy Corp.*,
   585 F. Supp. 533 (D. Colo.), *aff'd*, 746 F.2d 666 (10th Cir. 1984) ...........................4

*Paulay v. John T Mather Mem'l Hosp.*,
   No. 14CV5613SJFAYS, 2016 WL 1445384 (E.D.N.Y. Mar. 14, 2016), *report
   and recommendation adopted*, 2016 WL 1449648 (E.D.N.Y. Apr. 12, 2016).........................8

*R.J. O'Brien & Assocs., Inc. v. Pipkin*,
   64 F.3d 257 (7th Cir. 1995) ...................................................................2

*Salahuddin v. Cuomo*,
   861 F.2d 40 (2d Cir. 1988)......................................................................5

*Sherman v. Sokoloff*,
   570 F. Supp. 1266 (S.D.N.Y. 1983)........................................................11

*Thyroff v. Nationwide Mut. Ins. Co.*,
   8 N.Y.3d 283, 864 N.E.2d 1272 (2007)...................................................8

*Trahan v. Lazar*,
   457 F. Supp. 3d 323 (S.D.N.Y. 2020).....................................................7

*Zaretsky v. William Goldberg Diamond Corp.*,
   No. 14 CIV. 1113 SAS, 2014 WL 4160232 (S.D.N.Y. Aug. 18, 2014)..................................15

*Zirvi v. Flatley*,
   433 F. Supp. 3d 448 (S.D.N.Y.), *aff'd*, 838 F. App'x 582 (2d Cir. 2020)...............................13

**Rules**

Fed R. Civ. P. 8..........................................................................................5

Fed R. Civ. P. 9(b) ....................................................................................9

Fed R. Civ. P. 12(b)(6)............................................................................17

iv

**Other Authorities**

5 C. Wright & A. Miller, Federal Practice and Procedure § 1281 ....................................................5

National Futures Association Bylaws, Rule 301(f) ........................................................................2

National Futures Association, Member Arbitration Rules, Rule 2....................................................2

National Futures Association, Member Arbitration Rules, Rule 3....................................................3

National Futures Association, Member Arbitration Rules, Rule 4....................................................2

National Futures Association, "Opportunity AND Risk: An Educational Guide to
    Trading Futures and Options on Futures," *available at*
    https://www.nfa.futures.org/ investors/investor-resources/files/opportunity
    and-risk-entire.pdf....................................................................................................................16

Over the past several years, Plaintiffs have spun two small, short-lived and poorly performing futures trading accounts into a confused tangle of pleadings across three separate lawsuits. Over and again, Plaintiffs have violated pleading rules and imposed undue burden on other parties and the Court as they strive to expand and extend their non-meritorious claims, avoiding the day of reckoning. Enough is enough. The Court should compel the NFA member plaintiffs to arbitrate whatever claims they have against the NFA member defendants, and dismiss all remaining claims for any one of several deficiencies.

## ARGUMENTS

## I.    NRCM and NAM Must Arbitrate Their Claims Against High Ridge, Rothman, Boshnack, Felag, LCI, Lazzara, and VIA

NRCM and NAM's efforts to avoid arbitration fall wide of the mark. To begin, NRCM and NAM falsely state that the moving Defendants failed to submit any facts or documents to counter their "unopposed" pleadings. *See* ECF No. 114, at 3-4.[1] To the contrary, the moving Defendants submitted, *inter alia*, the arbitration claim that NRCM filed with the NFA in June 2018, which contained NRCM's own statements that each of the relevant parties were NFA members, and demonstrated NRCM's clear intent to pursue arbitration of the claims it now seeks to litigate. *See* ECF No. 102, Ex. 4. The moving Defendants did not need to submit additional documents to establish NAM's NFA membership, as it was pled in the SAC (¶ 57).[2]

---

[1] Unless otherwise indicated, page numbers refer to each document's internal page numbers.

[2] NRCM and NAM's complaints that Vision's motion "leav[es] a higgledy-piggledy mess of which parties or claims" are subject to dismissal or arbitration (at ECF No. 114, at 6-7) should be rejected out of hand. The moving Defendants and the Court have gone to extraordinary lengths in this case to try to make sense of both the pro se *and* counseled Plaintiffs' excessive and garbled pleadings. Moreover, the Court has already rejected NRCM and NAM's false claim (at ECF No. 114, at 7) that the moving Defendants have improperly moved to compel arbitration and moved to dismiss "on identical claims." *See* ECF No. 109 (denying Plaintiffs' motion to stay as "the partial motion to compel arbitration and the motions to dismiss do not address the same claims…and, thus, Plaintiffs' arguments regarding jurisdiction are inapt").

