IN THE UNITED STATES DISTRICT COURT
SOUTHTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAMANTHA SIVA KUMARAN | Case No:1:20:CV:03871-GHW-SDA |
| et al | Related Case:  1:20:CV 03668 |
| *Plaintiffs,* | Related Case:  1:20:CV 03873 |
| -against- | |
| | **MOTION AND MEMORANDUM OF** |
| Vision Financial Markets, LLC | **LAW FOR CLARIFICATION,** |
| et al | **RECONSDIERATION 59(B) AND TO** |
| *Defendants.* | **UPDATE FILING PURSUANT TO** |
| | **RULE 6(B)** |

**MOTION AND MEMORANDUM OF LAW FOR CLARIFICATION,**
**RECONSDIERATION 59(B) AND TO UPDATE FILING PURSUANT TO  RULE 6(B)**

ii

## TABLE OF CONTENTS

A - APPLICATION OF THE RULES …………………………………………………. Pg. 2

B -  OTHER RELEVANT BACKGROUND ………………………………………………….Pg.2

C - PROCEDURAL BACKGROUND……………………………………………...………Pg. 3

I - CLARIFICATION AND RECONSIDERATION ON ORDERS
 ECF120, ECF121, ECF123………………………………………………………...……Pg. 7

II - MOTION TO EXTEND TIME PURSUANT TO RULE 6(b)…………………………..…Pg.8

III – INADVERTENCE FOR JULIE VILLA'S FILING……………………………………Pg. 18

IV - PREJUDICE BY DEFAULT IF NOT CORRECTED …………………………………Pg.19

V – NOTICE OF NAME CHANGE AGAINST HIGH RIGGE FUTURES…………...……Pg. 23

iii

## TABLE OF AUTHORITIES

*Bimota SPA v. Rousseau*, 628 F. Supp. 2d 500, 502 (S.D.N.Y. 2009)

*Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 186 (2d Cir. 2015)

*Brien v. Kullman Indus., Inc.*, 71 F.3d 1073, 1077 (2d Cir. 1995).

*Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 382 (9th Cir.1997).

*Cartagena Enterprises, Inc. v. J. Walter Thompson Co.*, 2013 WL 5664992, at *6 & n.34 (S.D.N.Y. Oct. 16, 2013)

*CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 846 F.3d 35, 55 (2d Cir. 2017)

*Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983)

*Davis v. Musler*, 713 F.2d at 916

*Elohim EPF USA, Inc. v. 162 D & Y Corp.*, No. 19-CV-2431 (AJN), 2021 WL 2292682, at *3–4 (S.D.N.Y. June 4, 2021)

*Enron Oil Corp. v. Diakuhara*, 10 F.3d at 98).

*Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 455 (2d Cir. 2013)).

*Harris v. TD Ameritrade Inc.*, 338 F. Supp. 3d 170, 181–82 (S.D.N.Y. 2018)

*Harris v. TD Ameritrade, Inc.*, No. 4:14-CV-0046, slip op. at 3, 2015 WL 64880 (E. D. Tenn. Jan. 5, 2015)

*Hope Navigation Inc. v. Novel Commodities SA*, 978 F. Supp. 2d 333, 341 (S.D.N.Y. 2013)

*In re Enron Corp.*, 419 F.3d 115, 122 (2d Cir. 2005) (quoting *Pioneer*, 507 U.S. at 388, 392)

*Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382, 4 S.Ct. 510, 28 L.Ed. 462 (1884)

*Marathon Oil Co Id.*

*McCardle*, 7 Wall. 506, 514, 19 L.Ed. 264 (1868)

*McNulty*, 137 F.3d at 738–39 (

*Murray Eng'g, P.C. v. Windermere Properties LLC*, No. 12-cv-52 (JPO), 2013 WL 1809637, at *5 (S.D.N.Y. Apr. 30, 2013)

*Needham v. United States*, 2018 WL 3611944, at *2 (S.D.N.Y. July 27, 2018)

*New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)

iv

*Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership, 507 U.S. 380, 392 (1993)*

*Powerserve Int'l, Inc. v. Lavi, 239 F.3d 508, 514 (2d Cir. 2001)).*

*Rosehoff Ltd. v. Cataclean Americas LLC, 2013 WL 2389725, at *10 (W.D.N.Y. May 30, 2013)*

*Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 577, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999)*

*S.E.C. v. McNulty, 137 F.3d 732, 740 (2d Cir. 1998)*

*Spruill v. NYC Health & Hosp., 2007 WL 2456960, at *1 (S.D.N.Y. Aug. 23, 2007)*

*Steel Co. v. Citizens for Better Environment, 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998*

*Tyler v. City of New York, 2006 WL 1329753, at *2 (E.D.N.Y. May 16, 2006)*

*Weinstock, 16 F.3d at 503*

*Wright & Miller, Federal Practice and Procedure § 2699 (3d ed. 2010)*

Page 1

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SAMANTHA SIVA KUMARAN     |
        et al     |
        *Plaintiffs,*     |
    |
    -against-     |
    |
Vision Financial Markets, LLC     |
        et al     |
        *Defendants.*     |
    |

Case No:1:20:CV:03871-GHW-SDA
Related Case:  1:20:CV 03668
Related Case:  1:20:CV 03873

**PLAINTIFFS MOTION AND MEMORANDUM OF LAW FOR CLARIFICATION, RECONSIDERATION AND TO UPDATE FILING PURSUANT TO RULE 6(B) and 59)(B)**

**PLAINTIFFS MOTION AND MEMORANDUM FOR CLARIFICATION AND ADJUSTMENT OF SCHEDULING FOR GOOD CAUSE OR INADVERTENCE OR MISUNDERSTANDING PURSUANT TO 59(B) and 6(B)**

Pursuant to Local Rule 59(b), and Rule 6(b), and Local Rule 6.3 Plaintiffs writes to the Court related to an Order posted on January 3, 2022 (ECF123, ECF121, ECF120) and within the fourteen (14) days permitted for reconsideration and also pursuant to FRCP 6(b) for a scheduling adjustment post deadline for a showing of good cause, inadvertence and/or misunderstanding. Plaintiffs also respectfully notice the Court that Ms. Kumaran also had multiple coinciding deadlines in related case 20-CV-3668 (EC134), and that deadline is due on January 18, 2022. For this reason, it files a first version of this motion, and in addition, respectfully seek an additional seven (7) days to file our motion under FRCP 59(b) and Rule 6(b) because of significant prejudice that will occur to Plaintiffs in the related case 20-CV-3668 if it does not meet overlapping deadlines.