NRCM and NAM's argument (at ECF No. 114, at 4-5) that they did not sign any arbitration agreements with the moving Defendants is a red herring, as the moving Defendants do not rely on direct agreements with NRCM and NAM as a basis for arbitration. NRCM and NAM's memberships in NFA themselves constitute agreements to arbitrate. *See*, NFA Bylaws, Rule 301(f); NFA Member Arbitration Rules, Section 2(a); *R.J. O'Brien & Assocs., Inc. v. Pipkin*, 64 F.3d 257, 260-63 (7th Cir. 1995).

NAM's argument (at ECF No. 114, at 5-6) that it was formed too late to submit claims to NFA arbitration and that its claims would be time-barred does not excuse the requirement to arbitrate. The language in NFA Member Arbitration Rule 4 that "No Arbitration Claim may be arbitrated under these Rules unless" the claim is received by NFA within two years from when the party "knew or should have known of the act or transaction that is the subject of the controversy" cannot possibly be read as NAM suggests – that a member can simply wait out the two year period to bring suit outside of arbitration. To the contrary, Rule 2 requires members to submit any disputes to arbitration, and Rule 4 provides the timeframe for them to do so.[3]

NRCM next argues that it is not bound to arbitrate because the material events occurred prior to its membership in NFA, and it should not bound to continue any arbitration that it "started as a 'customer'." *See* ECF No. 114, at 8. NRCM conveniently ignores the fact that it expressly filed its Arbitration Claim *as a member*. *See* ECF No. 102, Ex. 4, at ECF page 6 of 23 (complaint titled "NFA MEMBER TO MEMBER ARBITRATION NFA COMPLAINT"). In NRCM's own

---

[3] Likewise, NRCM's argument (at ECF No. 114, at 11-12) that it did not initiate arbitration against VIA and that it is too late to do so now does not give NRCM license to bring suit in court. NRCM states that its "unopposed declaration…states that NRCM only learned of VIA on or around October 12, 2018." In fact, NRCM asserted allegations regarding VIA in a 200-page "Appendix 1 Statement of Facts" filed in the NFA Arbitration on *June 15, 2018*, *see* ADMIS Lawsuit ECF Nos. 57-10 (date of filing) and 57-17 ¶ 817 (allegations regarding VIA). NRCM then continued with the arbitration for well over a year before seeking to stay it in November 2019.

words at the time of filing: "NRCM is required to resolve member to member disputes in accordance with NFA Member rules and requirements." *Id.* at ECF page 7 of 23. NRCM's filing as a member against others who were members distinguishes this case from *Metro. Life Ins. Co. v. Bucsek*, 919 F.3d 184 (2d Cir. 2019). The other case cited by NRCM, *Christensen v. Nauman*, 73 F. Supp. 3d 405, 411 at n. 4 (S.D.N.Y. 2014) actually *rebuts* NRCM's argument that its subsequent departure from NFA membership affects the arbitrability of the claims.

The remainder of NRCM and NAM's opposition brief argues, at length, that the NFA forum is conflicted and that NRCM was "fraudulently induced" to agree to arbitrate. NRCM made the same arguments in opposition to ADMIS's motion to compel arbitration, *see* ADMIS Lawsuit, ECF No. 38, at 19-81; they were not persuasive. As this Court held: NRCM "participate[d] in arbitration for at least a year and a half without challenging the jurisdiction of the arbitrator," and therefore "waived its right to challenge the arbitration agreement or the authority of the arbitrator." *Kumaran v. ADM Investor Services, Inc.*, No. 20-cv-03873, 2021 WL 2333645, at *4 (S.D.N.Y. June 7, 2021).

NRCM and NAM misunderstand and misrepresent the conflict of interest rules in any event. NFA Member Arbitration Rule 3(b) provides that "Prior to being appointed to the Panel, each arbitrator under consideration shall disclose to NFA any circumstances that might prevent **the arbitrator** from acting impartially." *See also* NFA Member Arbitration Rule 3(c) ("**Each arbitrator** appointed shall disclose to NFA any circumstances likely to affect impartiality, including any bias or any financial interest in the result of the arbitration or any past or present relationship with the parties or their representatives."). Rule 3(c) similarly provides that "Each party or their representative shall disclose to NFA any circumstances likely to affect **an arbitrator's** impartiality, including any bias or financial interest in the result of the arbitration or

any past or present relationship with the arbitrator." *Id.* (all emphases added). NRCM broadly impugns the NFA, but does not and cannot allege any reason why any individual arbitrator cannot act impartially, or why the Respondents in the Arbitration would have had any reason to believe that an individual arbitrator might not act impartially. It cannot be the case that NFA panel arbitrators are automatically conflicted whenever a NFA member raises a defense that a challenged action was permitted by the NFA. That exception would swallow the rule of arbitration.