Plaintiffs also file a motion pursuant to Rule 6(b) to supplement and file their opposition to the Motion to Dismiss for NRCM and NAM, which as outlined herein, is filed post-deadline for the excusable and good cause reasons put forward herein. Prior to detailed briefing, Plaintiff Kumaran again documents that there is a concurrent and critical deadline in 20-CV-3668 on January 18, 2022 and further time needed to support this motion will be filed after the January 18 filing is complete. We seek this short time so no more rights are prejudiced by the ongoing overlapping of schedules for which prejudice will incur.

Page 2

In introduction, Kumaran also notifies the Court that counsel Mr. August has been out of the office for two weeks, and this letter is filed within the 14 days (to protect our interests) but given the ongoing motions pending in 20-CV-3668 we respectfully seek that we may supplement and file this brief properly after the concurrent filing in 20-CV-3668 due on January 18, 2022. We only seek a seven (7) day extension to update and file our Rule 59(b) motion.

## A - APPLICATION OF THE RULES

Pursuant to Local Rule 6.3 provides that "[u]nless otherwise provided by the Court or by statute or rule (such as Fed. R. Civ. P. 50, 52, and 59), a notice of motion for reconsideration or reargument of a court order determining a motion shall be served within fourteen (14) days after the entry of the Court's determination of the original motion, or in the case of a court order resulting in a judgment, within fourteen (14) days after the entry of the judgment."

Pursuant to Rule 6(b) a Court may extend a deadline for good cause in accordance with the foregoing. (1) In General. When an act may or must be done within a specified time, the court may, for good cause, extend the time: (A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or (B) on motion made after the time has expired if the party failed to act because of excusable neglect.

## B - OTHER RELEVANT BACKGROUND

Plaintiff Kumaran is a pro-se Plaintiff.  In general while the Courts hold counselled law firms to juggle multiple cases, it is not possible for a one person entity to do the same. As such, Plaintiff is not set up with an entire body of staff to supplement its filings. For about 2.5 weeks Ms. Kumaran was out of the office, and in sequential manner counsel on this docket Mr. August has also been out. The rise in Covid cases, across the board and in the NY area should not cause or lead to an outright dismissal of Plaintiffs cases (as outlined herein) when Plaintiffs did timely file their motions. However because of the foregoing circumstances and other deadlines, there is a good cause mistake or misunderstanding or inadvertence on the relevant filings for NRCM and NAM, which were included by reference in Kumaran and NHC's  briefings which are addressed in this motion.

Page 3

## C - PROCEDURAL BACKGROUND

On December 14, 2021 Plaintiff uploaded to the docket, in compliance with what it understood as the scheduling order for Kumaran and NHC to respond to the Motion to Dismiss filed by V&L Defendants and Villa. (ECF115 and ECF116) Also on December 14, 2021 Plaintiff also uploaded an Opposition to the Motion to Compel Arbitration, which was filed by NRCM and NAM (ECF114). Prior to the filing of that motion, the Court had stated "no further extensions". In the last two days prior to the filing, Ms. Kumaran had started to come down with something, but because of the deadline at the Court, worked some 20 hours shifts (at 4am until midnight) to make the filing deadlines. It cannot be said that the Plaintiffs did not make any reasonable attempts to file timely and adhere to the schedule.

On the morning of December 15, 2021 (at about 6am) without the opportunity to even read the briefs Ms. Kumaran notified the Court it was not well and leaving the office (ECF117). On December 21, 2021 (with little time to attend to this case) Ms. Kumaran had another deadline pending in related case 20-CV-3668 (ECF128). However on December 20, 2021 Mr. August notified the Court that Ms. Kumara which included family members had tested a positive Covid test, and needed to take two weeks out of the office (ECF131). In related case 20-CV-3668 ECF132, that extension was granted, and Ms. Kumaran was largely unavailable and convalescing. Plaintiff did not even log into the Pacer/ECF system.

On December 28, 2021 and December 29, 2021 there was an email exchange with Ms. Chou (See **Exhibits 1 and 2**). Since it was my understanding that only my own and NHC's opposition to the MTD was filed, which was done timely, and the Court had no jurisdiction over NRCM and NAM the emails did not make sense.  Plaintiff Kumaran was also at the time, out of the office unwell and did not have access to all the files. Kumaran responded as follows " I am a bit confused as I thought NRCM and NAM have no jurisdiction on that motion till he rules on the arbitration and thought only I (my individual claims) had to file the response by Dec 14.'. (See **Exhibit 2**).

On December 29, 2021 Ms. Chou suggested filing a motion for clarification with the Court, which Kumaran fully intended to do. (**Exhibit 3**) However before she even had a chance to speak to Mr. August, on December 29, 2021 Mr. August notified all parties that he had also received a positive diagnosis and would be out of the office. (See ECF118, **Exhibit 4**).

Plaintiffs notified Ms. Chou, that it was not our understanding that NRCM and NAM had standing to file any oppositions to the Motion to Dismiss at this time because the fundamental issue before the Court under a 12(b)(1) motion was that the Court had to determine standing and jurisdiction before it could rule on any merits, and it was our full intention to seek clarification when she returned to the office on Monday January 3, 2021. (See Exhibits 2 and 4).

As was explained to Ms Chou, while no such motion to compel Arbitration was filed against Kumaran and NHC, Plaintiffs understood the Court's directives that Kumaran and NHC, despite the request for a stay, and despite the clearly conflicting ruling in 20-CV-3873 where even Ms. Kumaran's claims on the same facts and law have been stayed (20-CV-3873 ECF63, and EC) Kumara and NHC still had to comply with filing the opposition to the Motion To Dismiss. (which we did timely). We had also previously requested a stay, consistent with the orders in ECF63 20-CV-3873, however the Court then denied that stay, and our understanding was that Kumaran and NHC who had jurisdiction (or no 12(b)(1) motion was filed) were obligated to respond to the motion and NRCM and NAM had no obligation to respond to the Motion to Dismiss as they Court has not asserted jurisdiction on their claims, but only an obligation to respond to the Motion to Compel Arbitration.

This is consistent with the express guidance from the Second Circuit and Supreme Court which states "The requirement that jurisdiction be established as a threshold matter ... is 'inflexible and without exception,' " *id.,* at 94–95, 118 S.Ct. 1003 (quoting *Mansfield, C. & L.M.R. Co. v. Swan,* 111 U.S. 379, 382, 4 S.Ct. 510, 28 L.Ed. 462 (1884)); for "[j]urisdiction is power to declare the law," and " **'[w]ithout jurisdiction the court cannot proceed at all in any cause,' "** 523 U.S., at 94, 118 S.Ct. 1003 (quoting *Ex parte McCardle,* 7 Wall. 506, 514, 19 L.Ed. 264 (1868)). The Court, in *Steel Co.,* acknowledged that "the absolute purity" of the jurisdiction-first rule. *See also. Marathon Oil Co* Id.