Similarly, the fact that Plaintiffs have brought a separate action against the NFA under 7 U.S.C. § 25(b) does not excuse NRCM and NAM from the requirement to arbitrate their (non-§ 25(b)) claims against the NFA member defendants in *this* action. *Contra* ECF No. 114, at 19-21.

NRCM and NAM argue that this Court, and not the arbitrators, should adjudicate their fraudulent inducement arguments. *See* ECF No. 114, at 21-25. But even if the Court were to entertain the arguments, they would fail. As noted above, NRCM and NAM agreed to member arbitration when they became NFA members. There is no allegation that any of the moving Defendants induced NRCM or NAM to apply for NFA membership. And there is no allegation that the NFA's membership arbitration rules were somehow hidden from NRCM or NAM. Courts have rejected claims of fraudulent inducement of arbitration under similar circumstances. *Coffer v. Serv. Asset Mgmt. Co.*, No. 02 CIV. 9934 (DC), 2003 WL 22493425, at *3 (S.D.N.Y. Nov. 4, 2003) ("plaintiffs cannot argue that they were 'induced' to agree to arbitration" where NASD requires employers and employees to agree to arbitration, and "that is the industry standard"); *N. Donald & Co. v. Am. United Energy Corp.*, 585 F. Supp. 533, 535 (D. Colo.) (plaintiff failed to show he was unaware of obligation to arbitrate disputes with other NASD members which was "succinctly stated in NASD's Code of Arbitration," or that he was "fraudulently induced to join NASD"), *aff'd*, 746 F.2d 666 (10th Cir. 1984).

Finally, High Ridge, Rothman, Boshnack, Felag, LCI, and Lazzara's request to the NFA Arbitration Panel that the NFA arbitration be "permanently stayed" does not preclude these Defendants from moving to compel arbitration. *Contra* ECF No. 114, at 17. These Defendants have consistently maintained that NRCM should be compelled to arbitrate pursuant to NFA Rules and the NFA Arbitration Panel's orders. The NFA Arbitration Panel initially granted only a one-year stay and ordered that the stay "shall become permanent if not lifted by November 13, 2020." When NRCM failed to have the stay lifted by that date, the Defendants asked the Panel to confirm that the stay would be permanent but did not thereby concede that NRCM could assert its claims outside of arbitration.

## II.     All Remaining Claims Should be Dismissed for Failure to Comply with Rule 8.

Any and all of Plaintiffs' remaining claims should be dismissed for failure to comply with Rule 8. In her opposition brief focusing on motion to dismiss issues, Kumaran does not even attempt to justify having filed a 201-page, 1015-paragraph long Second Amended Complaint. Indeed, the sprawling 98-page opposition brief, joined by NRCM, NAM, and NHC,[4] only underscores the "unjustified burden" Kumaran and the entities she controls have placed on the Court and responding parties. *See Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1281). Dismissal and sanctions are fully appropriate under the circumstances presented in this case. *See* ECF No. 102, at 14-17.

## III.    Kumaran Lacks Standing to Assert Derivative Claims.

Plaintiffs' remaining claims also should be dismissed for failure to state a claim. To begin, Kumaran does not attempt to justify her pleading several claims "derivatively" on behalf of

---

[4] *See* ECF No. 114, at 40 (NRCM and NAM joining if motion to compel arbitration denied); ECF No. 115, at 98 (NHC joining).

NRCM. The Court previously held that she cannot do so. *See* ECF No. 13. Counts VIII, IX, XI, XVI, XVIII, XIX should be dismissed to the extent Kumaran purports to assert them derivatively.

## IV.     NHC and NAM Fail to State a Claim as to Alleged Events Before Their Formation.

All of NHC's claims and all of NAM's claims not subject to arbitration should be dismissed for failure to state a claim, as these entities did not even exist at the time of the complained-of events. Kumaran's brief alludes to "pre-incorporation standing" but cites no cases to support it. The brief cites cases regarding the subsequent *assignment* of claims, but the fact that Kumaran and NRCM continue to pursue the claims themselves belie any valid assignment. Surely the law of assignment does not give claimants the right to print out unlimited passes to sue.[5]

## V.      Plaintiffs Fail to Pierce High Ridge or VIA's Corporate Veil.

All claims against VFM, VBS, High Ridge Holding, and the Family LLCs, and all claims against Rothman and Boshnack not subject to arbitration should be dismissed, as the SAC fails to allege any discernible direct claims against them, and fails to meet the high hurdle of piercing High Ridge or VIA's corporate veil under Delaware or New York law. *See* ECF No. 102, at 20-21.

## VI.     Plaintiffs' Claims Fail for Additional Reasons.

All remaining counts should be dismissed for the additional reasons set forth below.