Ms. Chou had stated she would also write to the Court on January 3, 2022.  On January 3, 2022 Plaintiff Kumaran returned to the office and notified the Court she had multiple pending deadlines in case 20-CV-3668 (ECF119) and that Ms. Chou had suggested that NRCM and NAM were to file any additional response to their MTD in three weeks (which had not ben filed) and V&L Defendant could seek three weeks to file any additional response. She did not have a chance

Page 5

to respond to that email because another family member also received Omicron and had been quite unwell. (See 20-CV-3668 ECF133)  In letter to the Court, (again without detailed review because there was and is a pending deadline in 20-CV-3668 which is still outstanding for January 18, 2022), Plaintiff Kumaran realized that substantial of her own arguments, which were to be incorporated in my own and NHC's motion had therefore not been incorporated by reference therein. She respectfully requested 3-7 days, to explain her position to the Court, and to respond to any letters and motions filed by Ms. Chou. Ms. Chou's letter had not been filed yet, reflecting the email exchange (Exhibits 1-5).

The Court outright denied that motion (ECF121), including a reasonable 3-7 days to respond to a material letters or position from Ms. Chou, and one that could adversely and significantly prejudice. Therefore Plaintiff seeks reconsideration on ECF123, which would have allowed a reasonable 3-7 days to respond to a letter for clarification and also file its own letter for clarification, which allowed for a one-sided briefing from Defendants.

## Motion for Adjournment

Even though Mr. August was unwell and focused on Covid 19, Mr. August had also sought a short adjournment (which given he is a high risk patient which is nor immaterial), so that he could also respond to the email from Ms. Chou. Given the conflicting email from Ms. Chou that we were supposed to do, and that the Court has not asserted jurisdiction on NRCM and NAM, and there is a pending motion to compel arbitration.  Mr. August in light of his Covid 19, filed in both actions a motion for adjournment on December 29, 2021. (ECF118, and 20-CV-3668 ECF133)

The adjournment was granted in case 20-CV-3668, but outright denied in 20-CV-3871. (ECF120). Plaintiffs therefore also seek reconsideration on that order ECF120 as well as ECF123 pursuant to FRCP 59(b). This then allowed the Court to proceed again with one-sided letters and responses from Defendants.

## Villa's Letters To The Court (Not filed on the Docket)

Further Ms. Villa (Pro-Se) – an unregistered broker that is caused the fraudulent inducement of the commodities accounts in question and alleged to have violated numerous CEA rules in unlawful telephonic solicitations –  (promptly after learning of Mr. August's Covid diagnosis) sent an off-record email to the Court on New Year's Even holiday. The unorthodox

motions communications via email to the Court that were not filed on the docket or a letter motion. These emails attempted to capitalize on Mr. August being out of the office, so the Court would not consider the clear jurisdictional error in NRCM and NAM not having standing to brief a MTD.

Kumaran nor August were never permitted to respond to that motion, and it was considered ex-parte by the Court via email. It was also not published on the docket. Ms. Villa contributed no commentary to the December 28, 2021 – December 29, 2021 exchange (Exhibits 1-5). Plaintiff Kumaran responded to the email, that there was a covid outbreak impacting immediate family members and requested the parties address the issue on return. The email was sent on a holiday on New Year's Even and sought to capitalize on the prejudice to both Kumaran and Mr. August being caught up in the rise of cases in NYC.

Instead Plaintiffs also seek reconsideration and object to the Court's review of a one-sided "unfiled letter motion" by Pro-Se Villa, that appears to have been granted - that neither Ms. Kumaran nor Mr. August have responded to – nor have reviewed, attempting to capitalize on the clear fact that both Plaintiffs had sought a reasonable adjournment for Covid. Plaintiffs also object to the "emailing" to the Court of one-sided letter-motion that the Court did not upload onto the Dockets, that were reviewed, by this Court, but **no other party has been able to respond to** – but in accordance with the Court's actions – has apparently granted. This motion and others are also objected to in Reconsideration.

If Mr. Villa sought to file a Letter Motion, it should have been filed at the Pro-Se Intake Office – but no such filing was made. Instead, there appears to have been a one-sided briefing made ex-parte to the Court which has significantly also impaired all Plaintiffs rights. The Court then outright denied both Ms. Kumaran and Mr. August's request to even respond to Ms. Chou's letters and the ex-parte letter from Ms. Villa.

Plaintiffs therefore seek reconsideration for both **ECF120, ECF121 and ECF123.** Even though still out from Covid, Mr. August joins this letter. The Court argued that the reasons for not granting said extension to respond to letters, motions, clarifications and Ms. Villa's off-record one-sided letter motion "*Mr. August, counsel for the entity Plaintiffs did not request any additional extension*". (ECF123). However as explained in this motion, the Court had already ruled "no further extensions" and neither Ms. Kumaran nor Mr. August thought that an extension was needed

or a briefing was needed, **as the jurisdiction of NRCM and NAM had not been determined.** As such, it was only when Ms. Chou emailed us on December 28, 2021 that she alerted us to that we should seek clarification from the Court. Therefore denial of a reasonable adjournment due to Covid, and to file a reasonable clarification without briefing was assert was an error.

We therefore seek reconsideration of a plain error, that Mr. August could not have asked for an extension, because the Court had already ruled "no further extensions". More importantly, as explained hereunder, neither Ms, Kumaran nor counsel for the entities NRCM and NAM, understood the prior directives to be consistent with the guidance that the Court had granted Defendants consent to jurisdiction, and therefore did not believe "an extension" was needed, as the Court has not determined jurisdiction on the motion to dismiss for NRCM and NAM.

For this reason, neither Plaintiff had the opportunity to "seek clarification" from the Court as we had planned on January 3, 2022 or the opportunity to respond to the one-sided letter emailed motion from Ms. Villa (not filed on the docket) or the letter from Ms. Chou.  Further Mr. August has been out of the office as noted on the record since December 29, 2021 and has not had the opportunity to write to the Court also on this issue.

## I - CLARIFICATION AND RECONSIDERATION ON ORDERS ECF120, ECF121, ECF123

Therefore within the 14 days prescribed by FRCP 59(b), we seek clarification on all orders ECF120, ECF121 and ECF123 that the decision to not allow a response to both the ex-parte letter motion filed by Villa, and the letters on December 29, 2021 not permitting a reasonable adjournment so that counsel could return to the office, and denying a reasonable letter to respond to clarification are not consistent with the Second Circuit guidance.

Further, we seek clarification on the Court's decision if it is proceeding on the merits of the case without a ruling on jurisdiction. Therefore the Court's decision without a ruling on arbitration, is a clear contravention of the jurisdictional guidance for which NRCM and NAM (and also Kumaran and NHC) have joined any supplemental core issues.