### A.      Counts I & II, Civil RICO and Civil RICO Conspiracy

Plaintiffs' RICO claims must be dismissed because Plaintiffs cannot meet the very first requirement, to *plausibly* allege a violation of the RICO statute. As set forth in Defendants' opening brief, allegations of mail and wire fraud like those Plaintiffs rely on are insufficient to

---

[5] Beginning with Standing, Kumaran's brief purports to "incorporate by reference" eleven "core issues" "from NHC, NRCM and NAM's opposition to the MTD" (*see* ECF No. 115, at 1), but the entities have filed no such brief, and the Court has ruled that "no further briefing shall be considered" (*see* ECF No. 123).

constitute a "pattern" of activity under RICO. *See* ECF No. 102, at 21-23. Kumaran argues in opposition that Plaintiffs' allegations are sufficient because for each call or email Plaintiffs included a statement of "How it furthers the fraud." *See* ECF No. 115, at 87-88. But all Plaintiffs who wish to bring RICO claims based on calls and emails could say the same, and that is precisely what courts have cautioned against. It cannot be that every broken business relationship gives rise to a RICO claim. Kumaran also argues that the alleged scheme affected CTAs other than NRCM. While Defendants do not dispute that High Ridge performed risk management services on accounts other than NRCM's at ADMIS, Plaintiffs have no plausible basis for alleging that Defendants engaged in any RICO predicate act with respect to any of them.

Because a RICO conspiracy claim under § 1962(d) may stand only where a predicate violation of § 1962(c) has been pled, both Counts I and II should be dismissed.[6]

### B.    Counts III & IV, Misappropriation of Trade Secrets under the Defend Trade Secrets Act and New York Law

Kumaran's opposition doubles down on the SAC's vague and unsupportable description of her alleged trade secrets. She does not dispute that "STORM" is not really an "algorithm" or a "program," but rather just her self-described trading strategy. By contrast, the case Kumaran relies upon, *Trahan v. Lazar*, 457 F. Supp. 3d 323 (S.D.N.Y. 2020), involved 38 "models that rank stocks" and "essential code files which are required to use the intellectual property." *Id.* at 343, 339. As there is no real trade secret, there can be no claim of improper acquisition or misappropriation. To the extent the SAC pleads that certain defendants such as Felag and High

---

[6] Kumaran notes that the moving Defendants did not address every element of the RICO claim. To the extent that the Defendants did not respond to every aspect of every claim in the SAC (or do not respond to every minutiae of every argument in the opposition briefs now), that is a function of responding within reasonable page and time limits to what are, frankly, unreasonable pleadings and briefs by the Plaintiffs, and the fact that there are other sufficient grounds for dismissal, not because Defendants agree that Plaintiffs can satisfy any of the elements of their claims.

Ridge *accessed* NRCM's accounts as needed to perform risk management functions, that access was not *improper*. *See* ECF No. 102, at 25.

### C.     Count V, Conversion

Plaintiffs' claim for conversion is subject to a three-year statute of limitations. *See* CPLR §214(3). Even if some of the conversion claims were held to relate back to the initial complaint in this case, newly-added plaintiffs NHC and NAM's claims certainly would not. "Importantly, a new plaintiff's claim will not be allowed to relate back to the date of the filing of the original complaint where the new claim 'would increase the measure of liability to which the defendants are exposed.'" *Paulay v. John T Mather Mem'l Hosp.*, No. 14CV5613SJFAYS, 2016 WL 1445384, at *4 (E.D.N.Y. Mar. 14, 2016), *report and recommendation adopted*, 2016 WL 1449648 (E.D.N.Y. Apr. 12, 2016). The SAC makes clear that NHC and NAM were not formed until after the operative events in the complaint. Allowing their claims to "relate back" would unfairly extend the claims initially asserted.

To the extent that any conversion claims are not stricken as untimely, they fail because Plaintiffs cannot plausibly allege that they have a property interest in the trading records themselves.[7]

### D.     Count VI, Aiding and Abetting Conversion and Misappropriation

Plaintiffs attempt to bolster Count VI with an argument that it can be based on *ADMIS's* alleged conversion or misappropriation. That argument fails as it was not alleged in the SAC.

---

[7] None of Plaintiffs' cited cases support a property interest in trading records. *See Kraus USA, Inc. v. Magarik,* No. 17-CV-6541 (ER), 2020 WL 2415670, at *11 (S.D.N.Y. May 12, 2020) ("technical product specifications" and the like); *Dardashtian v. Gitman,* No. 17 CIV. 4327 (LLS), 2017 WL 6398718, at *7 (S.D.N.Y. Nov. 28, 2017) (change of passwords and email addresses to access personal financial data); *Thyroff v. Nationwide Mut. Ins. Co.*, 8 N.Y.3d 283, 285, 864 N.E.2d 1272 (2007) (customer and personal information).