"The requirement that jurisdiction be established as a threshold matter ... is 'inflexible and without exception,' " *id.,* at 94–95, 118 S.Ct. 1003 (quoting *Mansfield, C. & L.M.R. Co. v. Swan,* 111 U.S. 379, 382, 4 S.Ct. 510, 28 L.Ed. 462 (1884)); for "[j]urisdiction is power to declare the

law," and " **'[w]ithout jurisdiction the court cannot proceed at all in any cause,' "** 523 U.S., at 94, 118 S.Ct. 1003 (quoting *Ex parte McCardle,* 7 Wall. 506, 514, 19 L.Ed. 264 (1868)). The Court, in *Steel Co.,* acknowledged that "the absolute purity" of the jurisdiction-first rule. *See also. Marathon Oil Co* Id.

Finally, even though Mr. August has been out of the office, Ms. Kumaran who is *Pro-Se* has sort input from outside counsel. Plaintiff Kumaran has also received the same feedback, that Judge Aaron has no jurisdiction over NRCM and NAM to proceed on the merits of the Motion to Dismiss. The first and most fundamental ruling that needs to occur is whether the Court has the power to hear or rule on the merits of the case. Plaintiff has been out of office since early on December 15, 2021 and until January 3, 2022 and therefore has not had any time to confer with Mr. August. Prior to returning on December 29, 2021 Mr. August also left the office for the same reasons due to Covid exposures in NYC.

The Court should also note, that Ms. Kumaran (and NRCM) have had multiple conflicting deadlines in related case 20-CV-3668 and have not been able to meet or confer on this action, while Mr. August is out of the office. Plaintiffs is a Pro-Se Plaintiffs, and therefore files a reasonable request, for it to be able to not have to file several motions to the Court within a weekly basis – but in order to protect its rights, Defendants have used the overlapping schedule to secure an unfair procedural default.

We therefore seek both clarification and reconsideration of ECF120, ECF121 and ECF123 on whether the Court has determined jurisdiction on the NRCM and NAM motions, and if the original filing on December 14, 2021 was only for NRCM and NAM's motion to compel arbitration, or that the Motions to Dismiss for Kumaran and NHC were filed and could be ruled upon  without the Core Issues.

## II - MOTION TO EXTEND TIME PURSUANT TO RULE 6(b)

In the alternative, if the Court is now proceeding on the merits of the case, without first resolving the jurisdiction, Plaintiffs respectfully seek an extension of time to respond to file the required supplement for NRCM and NAM's (which were joined by Kumaran and NHC) under Rule 6(b) which lists the Core Issues. They do not seek to modify Kumaran and NHC's motion to dismiss against Vision Defendants which was timely filed. They also do not seek to modify NRCM

Page 9

and NAM's concurrent opposition to the Motion to Compel Arbitration which was also timely filed.

### (A) Standards for Rule 6(b) Filing

Pursuant to Rule 6(b) a Court may extend a deadline for good cause in accordance with the foregoing.

6 (b) Extending Time.

> (1) In General. When an act may or must be done within a specified time, the court may, for good cause, extend the time:
> (A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or
> (B) on motion made after the time has expired if the party failed to act because of excusable neglect.

As a preliminary manner, Plaintiffs, unlike most comparable cases, did not simply "miss a deadline". The extensive filings on the docket in this case 20-CV-3871 ECF114, ECF115, and ECF116 on December 14, 2021 (and also spilling into 00:06am on December 15, 2021 and 00:24am on December 15, 2021) do not demonstrate any "neglect" or intention to flout a Court ordered deadline.

Concurrent to the December 14, 2021 briefing schedule, in related case 20-CV-3668 both Kumaran and NRCM were required to file two separate oppositions to an Objections to a Report and Recommendation. (ECF123, ECF124, EC129, ECF130, ECF). As background the Court issued a material dispositive Report and Recommendations to Co-Defendants NFA, related primarily to a Statute of Limitations 20-CV-3668, ECF113. Concurrent to filing the Opposition to the Motion to Compel by NRCM and Motion to Dismiss by Kumaran and NHC on December 14, 2021 there was also a filing was also due on December 21, 2021. (20-CV-3668 ECF128. )

However, also not foreseeable and out of our control, have been other circumstances impacting our correspondence in this action. Not only did Plaintiffs contract Covid, as seen in related case however, there has been an onslaught of filings, that have overlapped this briefing schedule, whereby not only have both Plaintiffs been out of the office, but upon return, time sensitive filings were due related to an extraordinary infringing filing, requiring additional briefing on a pending Rule 11(b) violation (20-CV-3668, ECF 136, ECF137, ECF138, ECF139, ECF140, ECF141). As part of the factual background and common causes of action (with overlapping facts)

synopsis of this case – is that Defendants in this action, and Conspirators in Related Case 20-CV-3668 have and are acting together, in this now well argued fraudulent scheme, and share a common purpose and interest, in securing a wrongful dismissal that would favor the Defendants (and cause outright prejudice to Plaintiffs in this ore related cases). As such the Court should take note of the substantial infringing filing in related case 20-CV-3668 which was set to overlap the filing schedule in this action – which in turn would cause substantial harm and prejudice to plaintiffs in enforcing their rights with timely filings.

As a *Pro-Se* plaintiff, it is almost impossible to file four or five motions a week, with 14 day turn arounds or our rights are not protected. Therefore in light of the foregoing, and consistent with Rule 59(b) rules we not only seek a short extension to supplement this filing after the January 18, 2022 deadline is met in 20-CV-3668, we also filed timely, our motion pursuant to Rule 6(b), that we do not prejudice our rights to any timely filing in any opposition to the motions to dismiss (which we understood) had no jurisdiction asserted for NRCM and NAM.

However at the root cause of the issue is a conflict in the rules, and laws in this circuit as set forth above and also herein, that the Court has no jurisdiction to rule on the merits of the NRC and NAM motions to dismiss until it has asserted jurisdiction. Therefore it was not clear and certainly not consistent with standard rules, that NRCM and NAM were filing a brief that the Court could not rule upon.

Further to the extent Kumaran and NHC have filed their MTD, Plaintiffs respectfully move to add their remaining arguments of the Core Issues, which were not included, because of the foregoing lack of jurisdiction on NRCM and NAM. In this case, the amended motion to leave to amend the filing is pursuant to Rule 6(b), for the Core Issues. This is to avoid any undue prejudice to any and all Plaintiffs – as has now been determined, even Kumaran's and NHC's briefings which were filed on the laws, rely on the incorporation of the Core Issues, which was not filed, because the Court has not asserted jurisdiction. Further to the extent the Court has now asserted jurisdiction on NRCM and NAM, NRCM and NAM seek leave to file their Core Issues and subject to clarification that the motion to compel arbitration has been denied. Therefore the circumstances in this case are completely different from situations where a party has simply not made a deadline. Here Plaintiffs have two issues – related to the opposition

a) NRCM and NAM are not (yet) subject to the jurisdiction of this Court, and the precedent is clear, that until the Court decides the jurisdiction, t**he Court has no jurisdiction to rule on the merits of any motion on NRCM and NAM.**  Therefore, since Kumaran has been instructed to direct the filings of all parties, Plaintiffs were under the impression that no jurisdiction for NRCM and NAM had been set, and NRCM and NAM were not obligated to file an opposition to a motion to dismiss, until a ruling was set on the motion to compel. Kumaran understood the Order to be that only Kumaran and NHC had to file their substantive responses, and that NRCM and NAM had to file oppositions to the motion to compel.

b) There was a inadvertent typo in the briefs – the filing should have said NRCM and NAM (it did not mean to state NHC) that has joined Ms. Kumaran's briefs.