E.      **Count VII, Common Law Fraud**

Kumaran's brief does not deny that the SAC contains no allegations of misrepresentations by Felag, Rothman, Boshnack, High Ridge, High Ridge Holding, VIA or VFM. Count VII should be dismissed as to these Defendants (to the extent they are not subject to arbitration) for this reason alone. Kumaran now argues that these defendants should be held liable for alleged misrepresentations made by Lazzara and LCI as their agent, *see* ECF No. 115, at 11-14, but the SAC never alleges and certainly does not plead facts to show that Lazzara and LCI were acting as their agents. Kumaran points to paragraphs in the SAC that allege that Lazzara and LCI made misrepresentations "with the knowledge, participation and direction from ADMIS and Vision Enterprise," but such allegations fall far short of the particularity required for allegations of fraud. *See Kolbeck v. LIT Am., Inc.*, 923 F.Supp. 557, 569 (S.D.N.Y.1996) (to the extent fraud claims were based on agency, "plaintiffs' claims of agency also must comply with Rule 9(b)").

Kumaran recites various alleged misrepresentations by Lazzara and LCI, but upon closer examination, they boil down to her mistaken belief that the moving Defendants had an affirmative obligation to specifically identify High Ridge's involvement. They did not. As detailed in the opening brief, none of the rules, regulations and statutes cited by Plaintiffs establish such a duty, and the Defendants did not have trading authority over NRCM's accounts so as to give rise to a fiduciary duty. *See* ECF No. 102, at 29-30. Kumaran argues that one or more Defendants had discretion to set margin requirements, *see* ECF No. 115, at 17-18, but does not explain how this largely ministerial function would have given rise to an independent duty to speak.[8] In any event, Plaintiffs' claims of materiality and reasonable reliance are simply not plausible where the ADMIS

---

[8] Plaintiffs' complaint that counsel for the moving Defendants misquoted the phrase "division within ADMIS" as "division of ADMIS" is not well-founded given that the SAC itself uses both terms interchangeably. *See* ¶¶ 438, 455, 677.

Privacy Policy that Plaintiffs themselves rely upon expressly provides that ADMIS is permitted to share account information with third parties.

###### F.    Count VIII, Fraudulent Inducement of Contract

Any claims in Count VIII not subject to arbitration should be dismissed because the SAC fails to plausibly allege that any of the Defendants made misrepresentations or omissions acting on behalf of the contractual party, ADMIS. While the SAC alleges, and the moving Defendants do not dispute, that High Ridge agreed to perform risk-management services for certain accounts at ADMIS, that does not signify that High Ridge or its affiliates agreed to act for ADMIS *generally* or that they did anything to induce a plaintiff to sign any agreement with ADMIS.

###### G.    Count IX, Breach of Fiduciary Duty

Kumaran and NRCM employ a circular logic to try to maintain their late-filed breach of fiduciary duty claim. For Count VII they argue that Defendants are liable for fraud even though they did not speak because they were fiduciaries. In Count IX they claim they can maintain a breach of fiduciary claim under a six-year statute of limitations because "it sounds in fraud." *See* ECF No. 115, at 40. In fact, neither is true. Plaintiffs fail to plead that the Defendants had a fiduciary duty because there is no allegation that Defendants had discretionary trading authority over NRCM's accounts. Plaintiffs cite cases about the creation of fiduciary relationships generally, but none of them support a finding that the limited activities Defendants allegedly engaged in here would create fiduciary duties. The breach of fiduciary duty claim thus cannot sound in fraud, because Defendants were not obligated to make any specific disclosures.

###### H.    Count X, Aiding and Abetting Fraud

In their opposition, Kumaran argues that even if Plaintiffs fail to state a fraud claim against the moving Defendants, they can still plead that the Defendants are liable for aiding and abetting

*ADMIS's* fraud. *See* ECF No. 115, at 28. The fact that ADMIS' Privacy Policy expressly provides that ADMIS is permitted to share account information with third parties, however, equally dooms Plaintiff's ability to establish reasonable reliance against ADMIS, and any aiding and abetting claim against the Defendants here.