Because of the extraordinary filings schedule which has occurred since January 3, 2022 – January 13, 2022 (20-CV-3668 ECF137, ECF138, ECF139, ECF140, ECF141) and Mr. August being out of the office there had been no earlier opportunity to address this motion and clarification, without significant prejudice to our rights  in related case 20-CV-3668.

The issue of whether Plaintiffs opposition to the inherent Moton to Dismiss, contains all our relevant arguments is material, because Ms. Kumaran and NHC who have legitimate defenses to the Motions to Dismiss, also incorporated by reference and rely upon the Core Issues – such as Statute of Limitations, and Corporate Veil piercing, and other Fiduciary and Agency factors, that were incorporated by reference therein – and because the Court has not determined jurisdiction on the case – and in related case has stayed jurisdiction – Kumaran and NHC did not file a separate brief incorporating those by references in. While Plaintiffs still remain certain that the Court has not asserted jurisdiction to assert a ruling on the merits of the claims, if in the alternative, the Court is proceeding on the merits Plaintiffs file this Rule 6(b) motion to amend and supplement the filings to incorporate the relevant portions, that were part of NRCM and NAM's filings so no prejudice occurs.

### Governing Standards Under a Rule 6(b) Motion

Rule 6 governs the computation and extension of time. It provides in relevant part:

6 (b) Extending Time.

Page 12

> (1) In General. When an act may or must be done within a specified time, the court may, for good cause, extend the time:
> (A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or
> (B) on motion made after the time has expired if the party failed to act because of excusable neglect.

"Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect, it is clear that 'excusable neglect' under Rule 6(b) is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership, 507 U.S. 380, 392 (1993). In determining whether neglect is excusable, a court should take account of all relevant circumstances surrounding the party's omission, including (1) the danger of prejudice to the nonmoving party; (2) the length of the delay and its impact on the judicial proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith. Id.at 395.

Here for prong (1) and (4) - Defendants have already agreed to the schedule and did not convey any prejudice to them. Therefore the prejudice to the Defendants is minimal, considering especially that all Defendants have requested a stay on the proceeding pending the outcome of the Motion to Compel Arbitration (which has been briefed completely). There has been no indicta of any bad faith b plaintiffs or its counsel (as the original filings were made timely) and there has been no pattern of delay. Therefore despite excruciating deadlines in this and related cases, Plaintiffs have consistently made good faith efforts to comply with all deadlines thus far.

Further other mitigating factors have been injected by this Court which Plaintiffs have document may caused additional burden and prejudice – for example, in setting an exactly overlapping briefing schedule on September 16, 2021 in related case 20-CV-3668, the day before briefings were set in this case on September 17, 2021 which has in effect created a  procedural prejudice to having to deal with both motions in related cases concurrently. As such, Plaintiffs seek due consideration on the fact Plaintiff is Pro-Se and had not intended to be dealing with the also excessive filings in parallel case. Therefore in the absence of that ruling on arbitration, good cause is that any additional motions in this case do not prejudice the merits on the case on Plaintiffs timely filed motions.  Accordingly, since the Defendants have all sought a stay, the prejudice to defendants is relatively minimal aside from the delay itself, and the Court should not infer bad

faith on behalf of plaintiff or plaintiffs' counsel. Here unlike precedent, Plaintiffs did make not one bot three timely filings on December 14, 2021 – despite Plaintiff Kumaran not being well at the time. Accordingly, factors (1) and (4) weigh in favor of plaintiffs.

## Prong (2)

Both Plaintiffs have been out of the office since December 12, 2021 for a little over a month due to circumstances out of their control, related to Covid. Plaintiffs do not seek an excessive time, and not more than three (3) weeks or at a minimum two (2) weeks to correct these filings. Therefore a minimal amount of time, not more than three (3) weeks is respectfully requested, if the Court is to proceed on the jurisdictional requirements of the Court. Defendants already sought consent for a three weeks. Plaintiffs had not objected to that request, and in the interests of justice, having the Court rule on the merits of the case. There is still a matter of core jurisdiction that has not been determined by the Court. Given the procedural posture of the related case 20-CV-3873 which has **also been stayed** on the same facts and law, there should be no impact to the case and the resolution, and any impact would certainly not impeded the overall cases – which are related and would impact the related case stay.

## Prong (3) – Reasons for the Delay

The third and most important factor is the reasons Plaintiffs NRCM and NAM did not file their Core Issues – which is due to a conflict and the fact **this Court has no jurisdiction** to hear the case on the merits.  Courts have ruled that because a motion to compel arbitration goes to the Court's power to hear a case, and such a motion is analogous to – and sometimes treated as – a motion to dismiss for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). *See, e.g.*, *Cartagena Enterprises, Inc. v. J. Walter Thompson Co.*, 2013 WL 5664992, at *6 & n.34 (S.D.N.Y. Oct. 16, 2013); *Rosehoff Ltd. v. Cataclean Americas LLC*, 2013 WL 2389725, at *10 (W.D.N.Y. May 30, 2013); *Tyler v. City of New York*, 2006 WL 1329753, at *2 (E.D.N.Y. May 16, 2006). Since "jurisdiction generally must precede merits in dispositional order," *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999) (citing *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) ), a district court should generally rule on a motion to compel arbitration before proceeding to a merits-based motion to dismiss. *See* *182 *Needham v. United States*, 2018 WL 3611944, at *2 (S.D.N.Y.

July 27, 2018) (quoting *Spruill v. NYC Health & Hosp.*, 2007 WL 2456960, at *1 (S.D.N.Y. Aug. 23, 2007) ) ("Courts are required to decide 'the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction.") (internal quotations marks omitted).