### I.      Count XI, Aiding and Abetting Breach of Fiduciary Duty

Kumaran similarly argues that the moving Defendants can be held liable for aiding and abetting ADMIS's fiduciary duty, because ADMIS had fiduciary duties as an FCM. *See* ECF No. 115, at 44. The case Kumaran primarily relies upon, however, does not support her position. *Sherman v. Sokoloff*, 570 F. Supp. 1266, 1269 n. 10 (S.D.N.Y. 1983) acknowledged that an FCM can owe a client a fiduciary duty, but stressed that "That conclusion, however, does not end the inquiry…The question is, 'What is the scope of the agency?'" The *Sherman* court went on to elaborate: "We would have no hesitation to conclude that the FCM owes his client a fiduciary duty in the performance of the activities described in 17 C.F.R. § 1.3(p)… taking orders, executing trades, dealing with customer funds… However, the status of FCM and the attendant fiduciary duties ***do not—in and of themselves—support the imposition of the broad duty of supervision and reporting which plaintiffs seek to impose***…" *Id.* (emphasis added). Similarly, here, even assuming *arguendo* that Plaintiffs could establish that ADMIS had certain fiduciary duties, Plaintiffs have not pled that ADMIS had or breached any broad duty of disclosure to the Plaintiffs.

### J.      Count XII, Conspiracy

Plaintiffs cannot maintain a separate cause of action for civil conspiracy under New York law. Kumaran tries to argue out of this, *see* ECF No. 115, at 61, but even the cases she cites in opposition are clear: "New York does not recognize an independent cause of action for conspiracy to commit a civil tort." *Abacus Fed. Sav. Bank v. Lim*, 75 A.D.3d 472, 474 (2010). Although

conspiracy can be alleged in connection with another claim, "an independent cause of action for civil conspiracy is not recognized in this State." *Litras v. Litras*, 254 A.D.2d 395, 396 (1998).

### K.   Count XIII, Unfair Competition

Plaintiffs argue in the abstract that unfair competition claims can differ from trade secrets claims, *see* ECF No. 115, at 58, but they do not explain how ***their*** unfair competition claim differs from ***their*** trade secrets claims. Because the claims are entirely duplicative here, the Court can dismiss Count XIII from the get go.[9]

### L.   Count XIV, Unjust Enrichment

As set forth in the moving Defendants' opening brief, Plaintiffs cannot state a claim for unjust enrichment against High Ridge or its affiliates because Plaintiffs' relationship with these defendants was "too attenuated." *See* ECF No. 102, at 34, *citing Graham v. Take-Two Interactive Software, Inc.*, 19 Civ. 2183, 2019 WL 8111915, at *2 (S.D.N.Y. Nov. 25, 2019). In her opposition, Kumaran pivots to base the unjust enrichment claim on allegations that Defendants were agents of ADMIS and "in contractual privity with Plaintiffs under the ADMIS Customer Agreement." *See* ECF No. 115, at 82. But this, too, misses the mark for an unjust enrichment claim. The law is clear that "the existence of a written contract precludes quasi-contractual recovery against a third party for events arising out of the same subject matter." *DBA Distribution Servs., Inc. v. MSL Prods., LLC*, No. 08CV6574 (GBD), 2010 WL 11591632, at *9 (S.D.N.Y. Sept. 3, 2010). *See also Gravier Prods., Inc. v. Amazon Content Servs., LLC*, No. 19CV1169(DLC), 2019 WL 3456633, at *5 (S.D.N.Y. July 31, 2019) ("[T]he existence of an express contract governing the subject matter of

---

[9] To be clear, while the moving Defendants believe the Court can and should dispose of Plaintiffs' unfair competition claims on any one of several grounds without needing to reach the question of whether Plaintiffs and Defendants are competitors, the Defendants do *not* agree that Plaintiffs have plausibly alleged that they are competitors. VIA did not register with the NFA as a CTA until 2018, nearly a year after NRCM's accounts had closed. (¶¶ 83-84.)

[a claim] also bars any quasi-contractual claims against a third-party nonsignatory to the valid and enforceable contract."); *Maor v. Blu Sand Int'l Inc.*, 143 A.D.3d 579, 579, 38 N.Y.S.3d 907, 908 (2016) ("[T]he unjust enrichment claim cannot be maintained, since there can be no quasi-contract claim against a third-party nonsignatory to a contract that covers the subject matter of the claim.").

As to LCI and Lazzara, Kumaran repeats her conclusory assertions that they benefitted from "free lines of credit" but fails to allege that ***NRCM's*** trading losses and fee expenses (much less any other plaintiffs') enriched LCI in any way. The unjust enrichment claim fails on all fronts.

## M.   Count XV, Tortious Interference in Economic Advantage

Kumaran's efforts to justify Plaintiffs' claim for tortious interference in economic advantage also fall short. Plaintiffs' vague references to "seed investors" and "business partners" are deficient not only because they are not named, *contra* ECF No. 115, at 70, but "because the plaintiffs have not pleaded ***specific, non-generalized*** interference with ***particular and ongoing*** business relationships," *Zirvi v. Flatley*, 433 F. Supp. 3d 448, 466–67 (S.D.N.Y.) (emphasis added), *aff'd*, 838 F. App'x 582 (2d Cir. 2020).