Even if the arbitration issue is not considered jurisdictional, **it should ordinarily be addressed first as a matter of judicial efficiency.** (emphasis added) *See Rosehoff Ltd.*, 2013 WL 2389725, at *10 (assessing the parties' merits arguments, including "the sufficiency of the claims in the complaint," would be "unnecessary and contrary to judicial economy" if case must be stayed or dismissed in favor of arbitration); *Bimota SPA v. Rousseau*, 628 F. Supp. 2d 500, 502 (S.D.N.Y. 2009) (considering and granting defendants' motion to compel arbitration on all of plaintiff's claims, thus obviating need to consider partial motion to dismiss); *Harris v. TD Ameritrade, Inc.*, No. 4:14-CV-0046, slip op. at 3, 2015 WL 64880 (E. D. Tenn. Jan. 5, 2015) (granting motion to compel arbitration of claims by Bancorp shareholder challenging TDA's failure to take his shares out of street name, rendering it "unnecessary to address TDA's arguments in support of dismissal"). *See also* Harris v. TD Ameritrade Inc., 338 F. Supp. 3d 170, 181–82 (S.D.N.Y. 2018)

It is therefore again an express contradiction of Supreme Court and Second Circuit guidance that arbitration issues must be resolved first prior to ruling on the merits of a motion to dismiss.  Kumaran (who is *Pro-Se*) has also sought the input of outside counsel, with the possibility of bringing on outside counsel to assist in the case, as it moves to discovery and for her own advise (as Plaintiff is *Pro-Se,* NY State bar rules allow a Pro-Se litigant to seek the advise of outside counsel on an informal basis).

Accordingly, the consensus has been the same, that Magistrate Judge Aaron has no jurisdiction to rule on the pending merits of the motions for NRCM and NAM until he determines jurisdiction. The fundamental issue first and foremost is whether the Court has jurisdiction to proceed with the merits of the Case. Normally under a 12(b)(1) motion, and when there is a complaint filed, first the Court has to determine if the Court has jurisdiction to hear the case. If the jurisdiction is to go to the Arbitrators, then no such ruling can be made on the merits.

Second, as advised also by outside counsel, since **20-CV-3873 has been stayed on the same facts and law as this case, t**his leaves a procedural quagmire, and a conflict in the two

rulings between the two cases where the Court ruled in the related case, that the merits on any claims by Kumaran would be stayed. 20-CV-3873 ECF63 at 12-13.

> "In such cases, a stay is warranted in part because the prior litigation or arbitration is likely to have preclusive effect over some or all of the claims not subject to arbitration." *Id*. at 111 (citing *CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 846 F.3d 35, 55 (2d Cir. 2017) ("It is settled law that the doctrine of issue preclusion is applicable to issues resolved by an earlier arbitration.")). Considering the relevant factors, the Court finds that a stay pending arbitration is warranted. Any claims that Kumaran may have in an individual capacity against ADMIS relate to NRCM's account with ADMIS. Accordingly, the "issues that the arbitration panel will decide . . . overlap significantly (if not entirely) with the issues that this Court would need to reach to adjudicate" Kumaran's individual claims. 20-CV-3873 ECF63 at 12-13

Therefore no outside counsel, would appear in a case, where the jurisdiction has not been resolved and Plaintiffs understood the requirements to file an opposition to the motion to dismiss, for Kumaran and NHC, but not for NRCM and NAM, as there is no consent for the Court to have power to so. Accordingly, if the case is merely to stay the proceedings, any briefing (at significant cost and time) to Plaintiffs, especially if it were to engaged additional counsel would be for no purpose, as it is clear under Second Circuit guidance the Court has no authority to rule on the merits without a ruling on the Arbitration.

For those reasons, it was understood by *Pro-Se* Kumaran (who also directed as per the Court's directions) the filing of NHC and NRCM and NAM, that the **Court had no jurisdiction for NRCM and NAM to further supplement a filing on the MTD**. Accordingly Plaintiffs, should not be materially prejudiced on the merits of the case – on a filing that is not considered ripe, until the Court has granted its decision on the merits.

Since the Kumaran and NHC filings and NRCM and NAM oppositions were timely filed on December 14, 2021 this is not "flouting a Court Order". The Supreme Court in *Pioneer* explained that the term "neglect," for purposes of interpreting "excusable neglect" in the federal rules, has its normal, expected meaning: inadvertence, carelessness, and mistake. *See* 507 U.S. at 388, 113 S.Ct. at 1494. It then reasoned,

> [a]lthough inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute "excusable" neglect, it is clear that "excusable neglect" under Rule 6(b) is a somewhat "elastic concept" and is not limited strictly to omissions caused by circumstances beyond the control of the movant. 507 U.S. at 392, 113 S.Ct. at 1496 (footnote omitted).

Page 16

The Court explicitly stated that, "at least for purposes of Rule 6(b), 'excusable neglect' is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence." *Id.* at 394, 113 S. Ct. at 1498. In light of its interpretation of "neglect" as "negligence," the Court noted that the "excusable" portion of "excusable neglect" must provide the limitations necessary to prevent abuse by the parties. "[T]he determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* at 395, 113 S.Ct. at 1498.

In short, per se rules like the one in *Cosmopolitan Aviation* do not perdure after *Pioneer. See Hooper,* 43 F.3d at 28 (noting that *Pioneer* overruled this circuit's prior "excusable neglect" standard under Fed. R.App. P. 4(b)); *see also Briones v. Riviera Hotel & Casino,* 116 F.3d 379, 382 (9th Cir.1997). As one court explained it, *Pioneer* "noted that 'inadvertence, ignorance of the rules, or mistakes construing the rules do not *usually* constitute 'excusable neglect.' Thus, although a late filing will ordinarily not be excused by negligence, that possibility is by no means foreclosed." *Id.* (quoting *Pioneer,* 507 U.S. at 392, 113 S.Ct. at 1496 (emphasis added)) (footnote omitted). In accordance with that holding, a finding that the failure to comply with a filing deadline was excusable may in some circumstances be appropriate. For example, neglect may be excusable where the language of a rule is ambiguous or susceptible to multiple interpretations, or where an **apparent conflict exists between two rules.** Other grounds may exist, but we need not canvass them today. *See generally Pioneer,* 507 U.S. at 395, 113 S.Ct. at 1498 (listing some factors relevant to an equitable determination of excusable neglect).

Therefore it is clear that a conflict is in place between the jurisdiction rules, and the authority of NRCM and NAM's merits of the motion to be heard – not just because the Motion to Compel Arbitration has not been heard, but also because in related case 20-CV-3873 – the case has been stayed. Other factors out of the parties control, include the gap related to the Covid exposures, as well the excessive filings which occurred in Related Case 20-CV-3668.

Now that Kumaran has returned to the office, Plaintiffs respectfully seek not just clarification, but if the Court has asserted jurisdiction (without a stay) pursuant to Rule 6(b) that to incur no further prejudice, that there very important arguments related to Core Issues, which were not attached, can be filed, so there is no prejudice to Plaintiffs for ruling on the merits.