Kumaran also argues that Count XV can be based on Defendants' alleged interference with NRCM's relationship with *ADMIS*, but that is not pled in the SAC. That argument would also contradict Plaintiffs' arguments in Count XIV and elsewhere that Defendants were acting as agents of ADMIS.

## N.   Count XVI, Tortious Interference with Contract

Kumaran's opposition brief ignores the most glaring defect with the tortious interference with contract claim, which was asserted only by Kumaran and NRCM against Lazzara, LCI, Felag, Rothman, Boshnack, High Ridge, High Ridge Holding, and Villa. For the reasons stated above and in the opening brief, Kumaran cannot state a claim because she did not enter into any of the

relevant contracts in her individual capacity, and NRCM should be required to return to arbitration against all NFA members, which leaves only claims against High Ridge Holding (and Villa, whom the undersigned does not represent). The SAC does not allege that High Ridge *Holding* engaged in any conduct to interfere with any of NRCM's contracts, and thus the claims against it should be dismissed. Moreover, although the opposition brief goes on at length about alleged breaches, what Plaintiffs now label "tortious interference" was expressly permitted by the relevant contracts. *See* ECF No. 102, Ex. 1 (allowing ADMIS to take actions neccesary to satisfy margin requirements); Ex. 2 (allowing ADMIS to work with third parties to service customer accounts).

### O.      Count XVII, Breach of Implied Covenant of Good Faith and Fair Dealing

Kumaran argues that the implied covenant of good faith and fair dealing applies to Defendants despite the fact that Plaintiffs never entered into any contracts with them, because she and Lazzara allegedly executed some contracts "as individual parties" and because Plaintiffs allegedly acted as agents of ADMIS. *See* ECF No. 115, at 68. Kumaran cites to "ECF24.2 – Exhibit 1" – apparently referring to the ADMIS Lawsuit – but that exhibit shows that Kumaran and Lazzara were signing documents on ***ADMIS*** letterhead to support the accounts ***NRCM*** had opened. Moreover, even if Lazzara had signed as an individual party, Plaintiffs have not pled how he breached the implied covenant with respect to these ministerial agreements for "on-line access" and "to call ADMIS' 24-hour trading desk". ADMIS Lawsuit, ECF No. 24.2, at pp. 1 of 5, 4 of 5. Kumaran's privity arguments are inapt, for the reasons set forth in response to Count XIV above.

### P.      Count XVIII, Negligent Misrepresentation/Breach of Duty of Care

All of Defendants' arguments against Plaintiffs' fraud claims in Count VII continue to apply with equal force to, and are still dispositive of, the negligent misrepresentation claims.

**Q.**    **Count XIX, Breach of Contract/Implied in Fact IB [Introducing Broker] Contract (against Lazzara and LCI)**

NRCM and Kumaran's newly-asserted breach of contract claims against Lazzara and LCI should be arbitrated or dismissed, for the reasons set forth in Defendants' opening brief, including that Plaintiffs cannot fashion a private cause of action out of CEA and NFA rules. Kumaran attempts to distinguish the Second Circuit cases cited in Defendants' opening brief, s*ee* ECF No. 115, at 76-78, but courts around the country have consistently held that "violations of SRO rules do not give rise to a private cause of action." *See Milliner v. Mut. Sec., Inc.*, 207 F. Supp. 3d 1060, 1073 (N.D. Cal. 2016); *see also Gallier v. Woodbury Fin. Servs., Inc.*, No. CIV.A. H-14-888, 2015 WL 1296351, at *7 (S.D. Tex. Mar. 23, 2015) ("Courts have rejected attempts to recharacterize FINRA claims as breach-of-contract claims to circumvent the absence of a private right of action for violations of FINRA rules."); *J.E. Hoetger & Co. v. Asencio*, 558 F. Supp. 1361, 1364 (E.D. Mich. 1983) (dismissing breach of contract claim after finding no private cause of action under CEA). Kumaran now argues that Count XIX is also based on Lazzara and LCI's other alleged contractual duties, but that is not pled in the SAC.