Courts have also not hesitated to reiterate the old rule at the same time that we have applied *Pioneer*'s equitable test in determining whether failure to comply with a filing deadline constituted excusable neglect. *See, e.g., Weinstock,* 16 F.3d at 503 (quoting *Cosmopolitan Aviation*'s statement of the pre-*Pioneer* automatic rule, but then engaging in an "equitable determination" taking into account **"all relevant factors"**). Plaintiffs here did not miss the deadline. Despite multiple obstacles they filed what was understood was consistent with the jurisdictional requirements, timely and on December 14, 2021.

"There is, of course, a range of possible explanations for a party's failure to comply with a court-ordered filing deadline," which includes, "[a]t one end of the spectrum ... an act of God or unforeseeable human intervention," and "[a]t the other," a mere choice "to flout a deadline." *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 387–88 (1993).

A party may also "*choose* to miss a deadline although for a very good reason, such as to render first aid to an accident victim discovered on the way to the courthouse, as well as cases where a party misses a deadline through inadvertence, miscalculation, or negligence." *Id.* at 388. Taking into account the variety of reasons that could, hypothetically, be provided, courts are " '*permitted*, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as intervening circumstances beyond the party's control,' even though 'inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute excusable neglect.' " *In re Enron Corp.*, 419 F.3d 115, 122 (2d Cir. 2005) (quoting *Pioneer*, 507 U.S. at 388, 392). The determination of whether a party's actions are excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer*, 507 U.S. at 395. These include "the danger of prejudice to the [Party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.*

In the December 28, 2021 and December 29, 2021 emails with Ms. Chou, the parties, realized there may be confusion, as NRCM and NAM had not filed their opposition, due to the lack of jurisdiction of the Court. (**Exhibits 1, 2 and 3**). Mr. August then notified the parties he too was out due to Covid (**Exhibit 4**). Ms. Chou she would file a response at the Court on January 3,

Page 18

2022. (**Exhibit 5**), and agreed that Plaintiffs would NRCM and NAM (there again was a typo related to NHC) would clarify the jurisdiction issue and Defendants agreed. Kumaran was still out of the office and notified the Court on January 3, 2022 that it was expecting a letter, but also had overlapping deadlines in Related Case 20-CV-3668 (See ECF136-ECF141) and therefore had not turned her attention to this case

These circumstances do not count as "neglect" but circumstances that are beyond the parties control, as well as a clear procedural conflict in this case, related cases and the jurisdiction and the related-case. Both parties had intended to raise the issue once pointed out by Ms. Chou on December 28, 2021, but Mr. August contracted Covid, he also respectfully wrote the Court, that he was seeking an adjournment. Ms. Kumaran wrote to the Court, asking for not more than a week, to address the discrepancy and conflict in the rules, and to respond to any emails, the Court unilaterally denied that request – without consideration of what the communications were related to. As such, in part due to the Omicron break-out in NYC, which counted towards exigent circumstances (out of Plaintiffs control), Defendants seek to run of with a "dismissal" and/or "default" that could materially prejudice the case.

Plaintiffs therefore respectfully seek leave under FRCP 6(b), and with consideration to all circumstances, that if the Court is indeed granting jurisdiction on this case (which was still not clear or understood), all Plaintiffs, may file their supplemental Core Issues.

Given that the original filings were completed on time, these conflict in the jurisdiction should not prejudice Plaintiffs. The Second Circuit has long ruled that cases should be heard on the merits of the case. There is a strong preference in this Circuit for resolving disputes on the merits. *Brien v. Kullman Indus., Inc.*, 71 F.3d 1073, 1077 (2d Cir. 1995). Further to the extent all Defendants are working together, and given the sanctions motion filed in related case 20-CV-3668, it would be materially prejudicial, that by consolidated actions of the Conspirators, to file concurrent motions, Plaintiffs arguments should not be heard on the merits.

III – Inadvertence for Julie Villa's Filing

Finally pursuant to Rule 6(b), Plaintiffs have realized that an accident was made in uploading the filed for Ms. Villa at ECF116. While substantial of the arguments for Villa and

Vision were overlapping, there were two primary claims (fraud related (Counts 7, 8 and 10) and RICO - Count 1) where the arguments had been differentiated, because the paragraph references for Villa's role in the related fraud was different and the arguments (the only count where distinct arguments were raised in Operations and Management) in the RICO claims were in a separate word document.

It appears, and this was an accident or oversight on Plaintiff Kumaran's part in uploading, it was only just realized that Ms. Kumaran overwrote the Villa file, with the Vision file, prior to upload. Therefore the separate arguments, for these two counts, were erased, and the same file was uploaded (with the different cover).

This was a mistake and was not intended. Because subsequently Plaintiffs left the office for the Covid, and had been dealing with the case 20-CV-3668 it did not even come to our attention. Also despite the emails from Ms. Villa and Ms. Chou they also did not bring to our attention that clearly Villa's distinct arguments for these counts had not been included in the files. Plaintiff Kumaran has now checked the files and it spears an accident occurred in the saving of the two files, and the Vision memorandum saved over the first.

We do have the backups of the Counts in word document, but as such the memorandum for these fraud related counts (fraud and aiding and abetting fraud)  and Counts 1 (RICO) did not have the correct paragraphs references and inadvertently were uploaded the same motion. This was an error. The law and body of the claims in all legal research remains the same.

As such and consistent with this memo, Plaintiffs respectfully seek leave to correct the upload for that file for Villa and correct those sections so that no prejudice is caused to plaintiffs for this errors. This was not noticed in large part because both Plaintiffs have been out of the office for Covid, and because of the extremely time consuming schedule in related case 20-CV-3668.

## IV - PREJUDICE BY DEFAULT IF NOT CORRECTED

Plaintiffs would suffer an undue prejudice by default if these issues are not corrected and as stated supra that were not due to neglect or any attempt to not meet the filing deadline as they contain valid and meritorious arguments necessary for the Court ot proceed on the merits of the claims. (which is still unclear if the Court has such jurisdiction) If the Court was to proceed on the

merits without our meritorious arguments, and not grant this motion, that would result in a default or "procedural default" – in large part due to what is now documented as foul play in part in related case 20-CV-3668. Courts considers each "good cause" factor in turn below and concludes that, on balance and in light of the "strong preference" in this Circuit for resolving cases on their merits, these factors weigh in favor of vacating the defaults. Elohim EPF USA, Inc. v. 162 D & Y Corp., No. 19-CV-2431 (AJN), 2021 WL 2292682, at *2 (S.D.N.Y. June 4, 2021)

To determine whether "good cause" exists, courts assess three criteria: "(1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party." *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 186 (2d Cir. 2015) (quoting *Guggenheim Capital, LLC v. Birnbaum,* 722 F.3d 444, 455 (2d Cir. 2013)).