**R.**    **Count XX, Breach of Contract / G&F [Guarantee and Fee] Agreement and ORSA [Oral Risk Services Arrangement]**

Count XX also remains deficient for all the reasons set forth in the moving Defendants' opening brief, and the Defendants respectfully refer the Court to ECF No. 102, at 38-39. As noted in the opening brief, "a third-party is an intended beneficiary only if 'no one other than the third-party can recover if the promisor breaches the contract' or the contract language should otherwise clearly evidence 'an intent to permit enforcement by the third-party.'" *Zaretsky v. William Goldberg Diamond Corp.*, No. 14 CIV. 1113 SAS, 2014 WL 4160232, at *2 (S.D.N.Y. Aug. 18, 2014). Kumaran insists that Plaintiffs must be third party beneficiaries because "no one other than

Plaintiffs can recover on breaches of the agreements against Plaintiffs and Nefertiti's CTA/CPO." *See* ECF No. 115, at 81. That argument is a logical fallacy. **ADMIS** obviously can recover if its counterparty breaches an agreement. There is no "breach" "against" Plaintiffs because they are not owed anything under the agreements.

### S.   Claims for Punitive Damages

To put Plaintiffs' claims for punitive damages in context, it is important to remember that NRCM and its principal Kumaran sought out LCI and Lazzara to open commodities futures trading accounts – an inherently risky endeavor[10] – with ADMIS. NRCM acknowledged ADMIS's disclosures and agreed to abide by ADMIS's rules, but when it was asked to bring its margin in line with ADMIS's requirements, refused to do so. Plaintiffs blame the Defendants, ADMIS, and the NFA for NRCM's losses, casting blame everywhere except their own purported STORM strategy. Setting aside their inflamed rhetoric, Plaintiffs fail to plead facts showing that any Defendants engaged in "morally culpable conduct" by performing risk-management services for ADMIS (or by being affiliated with the Defendants performing risk-management services for ADMIS). Punitive damages are not warranted.

### T.   Dismissal with Prejudice

Finally, dismissal should be with prejudice. Plaintiffs argue that they should be given yet another chance to replead because it would be the "first amendment for NAM and NHC" and a "first amendment in response to an opinion of the Court." *See* ECF No. 115, at 97. In fact, the

---

[10] See NFA, "Opportunity AND Risk: An Educational Guide to Trading Futures and Options on Futures," *available at* https://www.nfa.futures.org/investors/investor-resources/files/opportunity and-risk-entire.pdf, at 40 ("You should also understand that, because of the leverage involved in futures, the profit and loss fluctuations may be wider than in most types of investment activity and you may be required to cover deficiencies due to losses over and above what you had expected to commit to futures.")

Court has already ruled on Kumaran and NRCM's initial complaint, s*ee* ECF No. 13; NAM has already filed once before in March 2021, *see* ECF Nos. 49 and 50; and Kumaran has substantively amended at least twice before, *see* ECF Nos. 20, 48, 55, 56. The entities should not get even more amendments given that Kumaran controls the entities (and apparently their pleadings, given the similarities in style), and given that latecomers NAM and NHC's claims are futile for the reasons set forth in Section IV above.

**VII.    In the Alternative, Any Remaining Claims Should Be Stayed Pending Arbitration.**

The Court can and should dismiss each of Plaintiffs' claims that are not subject to arbitration. NRCM and NAM's statement that "all parties have requested a stay of the proceedings" is misleading. *Contra* ECF No. 114, at 37. The moving Defendants seek a stay *only in the alternative* if the Court does not dismiss all remaining claims for the pleading failures set forth above and in the opening brief. As the Court previously stated: "If the Court grants the motion to compel arbitration in full or in part and if the Court finds that Plaintiffs' remaining claims are not subject to dismissal, **the Court then will decide** whether a stay is appropriate pending arbitration." ECF No. 109 (emphasis added).

**CONCLUSION**

For the reasons set forth herein and in their opening brief, the moving Defendants respectfully request that this Court (i) compel NRCM and NAM to arbitrate their claims against fellow NFA members High Ridge, Rothman, Boshnack, Felag, Lazzara, LCI, and VIA, and (ii) dismiss with prejudice any remaining claims for failure to comply with Rule 8 and/or failure to state a claim under Rule 12(b)(6), or in the alternative to stay the remaining claims pending arbitration.

Dated January 14, 2022                              Respectfully Submitted,

                                                   WIGGIN AND DANA LLP

                                                    */s/ Jenny R. Chou*
                                                   Jenny R. Chou
                                                   One Century Tower
                                                   P.O. Box 1832
                                                   New Haven, CT 06508-1832
                                                   Phone: (203) 498-4302
                                                   Fax:  (203) 782-2889
                                                   E-mail: jchou@wiggin.com

                                                   *Attorneys for Vision Financial Markets LLC; Vision Investment Advisors LLC; Vision Brokerage Services LLC; H. Rothman Family, LLC; Boshnack Family, LLC; High Ridge Holding Company, LLC; High Ridge Futures, LLC; Lazzara Consulting Inc.; Howard Rothman; Robert Boshnack; John Felag; Gerard Stephen Lazzara; Lazzara Consulting Inc.*