**The Second Circuit has expressed a strong "preference for resolving disputes on the merits."** *New York v. Green,* 420 F.3d 99, 104 (2d Cir. 2005) (quoting *Powerserve Int'l, Inc. v. Lavi,* 239 F.3d 508, 514 (2d Cir. 2001)).

## A. Prejudice

The Court considers the last "good cause" factor first, because "[p]rejudice to the non-defaulting party is 'the single most persuasive reason for denying a [] motion....' " *Murray Eng'g, P.C. v. Windermere Properties LLC*, No. 12-cv-52 (JPO), 2013 WL 1809637, at *5 (S.D.N.Y. Apr. 30, 2013) (quoting Wright & Miller, Federal Practice and Procedure § 2699 (3d ed. 2010)). Delay, standing alone, does not establish prejudice for purposes of a request to set aside an entry of default. *Enron Oil*, 10 F.3d at 98. "Rather, it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983) (internal quotation marks omitted).

Here, other than delay, there would be no prejudice to Defendants, and since V&L Defendants already agreed to the schedule they would not be prejudiced. Delay that simply lets guilty defendants off the hook, without a proper ruling on the merits is really gamesmanship to seek a procedural benefit – especially in light of the fact that the cases in NYC have been extremely high.

## B. Willfulness of Default

The next factor—willfulness of the default—also weighs in favor of vacating any potential default. The Second Circuit has held that willfulness in this context means more than mere negligence or carelessness; it refers to conduct that is "egregious" and "not satisfactorily explained." *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998). An inference of willful default is warranted if a defendant "does not deny that he received the complaint, the court's orders, ... or that he never answered the complaint," and "does not contend that his non-compliance was due to circumstances beyond his control." *Guggenheim Capital, LLC,* 722 F.3d at 455. "[D]efaults have been found willful where, for example, an attorney failed, for unexplained reasons, to respond to a motion for summary judgment, or failed, for flimsy reasons, to comply with scheduling orders...." *McNulty*, 137 F.3d at 738–39 (internal citations omitted). An attorney's willful conduct is imputed to the party he represents where the party "makes no showing that he has made any attempt to monitor counsel's handling of the lawsuit." *Id.* at 740. So, for instance, when a party does "not talk to his attorney for nearly a year, and ... receive[s] no bills during that time to indicate that any attention [i]s being given to his case," it is appropriate to impute the attorney's willful default to the client. *Id.*

Here Plaintiffs all clearly responded within significant pressure and deadlines to the overwhelming numbers of briefings on December 14, 2021. Therefore, this cannot be considered a "willful default" – or anywhere close to the standards that would warrant a prejudicial "default ruling" in favor of Defendants. Plaintiffs also do not believe, given all circumstances above, that they were "negligent".  They filed substantial briefing of pages of valid arguments against Defendants -and on time.

## C. Meritorious Defenses

Finally, the existence of potentially meritorious defenses also favors vacating the default. In order to make a sufficient showing of a meritorious defense in connection with a motion to vacate a default judgment, the defendant need not establish his defense conclusively, *see, e.g.*, *Davis v. Musler,* 713 F.2d at 916, but he must present evidence of facts that, "if proven at trial, would constitute a complete defense." *S.E.C. v. McNulty,* 137 F.3d 732, 740 (2d Cir. 1998) (citing *Enron Oil Corp. v. Diakuhara,* 10 F.3d at 98).

Page 22

Because Plaintiffs have outlined the Core Issues on Page 1, they potentially raise a number of defenses that would surpass this low bar. Since it is still unknown if the Court has jurisdiction to proceed on the merits, to proceed without consideration, of well-documented meritorious defenses, would also result in an unfair vacator or default to unfairly favor Defendants which is not consistent with the above Second Circuit guidance, favoring resolution on the merits, with all meritorious defenses available.

**D. Balance of the factors**

As already noted, there is a strong preference in this Circuit for resolving disputes on the merits. *Brien v. Kullman Indus., Inc.*, 71 F.3d 1073, 1077 (2d Cir. 1995). All three above factors in this case favor not permitting V&L Defendant to obtain a procedural defaults. Plaintiffs filing deficiencies were *not* willful, and a contrary conclusion would not alter the balance of the factors, which would still weigh in favor of not allowing the case to be vacated due to a  defaults. *See Sea Hope Navigation Inc. v. Novel Commodities SA*, 978 F. Supp. 2d 333, 341 (S.D.N.Y. 2013) (collecting cases in which vacatur was warranted in spite of willfulness of the default). The Court would also resolve any doubt as to whether the defaults should be vacated in the [defaulted] Plaintiffs favor and vacate the defaults nonetheless. *See Enron Oil Corp.*, 10 F.3d at 96. The strong policy reasons that disfavor default bolster the Court's conclusion that the Court should not allow a procedural default on the foregoing issues. See also *Elohim EPF USA, Inc. v. 162 D & Y Corp.,* No. 19-CV-2431 (AJN), 2021 WL 2292682, at *3–4 (S.D.N.Y. June 4, 2021)

Plaintiffs therefore respectfully seek to file under Rule 6(b) if the Court is proceeding on the merits, and prior to any ruling as such, their remaining Core Issues, and also correct the upload with the errors in section for Ms. Villa Plaintiffs respectfully remind the Court it has to meet a sharp January 18, 2022 deadline also in that case, it is aware of the 14 day deadline to file this motion pursuant to Rule 59(b) so as has filed it timely.

Accordingly Plaintiffs also respectfully seek a seven (7) day extension to amend or supplement this motion as its rights are materially being impacted in not having sufficient time to respond to this case and case 20-CV-3668 at the same time.

Page 23

## V – Notice Of Name Change against by High Ridge Futures

Finally of notice to the Court, it has come to our attention, after the filing of out complaint on July 30, 2021,  High Ridge Futures, which was listed as a CPO and direct competitors,  has now changed its name again and formed yet another company PowerCore Management - in the same pattern of conduct as indicated in the Complaint – to transfer the infringing activity and directly competing business to another legal entity and another set of "affiliates".

The new company which is a direct competitor of NAM, Kumaran and NHC is now called PowerCore Management,  NFA ID: 0178238 and was registered on August 16, 2021 as a CPO. The same principles Rothman, Boshnack and Felag, subsequent to the filing of the Second Amended Complaint for unfair competition and misappropriation against High Ridge Futures as direct competitors as a CPO, have now transferred their directing business to another alter-ego affiliate effective August 16, 2021 called PowerCore Management as the CPO.

Equities also supports permitted Plaintiffs to amend their complaint to adapt to the new information, without permitted a prejudicial default that does not address these new developments, (See NFA BASIC). See also Exhibit 6 attached to this motion.

Accordingly,

Respectfully submitted,
//SSK//
Samantha S. Kumaran

//BMA//
Brian August, Esq
Counsel for NRCM, NAM and NHC